1
2
3
4          IN THE UNITED STATES DISTRICT COURT
5          FOR THE NORTHERN DISTRICT OF CALIFORNIA
6

7    LARRY PEARL, et al.,                    Case No. 22-cv-03561-MMC
8                    Plaintiffs,
                                             **ORDER GRANTING MOTION TO**
9         v.                                 **COMPEL ARBITRATION**
10   COINBASE GLOBAL, INC., et al.,
11                   Defendants.

12

13        Before the Court is defendants Coinbase Global, Inc. and Coinbase, Inc.'s

14   (collectively, "Coinbase") "Motion to Compel Arbitration and Stay Proceedings," filed

15   September 12, 2022.  Plaintiffs have filed opposition, to which Coinbase has replied.

16   Having read and considered the papers filed in support of and in opposition to the motion,

17   the Court rules as follows.[1]

18                              **BACKGROUND**

19        Coinbase "operates a website from which customers can buy and sell digital

20   assets" (see First Amended Class Action Complaint ("FAC") ¶ 18), and, in connection

21   therewith, "publicly posts information regarding the asset, including a description of the

22   asset, . . . historical data regarding the asset, . . . [and] links to the asset's white paper

23   and website, where applicable" (see FAC ¶ 35).  "Before a prospective user can access

24   Coinbase's platform or services, they must first create a Coinbase account and

25   affirmatively agree to the Coinbase User Agreement and Privacy Policy."  (See Decl. of

26   Sullen Black in Supp. of Defs.' Mot. to Compel Arbitration ("Black Decl.") ¶ 7, Dkt. No.

27   _____

28        [1] By order filed December 6, 2022, the Court took the matter under submission.

30-1.)

Plaintiffs are Coinbase customers who invested in a digital currency called TerraUSD.  (See FAC ¶¶ 54, 58.)  Plaintiffs allege Coinbase misled consumers about TerraUSD's qualities, characteristics, and volatility by improperly promoting and categorizing TerraUSD as a "'stablecoin'" that Coinbase claims is "'pegged' to the United States Dollar ('USD') at a rate of one-to-one" (see FAC ¶¶ 2, 4), whereas, "[i]n reality, TerraUSD is not backed by actual US dollars or any other tangible assets held in reserve" (see FAC ¶ 5).  According to plaintiffs, Coinbase's "misrepresentations about the nature and stability of TerraUSD and material omissions regarding TerraUSD's stability and lack of collateralization" (see FAC ¶ 52) caused them to incur damages when the currency collapsed (see FAC ¶¶ 51, 56, 60).

Based on the above allegations, plaintiffs assert, individually and on behalf of a putative class, six state law claims for relief, titled, (1) "Negligence"; (2) "Negligence *Per Se*"; (3) "Negligent Misrepresentation"; (4) "California's Unfair Competition Law"/"Cal. Bus. & Prof. Code §§ 17200, et seq."; (5) "California's False Advertising Law"/"Cal. Bus. & Prof. Code §§ 17500, et seq."; and (6) "California's Consumer Legal Remedies Act"/"Cal. Civ. Code § 1750, et seq."  (See FAC ¶¶ 73-145.)

## DISCUSSION

By the instant motion, Coinbase seeks an order (1) compelling arbitration of plaintiffs' claims on an individual basis, and (2) staying the above-titled action pending completion of said arbitration.

Pursuant to the Federal Arbitration Act ("FAA"), contractual arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  See 9 U.S.C. § 2.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).  Thus, the district court's role under the FAA is

1   "limited to determining (1) whether the agreement to arbitrate exists and, if it does, (2)

2   whether the agreement encompasses the dispute at issue."  See Chiron Corp. v. Ortho

3   Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  "If the response is affirmative

4   on both counts," the court must "enforce the arbitration agreement in accordance with its

5   terms."  See id.

6         "Although gateway issues of arbitrability presumptively are reserved for the court,"

7   see Momot v. Mastro, 652 F.3d 982, 987 (9th Cir. 2011), parties "may delegate [such]

8   arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear

9   and unmistakable evidence," see Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S.

10   Ct. 524, 530 (2019) (internal quotation and citation omitted), and so long as the

11   delegation itself is not invalidated by a "generally applicable contract defense, such as

12   fraud, duress, or unconscionability," see Mohamed v. Uber Technologies, Inc., 848 F.3d

13   1201, 1209 (9th Cir. 2016).  "When the parties' contract delegates the arbitrability

14   question to an arbitrator, the courts must respect the parties' decision as embodied in the

15   contract."  See Henry Schein, 139 S. Ct. at 528.

16         Here, the subject arbitration agreement is contained in an appendix to Coinbase's

17   User Agreement (hereinafter, the "2022 User Agreement"), specifically, Appendix 5

18   (hereinafter, the "Arbitration Agreement") (see Decl. of Julie Erickson in Supp. of Pls.'

19   Opp'n to Defs.' Mot. to Compel Arbitration ("Erickson Decl."), Ex. 1, at 48, Dkt. No. 38-2),

20   and contains a section titled "Applicability of Arbitration Agreement" (hereinafter,

21   "Applicability Clause"), which reads, in relevant part, as follows:

22                 Subject to the terms of this Arbitration Agreement, you and
23                 Coinbase agree that any dispute, claim, disagreements arising
24                 out of or relating in any way to your access to or use of the
              Services or of the Coinbase Site, any Communications you
25                 receive, any products sold or distributed through the Coinbase
              Site, the Services, or the User Agreement and prior versions of
26                 the User Agreement, including claims and disputes that arose
              between us before the effective date of these Terms (each, a
27                 "Dispute") will be resolved by binding arbitration, rather than in
              court, except that: (1) you and Coinbase may assert claims or
28                 seek relief in small claims court if such claims qualify and remain

United States District Court
Northern District of California

in small claims court; and (2) you or Coinbase may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents).

(See Erickson Decl. Ex. 1, at 48 (§ 1.1).)  Additionally, the Arbitration Agreement contains a section titled "Authority of the Arbitrator" (hereinafter, "Delegation Clause"), which section reads, in relevant part, as follows:

The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement, except for the following: (1) all Disputes arising out of or relating to the Section entitled "Waiver of Class and Other Non-Individualized Relief," including any  claim that all or part of the Section entitled "Waiver of Class and Other Non-Individualized Relief" is unenforceable, illegal, void or voidable, or that such Section entitled "Waiver of Class and Other Non-Individualized Relief" has been breached, shall be decided by a court of competent jurisdiction and not by an arbitrator; (2) except as expressly contemplated in the subsection entitled "Batch Arbitration," all Disputes about the payment of arbitration fees shall be decided only by a court of competent jurisdiction and not by an arbitrator; (3) all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator; and (4) all Disputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator.

(See Erickson Decl. Ex. 1, at 51 (§ 1.6).)

Plaintiffs urge the Court to deny Coinbase's motion, on the asserted grounds that (1) the Arbitration Agreement is procedurally and substantively unconscionable, and thus unenforceable, and (2) the Delegation Clause is unenforceable and, in any event, inapplicable by its terms to the unconscionability challenges raised in plaintiffs' brief. (See Pls.' Opp'n to Defs.' Mot. to Compel Arbitration ("Pls.' Opp'n"), at 3:7; 19:1, Dkt. No. 38.)  Coinbase argues that under the express terms of the Arbitration Agreement, namely, the Delegation Clause, such "gateway questions regarding the scope or enforceability of the arbitration clause" are for "the arbitrator, not this Court," to decide.

1   (See Defs.' Reply in Supp. of Mot. to Compel Arbitration ("Defs.' Reply"), at 11:21-24,

2   Dkt. No. 40.)

3       Because there is no dispute that plaintiffs agreed to the 2022 User Agreement, or

4   that the 2022 User Agreement contains the above-referenced Delegation Clause, the

5   Court first considers whether the Delegation Clause clearly and unmistakably requires

6   the arbitrator to decide gateway arbitrability questions, see Henry Schein, 139 S. Ct. at

7   530, and, if it does, whether the Delegation Clause is unenforceable because it is

8   unconscionable, see Mohamed, 848 F.3d at 1209.

9       **A. The Delegation Clause is Clear and Unmistakable**

10      As set forth above, the first part of the Delegation Clause provides that "[t]he

11  arbitrator shall have exclusive authority to resolve any Dispute, including, without

12  limitation, disputes arising out of or related to the interpretation or application of the

13  Arbitration Agreement, including the enforceability, revocability, scope, or validity of the

14  Arbitration Agreement or any portion of the Arbitration Agreement[.]"  (See Erickson Decl.

15  Ex. 1, at 51 (§ 1.6).)  Under relevant Ninth Circuit authority, this language constitutes

16  clear and unmistakable evidence that the threshold issue of arbitrability is delegated to an

17  arbitrator.  See, e.g., Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010)

18  (finding clear and unmistakable intent to delegate question of arbitrability where contract

19  provided "the Arbitrator shall have exclusive authority to resolve any dispute relating to

20  the enforceability of this Agreement including, but not limited to any claim that all or any

21  part of this Agreement is void or voidable") (internal quotation, citation and alteration

22  omitted); Mohamed, 848 F.3d at 1209 (finding clear and unmistakable intent to delegate

23  question of arbitrability where delegation clause delegated authority to decide issues

24  relating to the "'enforceability, revocability, or validity of the Arbitration Provision or any

25  portion of the Arbitration Provision'").

26      Moreover, the Arbitration Agreement states arbitration "will be administered by the

27  American Arbitration Association ('AAA') in accordance with the Consumer Arbitration

28  Rules (the 'AAA Rules') then in effect" (see Erickson Decl. Ex. 1, at 49 (§ 1.4)), and,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  pursuant to those rules, the "existence, scope, or validity of the arbitration agreement"

2  and the "arbitrability of any claim" are delegated to the arbitrator, see AAA Rule R-14(a).

3  "Virtually every circuit to have considered the issue," including the Ninth Circuit, "has

4  determined that incorporation of the [AAA] arbitration rules constitutes clear and

5  unmistakable evidence that the parties agreed to arbitrate arbitrability." See Oracle Am.,

6  Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (9th Cir. 2013).

7       Although plaintiffs contend the instant Delegation Clause nonetheless fails on

8  grounds of ambiguity, the Court, as discussed below, is not persuaded.

9       In that regard, plaintiffs point to the "quantity" and "complexity" of exceptions to

10  delegation (see Pls.' Opp'n at 23:9-10), noting the cases on which Coinbase relies at

11  most "involved just one," whereas "here, there are four" (see Pls.' Opp'n at 23:11

12  (emphasis in original)).[2]  Plaintiffs, however, cite to no case placing a limit on the number

13  of allowable exceptions, nor has the Court located any such authority.  The Court thus

14  turns to the question of complexity.

15       At the outset, plaintiffs argue that the Arbitration Agreement contains two separate

16  sections containing exceptions to covered disputes, namely, the Applicability Clause and

17  the Delegation Clause.  The exempted disputes in the Applicability Clause, however, are

18  not exceptions to disputes covered by the Arbitration Agreement, but, rather, two types of

19  lawsuits that are, at either party's election, excluded from the Arbitration Agreement itself,

20  specifically, those brought by either party "in small claims court" and those seeking

21  equitable relief for "infringement or other misuse of intellectual property" (see Erickson

22  _____

23       [2] As noted above, the four exceptions set forth in the Delegation Clause are: (1)
"all Disputes arising out of or relating to the Section entitled "Waiver of Class and Other
24  Non-Individualized Relief," including any  claim that all or part of the Section entitled
"Waiver of Class and Other Non-Individualized Relief" is unenforceable, illegal, void or
25  voidable, or that such Section entitled "Waiver of Class and Other Non-Individualized
Relief" has been breached" (hereinafter, "Exception 1"); (2) "except as expressly
26  contemplated in the subsection entitled 'Batch Arbitration,' all Disputes about the
payment of arbitration fees" (hereinafter, "Exception 2"); (3) "all Disputes about whether
27  either party has satisfied any condition precedent to arbitration" (hereinafter, "Exception
3"); and (4) "all Disputes about which version of the Arbitration Agreement applies"
28  (hereinafter, "Exception 4").  (See Erickson Decl. Ex. 1, at 51 (§ 1.6).)

1    Decl. Ex. 1, at 48 (§ 1.1)), both of which exclusions appear reasonably straightforward.[3]

2    Next, plaintiffs argue the subject of covered disputes is broken up between the

3    Applicability Clause and the Delegation Clause.  Contrary to plaintiffs' argument,

4    however, the Delegation Clause does not confusingly "tack[] on more disputes" to those

5    covered by the Applicability Clause.  (See Pls.' Opp'n at 21:14.)  Rather, it makes clear

6    that threshold arbitrability questions, namely, those ordinarily decided by the court, will be

7    decided by the arbitrator, i.e., what every cognizable delegation clause purports to do.

8    See Caremark, LLC v. Chickasaw Nation, 43 F.4th 1021, 1029 (9th Cir. 2022) (defining

9    delegation clause as "a clause within an arbitration agreement that delegates to the

10   arbitrator gateway questions of arbitrability").

11   Similarly unpersuasive is plaintiffs' argument that the exceptions to coverage are

12   confusingly broken up between the Applicability Clause and the Delegation Clause.  The

13   exceptions enumerated in the Delegation Clause, however, are issues arising out of

14   lawsuits that are covered by the Arbitration Agreement, whereas the exceptions listed in

15   the Applicability Clause are, as noted, lawsuits that are not covered by the Arbitration

16   Agreement.

17   The Court next turns to plaintiffs' argument that the exceptions enumerated in the

18   Delegation Clause are, themselves, confusing.  In support thereof, plaintiffs focus on

19   Exception 2 and Exception 3.[4]  Although Exception 2, which pertains to disputes

20   regarding the payment of arbitration fees, does, as plaintiffs point out, itself contain an

21   exception, the Court disagrees that "the readers head" is, as a result, "spinning."  (See

22   Pls.' Opp'n at 21:16-17.)  The intent of Exception 2 clearly is to have the court, rather

23   than the arbitrator, decide disputes about what and how the arbitrator will be paid, the

24

25          [3] To the extent any party arguably might have a question as to the meaning of
     "intellectual property," clarifying examples are provided immediately following that term.
26

27          [4] Exception 1 is couched in language that in no material way differs from that
     which has been found clear and unmistakable, see Mohamed, 848 F.3d, at 1208, and
28   Exception 4 is both brief and to-the-point.

United States District Court
Northern District of California

1    sole distinction being fees incurred where a large number of arbitrations are grouped

2    together for resolution in a "batch."  (See Erickson Decl. Ex. 1, at 51-52 (§§ 1.6, 1.8).)  As

3    to Exception 3, even assuming, arguendo, plaintiffs are correct that, as a practical matter,

4    it is only the user who has any condition precedent to satisfy, such circumstance does

5    not, contrary to plaintiffs' characterization, render its clear language "unintelligible."  (See

6    Pls.' Opp'n at 22:5-6.)

7         Lastly, to the extent plaintiffs contend the Arbitration Agreement contains "several

8    instances of conflicting terms" (see Pls.' Opp'n at 22:17-18), the Court is not persuaded.

9    First, contrary to plaintiffs' assertion, there is, for the reasons set forth above as to a lack

10   of conflict between the Delegation Clause and Applicability Clause, no conflict between

11   the Delegation Clause and § 1.2, which incorporates the Applicability Clause.  (See

12   Erickson Decl. Ex. 1, at 48-49 (§ 1.2) (providing "all Disputes shall be resolved by

13   arbitration under this Arbitration Agreement except as specified in the subsection titled

14   'Applicability of the Arbitration Agreement' above").)  Second, and again contrary to

15   plaintiffs' assertion, there is no conflict between the Delegation Clause's inclusion of four

16   exceptions and § 1.4's incorporation of the AAA Rules.  Although, as plaintiffs point out,

17   the AAA Rules contain a rule delegating all arbitrability issues to the arbitrator, see AAA

18   Rule R-14(a) (providing "[t]he arbitrator shall have the power to rule on his or her own

19   jurisdiction, including any objections with respect to the existence, scope, or validity of the

20   arbitration agreement or to the arbitrability of any claim or counterclaim"), they also

21   contain a rule allowing the parties to alter any AAA Rule, see AAA Rule R-1(c) (providing

22   "[t]he consumer and the business may agree to change these Rules . . . in writing"),

23   thereby making clear the Arbitration Agreement governs.

24        Accordingly, for the reasons stated above, the Court finds the parties clearly and

25   unmistakably delegated the question of arbitrability to the arbitrator, and, consequently,

26   the next question is whether the agreement to delegate arbitrability, i.e., the Delegation

27   Clause, is unconscionable.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**B. The Delegation Clause is Not Unconscionable**

Under the FAA, an arbitration agreement is invalid where it is unenforceable under "generally applicable contract defenses" recognized by state law, such as "unconscionability."  See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal quotation and citation omitted).  "[U]nconscionability has both a procedural and a substantive element."  A & M Produce Co. v. F.M.C. Corp., 135 Cal.App.3d 473, 486 (1982) (internal quotation and citation omitted).  The focus of the procedural element is on oppression or surprise.  See id.  "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice."  Id. (internal quotation and citation omitted).  "Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce" said terms.  See id. (internal quotation and citation omitted).  "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion[.]"  Discover Bank v. Superior Court of L.A., 36 Cal.4th 148, 160 (2005).  Substantive unconscionability focuses on whether the contract or provision thereof leads to "overly harsh" or "one-sided" results.  See A & M Produce, 135 Cal.App.3d at 487.  "A contract term is not substantively unconscionable," however, "when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience."  See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 246 (2012) (internal quotation and citation omitted).  To be unenforceable, a contract must be both procedurally and substantively unconscionable.  See id. at 247.

California courts apply a "sliding scale" analysis in making determinations of unconscionability: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  See Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir.2007) (internal quotation and citation omitted).  Thus, although both procedural and substantive unconscionability "must be present" for the contract to be declared unenforceable, "they need not be present in equal amounts."  See Harper v.

United States District Court
Northern District of California

1    *Ultimo*, 113 Cal.App.4th 1402, 1406 (2003).

2              **a. Procedural Unconscionability**

3          Plaintiffs characterize the Delegation Clause as a "contract of adhesion,

4    presenting terms in inconspicuous font, buried in lengthy text." (See Pls.' Opp'n at 23:17-

5    18.)  In addition, plaintiffs contend, the Delegation Clause "introduced significant changes

6    compared to the prior version[,]" which "self-serving" changes "were not called out in the

7    User Agreement, the January 2022 email announcing the change, or the pop-up box

8    requiring user consent."  (See Pls.' Opp'n at 23:18-21.)

9          Coinbase disagrees, noting that when the 2022 User Agreement "went live,

10   existing Coinbase users were routed to a landing page when logging into their accounts,"

11   which landing page "announced that Coinbase was 'updating [its] User Agreement,' and

12   prompted the user to '[r]eview [the] terms.'" (See Defs.' Mot. to Compel Arbitration

13   ("Defs.' Mot."), at 3:21-23, Dkt. No. 30 (citing Black Decl. ¶ 19, Exs. I, J).)  As Coinbase

14   further notes, users were then "directed to 'review and accept [the] updated terms and

15   conditions to continue using [their] Coinbase account.'" (See Defs.' Mot. at 3:24-25

16   (citing Black Decl. Exs. I, J).)  In addition, as Coinbase points out, a January 2022 email

17   from Coinbase to plaintiffs "informing them of the forthcoming update to the User

18   Agreement" specifically "flagged changes to the Arbitration Agreement contained within

19   the User Agreement." (See Mot. at 2:21-22; 3:3-5 (citing Black Decl. ¶17, Ex. H).)

20   Consequently, Coinbase argues, "[p]laintiffs were fairly apprised of the 2022 User

21   Agreement update and were free to reject it and trade their cryptocurrency assets

22   elsewhere if they did not want to agree to arbitration." (See Defs.' Reply at 1:24-26.)

23         "To determine whether a contract of adhesion is procedurally unconscionable,

24   California courts consider several factors, including: (1) the relative bargaining power and

25   sophistication of the parties, (2) the complaining parties' access to reasonable market

26   alternatives, and (3) the degree to which an offending provision of a contract is buried in

27   a lengthy...agreement." *Shierkatz Rllp v. Square, Inc.*, 2015 WL 9258082, at *9 (N.D.

28   Cal. Dec. 17, 2015) (internal quotation and citation omitted).

1    Here, although "the relative bargaining power between the parties favors

2  [Coinbase] and the . . . User Agreement was presented on a take-it-or-leave-it basis,

3  nothing in the record suggests that Coinbase was [p]laintiffs' only option for

4  cryptocurrency services," see Alfia v. Coinbase Glob., Inc., No. 21-CV-08689-HSG, 2022

5  WL 3205036, at *4 (N.D. Cal. July 22, 2022) (granting Coinbase's motion to compel

6  arbitration under 2017 User Agreement; finding said agreement contained "minimal"

7  procedural unconscionability), and although, as noted, plaintiffs contend Coinbase did not

8  call out "self-serving" changes to the Delegation Clause (see Pls.' Opp'n at 23:19-20),

9  Coinbase, both prior to and at the point the 2022 User Agreement went live, notified

10  users that changes had been made; in addition, it "clearly labeled" the Delegation Clause

11  with the title "'Authority of the Arbitrator' in bold print," see Donovan v. Coinbase, No. 22-

12  cv-2826-TLT,  slip. op. at 7:7-8 (N.D. Cal. Jan. 6, 2023) (internal quotation, citation, and

13  alteration omitted) (granting Coinbase's motion to compel arbitration under 2022 User

14  Agreement; finding said agreement contained "minimal" procedural unconscionability);

15  (see also Black Decl. Exs.  H, I, J; Erickson Decl. Ex. 1, at 51 (§ 1.6)).  Under such

16  circumstances, the Court finds, at most, a minimal degree of procedural unconscionability

17  arising from the Delegation Clause.  The Court next turns to the question of whether the

18  Delegation Clause is substantively unconscionable.

19          **b.  Substantive Unconscionability**

20          As to substantive unconscionability, plaintiffs assert that two of the four exceptions

21  listed in the Delegation Clause "strip [the clause] of mutuality."  (See Pls.' Opp'n at 24:17-

22  18.)  In particular, plaintiffs again contend Exception 3, which pertains to "Disputes about

23  whether either party has satisfied any condition precedent to arbitration" (see Erickson

24  Decl. Ex. 1, at 51 (§ 1.6)), is "unilateral as only users are subject to a condition

25  precedent" (see Pls.' Opp'n at 24:11-12); plaintiffs also contend Exception 2, which

26  pertains to "Disputes about the payment of arbitration fees" (see Erickson Decl. Ex. 1, at

27  51 (§ 1.6)), only "serves to benefit Coinbase as it is the one with the lion's share of the

28  financial obligation in arbitration" (see Pls.' Opp'n at 24:15-17).  As set forth below, the

United States District Court
Northern District of California

Court is not persuaded.

First, there is nothing unconscionably one-sided about either of the above exceptions' affording both parties equal access to a court as opposed to an arbitrator, even if one party is more likely to avail itself of that access.[5] C.f. Saravia v. Dynamex, 310 F.R.D. 412, 421 (N.D. Cal. 2015) (finding lack of mutuality where requirement that "any arbitration proceedings . . . occur in Dallas, Texas," which requirement, albeit equally applicable to both parties, imposed a disproportionate "hardship" on plaintiff, who resided "over a thousand miles" from Dallas, and "would require [plaintiff] to incur a prohibitive cost in order to enforce his rights").

Likewise unavailing is plaintiffs' argument that "[o]ther terms [of the Arbitration Agreement] as applied to the [D]elegation [C]lause . . . render it unconscionable by impeding [p]laintiffs' ability to arbitrate whether the [A]rbitration [A]greement as a whole is unconscionable." (See Pls.' Opp'n at 24:22-23.) Where a plaintiff's unconscionability challenge is directed not to "the delegation provision specifically," but, rather, to the "[arbitration] [a]greement as a whole," the Court "must enforce" the delegation provision and leave such challenges "for the arbitrator." See Rent-A-Center, 561 U.S. at 72; see also Brennan v. Opus Bank, 796 F.3d 1125, 1133 (9th Cir. 2015) (holding, where no argument "specific to the delegation provision" is made, unconscionability challenge is "for the arbitrator").

Accordingly, for the reasons stated above, plaintiffs have failed to show the Delegation Clause in the Arbitration Agreement is unenforceable as unconscionable. The Court thus turns to plaintiffs' final challenge to the Delegation Clause, namely, that it is inapplicable to the unconscionability challenges raised in their opposition to the instant

---

[5] Indeed, to the extent Exception 3 arguably favors either party, it favors the instant plaintiffs, who seek to have all arbitrability issues decided by a court. As to Exception 2, plaintiffs have not shown a lack of mutuality, in that both parties to the agreement are required to share payment of some of the arbitration fees, and Coinbase's assumption of responsibility for paying most of them can hardly be described as unconscionable.

motion.

**C. Whether Any of Plaintiff's Challenges Are Carved Out of the Delegation Clause is a Question for the Arbitrator**

Plaintiffs contend "[t]he majority (if not all) of the issues . . . raise[d] . . . related to unconscionability of the [A]rbitration [A]greement are expressly carved out of the [D]elegation [C]lause by the four exceptions . . . and reserved for judicial determination." (See Pls.' Opp'n at 20:4-6.)  In particular, plaintiffs argue, their unconscionability challenge to § 1.8, the section of the Arbitration Agreement titled "Batch Arbitration," is encompassed by Exception 1, which covers "Disputes . . . relating to the Section entitled 'Waiver of Class and Other Non-Individualized Relief,'" (see Pls.' Opp'n at 20:6-9; Erickson Decl. Ex. 1, at 51 (§ 1.6)), and that their unconscionability challenge to §7.2, the section of the 2022 User Agreement titled "Formal Complaint Process," is encompassed by Exception 3, which covers "Disputes about whether either party has satisfied any condition precedent to arbitration" (see Pls.' Opp'n at 20:14-19; Erickson Decl. Ex. 1, at 51 (§ 1.6)). [6]  The Court again disagrees.

Under the plain language of the Delegation Clause, the question of whether the above-referenced unconscionability issues are, in fact, carved out of the Delegation Clause is, itself, a question for the arbitrator.  (See Erickson Decl. Ex. 1, at 51 (§ 1.6) (vesting arbitrator with "exclusive authority to resolve any Dispute . . . including the . . . scope . . . of the Arbitration Agreement, or of any portion of the Arbitration Agreement")); see also SteppeChange LLC v. VEON Ltd., 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018) (holding "[n]umerous courts in this circuit have found that despite a carveout, the question of arbitrability, even on the subject of what has been carved out, must be decided by the

---

[6] Although plaintiffs argue Exception 4, which covers "Disputes about which version of the Arbitration Agreement applies," is "also triggered" by the unconscionability challenges raised in their brief (see Erickson Decl. Ex. 1, at 51 (§ 1.6); Pls.' Opp'n at 20:19-20), plaintiffs' brief in fact raises no such dispute, and, as Coinbase points out, "rel[ies] on the same version of the User Agreement and Arbitration Clause that Coinbase relied upon" in its motion (see Defs.' Reply at 10:21-22).  Moreover, even if such a dispute does exist, it is, as discussed above, a question for the arbitrator.

1 | arbitrator").

2 |       Accordingly, for the reasons stated above, plaintiffs have failed to show their

3 | unconscionability challenges are, at this stage in the litigation, proper for resolution by the

4 | Court.

5 | **CONCLUSION**

6 |       For the reasons stated above, Coinbase's motion to compel arbitration is hereby

7 | GRANTED, and the above-titled action is hereby STAYED pending the completion of

8 | arbitration.

9 |       **IT IS SO ORDERED.**

10 |

11 | Dated: February 3, 2023

12 | MAXINE M. CHESNEY
United States District Judge