Julie C. Erickson (SBN 293111)
julie@eko.law
Elizabeth A. Kramer (SBN 293129)
elizabeth@eko.law
Kevin M. Osborne (SBN261367)
kevin@eko.law
**ERICKSON KRAMER OSBORNE LLP**
44 Tehama Street
San Francisco, CA 94105
Tel: (415) 635-0631

*Attorneys for Plaintiffs*

Meredith R. Dearborn (SBN 268312)
mdearborn@paulweiss.com
Randall Scott Luskey (SBN 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street. 24th Floor
San Francisco, CA 94105
Tel: (628) 432-5100

*Attorneys for Defendants*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LARRY PEARL and ERIC VLADIMIRSKY, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>COINBASE GLOBAL, INC. and COINBASE INC.,<br><br>    Defendants | 3:22-cv-3561-MMC<br><br>STIPULATION AND [PROPOSED] ORDER |

Pursuant to Civil Local Rules 5, 6-1(a), and 7-12, Plaintiff Larry Pearl and Defendants Coinbase Global, Inc. and Coinbase, Inc. (together "Coinbase"), by and through their respective counsel, hereby stipulate as follows:

WHEREAS, on September 12, 2022, Coinbase filed a motion to stay this case and compel arbitration of plaintiffs' claims on an individual basis (ECF 30);

WHEREAS, on February 2, 2023, this Court granted Coinbase's motion, finding that the delegation clause of Coinbase's arbitration agreement was enforceable, and stayed this matter pending the completion of arbitration (ECF 45);

WHEREAS, on September 21, 2023, the American Arbitration Association ("AAA") arbitrator presiding over Mr. Pearl's claims ruled that Coinbase's arbitration agreement is unenforceable and that Mr. Pearl's claims should be returned to this Court (Exhibit 1);

WHEREAS, on October 23, 2023, the AAA arbitrator presiding over Mr. Vladimirsky's claims ruled that Coinbase's arbitration agreement is enforceable and that Mr. Vladimirsky's claims should remain in AAA (Exhibit 2);

NOW, THEREFORE, THE PARTIES STIPULATE AS FOLLOWS:

1. Mr. Pearl's claims against Coinbase should be returned to the United States District Court for the Northern District of California and the stay entered on February 3, 2023 should be dissolved;

2. Within thirty (30) days after the Court grants the proposed order attached hereto, Mr. Pearl will file an amended class action complaint;

3. Coinbase will respond to the amended class action complaint within forty-five (45) days after the amended class action complaint is filed; if a motion to dismiss is filed, Plaintiffs will have 30 days to file an opposition, and Coinbase will have 14 days to reply; and

4. The parties do not waive any rights, arguments, claims, defenses, or counterclaims whatsoever.

IT IS SO STIPULATED.

1

Dated: February 16, 2024

2

ERICKSON KRAMER OSBORNE LLP          PAUL, WEISS, RIFKIND, WHARTON &
                                     GARRISON LLP

3

4

By: _/s/ Elizabeth A. Kramer_        By: _/s/Randall Scott Luskey_

5

  Elizabeth A. Kramer                  Randall Scott Luskey

6

  Julie C. Erickson (SBN 293111)       Meredith R. Dearborn (SBN 268312)

7

  Elizabeth A. Kramer (SBN 293129)     Randall Scott Luskey (SBN 240915)
  Kevin M. Osborne (SBN261367)         **PAUL, WEISS, RIFKIND, WHARTON**

8

  **ERICKSON KRAMER OSBORNE LLP**      **& GARRISON LLP**
  44 Tehama Street                     535 Mission Street. 24th Floor

9

  San Francisco, CA 94105             San Francisco, CA 94105
  Tel: (415) 635-0631                  Tel: (628) 432-5100

10

  Trenton R. Kashima (SBN 291405)

11

  **MILBERG COLEMAN BRYSON**
  **PHILLIPS GROSSMAN PLLC**

12

  401 West C St., Suite 1760           Attorneys for Defendants
  San Diego, CA 92101                  COINBASE GLOBAL, INC. AND

13

  Tel: (714) 651-8845                  COINBASE, INC.

14

  Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ATTESTATION</u>**

Pursuant to Local Rule 5-1(h)(3), I attest that each signatory above has concurred in the filing of this document and has authorized the use of their electronic signature.

Dated: February 16, 2024                                    ERICKSON KRAMER OSBONE LLP


By:  */s/ Elizabeth A. Kramer*
       Elizabeth A. Kramer

**[PROPOSED] ORDER**

PURSUANT TO STIPULATION, IT IS HEREBY ORDERED that:

1.  The stay entered on February 3, 2023 is dissolved.

2.  Mr. Pearl is directed to file an amended class action complaint within thirty (30) days.

3.  Coinbase will respond to the amended class action complaint within forty-five (45) days after the amended class action complaint is filed.

4.   If a motion to dismiss is filed, Plaintiffs will have 30 days to file an opposition, and Coinbase will have 14 days to reply.

IT IS SO ORDERED.

DATED: _____, 2024

_____
HON. MAXINE M. CHESNEY
United States District Judge

# Exhibit 1

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| LARRY PEARL | ) | Case No.: 01-23-0000-5465 |
| | ) | |
| Claimant | ) | |
| | ) | |
| v. | ) | RULING ON CLAIMANT'S MOTION |
| | ) | REGARDING ARBITRABILITY |
| COINBASE, INC. and COINBASE | ) | |
| GLOBAL, INC., | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COINBASE, INC., | ) | |
| | ) | |
| Counterclaimant. | ) | |
| _____ | ) | |

The Motion of Claimant, Larry Pearl, regarding the issue of Arbitrability came on for hearing on September 13, 2023 at 10:00 a.m. The hearing was conducted via zoom. Appearing for Claimant were Kevin M. Osborne, Esq. and Julie C. Erickson, Esq. Appearing for Respondent and Counterclaimant, Coinbase, Inc., was Paul Brachman, Esq.

The Arbitrator having reviewed the lengthy written submissions, including Declarations and attached Exhibits and having further reviewed pertinent cited case authorities and having considered the reasoned arguments of counsel, hereby renders the following ruling on the subject motion.

## ISSUE PRESENTED

Is the Arbitration Agreement entered into by Claimant with Respondent enforceable?

## BACKGROUND

Respondent Coinbase operates a website from which customers can buy and sell digital assets and publically post data regarding the assets. As a predicate to a prospective user of

Coinbase accessing its platform and services, the user must first open a Coinbase account and agree to its User Agreement and Privacy Policy.

Claimant, Larry Pearl, is a Coinbase customer who invested in a digital currency, Terra USD.  Claimant filed suit in the United States District Court for the Northern District of California, alleging various forms of malfeasance by Respondent, including fraud, misrepresentation and unfair business practices and alleging various forms of damages to claimant as a result thereof.

As part of its defense in the District Court action, Respondent filed a Motion to Compel Arbitration pursuant to the Arbitration Provision contained in the Coinbase User Agreement. The District Court in an Order dated February 3, 2023, granted Respondent's Motion to Compel Arbitration, leaving for the appointed Arbitrator, the question presented in this instant Motion, the enforceability of the subject Arbitration Agreement.  (Appendix 5 of the User Agreement)

## ANALYSIS

The Order Granting the Respondent's Motion to Compel Arbitration  notes at page 12, lines 13-16 "Where a plaintiff's unconscionability challenge is directed not to "the delegation provisions specifically," but, rather, to the "[arbitration] [a]greement as a whole," the Court "must enforce" the delegation provision and leave such challenges "for the Arbitrator."  As such, and as noted elsewhere in the District Court's Order, the Arbitrator in this instance has broad discretion to determine the enforceability of   the January 22nd version of the Arbitration Agreement at issue.

## PROCEDURAL UNCONSCIONABILITY

Under California Law, an Arbitration Agreement is unenforceable if it is procedurally and substantively unconscionable.   Procedural unconscionability normally arises out of the

circumstances surrounding the negotiation of a contract.  Surprise and oppression are the key elements to be addressed in determining the question of procedural unconscionability.  Here, although the District Court found "minimal" procedural unconscionability, the Arbitrator finds, based upon the parties submissions, that substantial procedural oppression is present given the adhesive nature of the subject User Agreement and the unequal bargaining positions of the parties. This finding is further supported by the undisputed fact that the subject User Agreement has been updated more than thirty times since  claimant opened his Coinbase account.  This frequency of unilateral modification of the User Agreement evidences a high degree of procedural unconscionability.

Furthermore, as evidenced by Exhibit 4 to the Declaration of Julie Erickson in support of the Claimant's Motion, the only way Claimant could reject the terms of the User Agreement was to stop using his account and by his belief, forfeit his investments.  It is clear that when Claimant sought to use his Coinbase account following the January 2022 changes to the Agreement, he was greeted with a pop-up message stating : "You won't be able to continue using your Coinbase account until you accept the terms."

By Claimant's own declaration, unless he agreed to Respondent's new terms, he would lose access to the funds he had in his account.  As a result, he believed he had no choice but to agree to the changes.  This is oppressive unilateral unconscionable conduct by Respondents. Respondent's argument that there was an available detour that would have allowed Claimant to access his account if he refused to accept the subject language is rejected as illusory and unavailing.

Claimant also believed he had no reasonable alternatives to using the Coinbase platform. The submissions of both Claimant and Respondent make it clear that all reasonably available

other platforms contained Arbitration Provisions that would have put Claimant in no better position than he found himself with the Coinbase platform. These facts establish a necessary degree of oppression such as to render the Arbitration Provision procedurally unconscionable.

## SUBSTANTIVE UNCONSCIONABILITY

The Arbitrator further finds the Arbitration Clause to be substantively unconscionable. This finding is dictated by the facts presented which by a clear preponderance of the evidence show that the subject Arbitration Provision is overly harsh and likely to generate one-sided results.

Specifically, the Arbitrator finds a lack of mutuality based upon the IP exemption in the Agreement which provides that a party to the agreement may bring an action in Court to protect their intellectual property rights. This provision is opaquely one sided, favoring Respondents, as it is obvious that Coinbase users do not retain intellectual property rights under the User Agreement. Realistically, this exemption can only benefit Coinbase.

Furthermore, Coinbase reserves for itself unilateral non-arbitration remedies. As noted in Claimant's submission, Coinbase can essentially do anything it wants to remedy problems it has with its users whereas users, on the other hand, are contractually bound to use the Arbitration forum to resolve a dispute with Coinbase. These facts add to the substantive unconscionability of the Agreement.

The Arbitrator further believes as argued by Claimant, that there is a one-sided pre-dispute resolution requirement in the Agreement which further renders the Agreement substantively unconscionable. Taken and read as a whole, the Agreement appears heavily one-sided in favor of Respondents.

The batch Arbitration Provisions contained in the "Waiver of Class and Other Non-Individualized Relief" further appear to lack transparency and to add to the one-sided nature of the Agreement.

Finally, it is clear from a reading of the Agreement and the evidence before the Arbitrator that Claimant has an absence of meaningful choice as to dispute resolution under the terms of the Agreement and that the discovery, confidentiality, costs and attorney's fees terms of the Agreement unnecessarily favor Respondents.

<u>APPLICATION OF ARMENDARIZ</u>

The core question, whether the subject Arbitration Agreement is sufficiently unconscionable as to be unenforceable appears to have been answered in the affirmative. The User Agreement which contains the Arbitration Provision is clearly a "Contract of Adhesion", whereby one party is telling the other how it is going to be if they are going to do business. In this case, it is Respondent's imposing the Contract of Adhesion upon the Claimant. In reviewing the pertinent authorities, it is clear the Court's focus most intently on the issue of unconscionability by analyzing whether there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Such analysis, in this case, clearly shows that the procedural unconscionability element of the analysis has been met.

Substantive unconscionability deals with actual unfairness and is centered on the question of mutuality. It is equally clear that in California, agreements to Arbitrate must contain some degree of bilaterality to avoid unconscionability   Procedural unconscionability results from oppression or unfair surprise to one party surprised by unequal bargaining power. In this case,

the evidence is clear that even under a sliding scale analysis, there is sufficient evidence to support the Arbitrator's finding of unconscionability.

*Armendariz v. Found. Health Psychcare Servs. Inc.*, 24 Cal. 4th 83 (2000) is dispositive.. *Armendariz* instructs that a trier of fact should look for the presence of certain terms within an agreement to determine if it meets minimum levels of fairness for both parties, and if the agreement contains the requisite evenhandedness to be enforceable.

Many Courts, in both the employment and commercial context, have found that the absence of or interference with some or all of a number of the factors discussed above can and will render an Arbitration Agreement unenforceable.

California law utilizes a sliding scale to determine the ultimate question of unconscionability, meaning the greater substantive unconscionability may compensate for a lessor procedural unconscionability.  In California, the major  concern of the  unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other parties.

The arbitrator finds the case authority cited by Respondents unpersuasive given the facts of this case and the agreement at issue.

Claimant was compelled to accept the changes to terms of the User Agreement, on an ongoing basis (See pop-up, Plaintiff's Exhibit 4) which after informing Claimant of an update to the User Agreement stated "... you won't be able to continue using your Coinbase account until you accept the terms."  This language created, in the mind of the Claimant a "take it or leave it" situation where he had no choice, i.e. no bargaining power, but to accept the modification to the User Agreement if he wished to continue to use his Coinbase account and his investment assets contained therein.

## **ORDER**

The affirmative relief sought in the Motion of Claimant  regarding Arbitrability is GRANTED.   The Arbitration Agreement is unenforceable due to both the procedural and substantive unconscionability discussed herein.  It is therefore the Order of the Arbitrator that this matter be returned to the forum of the United States District Court for the Northern District of California, specifically Case No. 22-CV-03561-MNC,  for further proceedings  consistent with this Arbitrator's Ruling.

Dated: September 21, 2023

_Richard M. Williams_
RICHARD M. WILLIAMS
ARBITRATOR

# Exhibit 2



## ORDER OF ARBITRATOR REGARDING CLAIMANT'S ARBITRABILITY MOTION

| AMERICAN ARBITRATION ASSOCIATION |
| --- |
| |
| **Case Number:**        **01-23-0001-1727** |
| |
| **Eric Vladimirsky** |
| **("Claimant")** |
| |
| **v.** |
| |
| **Coinbase, Inc. and** |
| **Coinbase Global Inc.** |
| **("Respondents")** |

## I.     BACKGROUND

### A.  The Parties

Coinbase, Inc. is a digital currency exchange that operates an online platform for buying, selling, transferring, and storing digital cryptocurrencies such as bitcoin.  Declaration of Suellen Black In Support of Respondents' Opposition to Claimant's Motion Regarding Arbitrability ("Black Decl."), ¶ 2.  Claimant is a cryptocurrency investor who created an account with Coinbase in 2013 and accepted the Coinbase User Agreement then in effect. Black Decl., ¶ 9.  Claimant purchased a cryptocurrency called TerraUSD through his Coinbase account and alleges that in May 2022, he lost 90% of the value of his TerraUSD holdings. See Attachment to Claimant's Demand for Arbitration.

### B.  The 2022 Coinbase User Agreement Is Presented to and Accepted by Claimant

Coinbase updated its User Agreement in early 2022 (the "2022 User Agreement") and

sought to obtain from its users, including Claimant, acceptance of the 2022 User Agreement.

As part of Coinbase's campaign to have users sign up to the 2022 User Agreement, Coinbase

sent an email dated January 26, 2022 to its users, including Claimant, which read:

> Next week we will be updating our User Agreement so you know what to expect
> when you use our services. You'll be asked to accept our updated terms and
> conditions at that time, when you log into your Coinbase Account.
>
> You can read the entire agreement here. However at a glance, here's what this
> update means for you:
>
> - **Easier to Understand:** We're reorganized and modified our user
>   agreement to make it more understandable to you in line with our culture
>   of clear communication
> - **Clarity on Dispute Resolution:** We've revised our arbitration
>   agreement to streamline the process for resolving problems you may
>   experience.
> - **Transparent Product Terms:** We've consolidated the terms relating
>   to many of our new products in a single appendix to make them easier
>   to find.
> - **Restrictions on Use of Services:** We've created a standalone policy to
>   make it easy for you to understand how you may use our services.
> - **Response to Regulatory and Legal Changes:** We've updated our tax
>   language and some of our definitions to reflect the fact that crypto and
>   crypto law is always on the move!
>
> Please make sure you read the updated User Agreement and check out our
> help center article if you have any questions.
>
> Thank you for being part of the crypto economy!
>
> Team Coinbase.

Black Decl., ¶ 12; Black Decl., Exh. C.

Embedded within Coinbase's January 26, 2022 email were several hyperlinks. When

clicked, one hyperlink took users to the 2022 User Agreement and another hyperlink to an

article titled "January 2022 Coinbase User Agreement Update".  Declaration of Hamzah Zia In

2

Support of Respondents' Opposition to Claimant's Motion Regarding Arbitrability ("Zia Decl."), ¶¶ 6-7.  The article included questions and answers.  In response to the question "What happens if I don't accept the new user agreement?" was this answer: "If you don't accept the new agreement, then you won't be able to access your Coinbase account.  If you choose not to accept these changes and want to close your account, please submit a support request to Coinbase Support can help you close your account and move your funds off the platform."  Zia Decl., ¶ 8.

On February 10, 2022, Claimant logged into his Coinbase account and accepted the 2022 Coinbase User Agreement by clicking on a large blue button labeled "Accept terms". Black Decl., ¶ 10; Zia Decl. ¶ 5.

As previewed by its January 2022 article that it made available to its users, if a Coinbase user such as Claimant declined to accept the 2022 User Agreement, then the user's account would be flagged for mandatory closure.  As part of such closure process, Coinbase would prompt the user to transfer the assets in the user's Coinbase account to a different platform. Black Decl., ¶ 13.

### C.  The Arbitration Agreement

The Arbitration Agreement appears as Appendix 5 to the 2022 User Agreement.  Black Decl., Exh. B.  The 2022 User Agreement, including all of its five appendices, is fifty-two pages long.  In the middle of the second page of the 2022 User Agreement, the following statement regarding Appendix 5 appears in bold and uppercase:

> **APPENDIX 5 OF THIS AGREEMENT, CONTAIN[S] PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COINBASE. APPENDIX 5 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY**

**BINDING AND FINAL ARBITRATION. APPENDIX 5 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER.**

Id.

The Arbitration Agreement is five pages long and contains nine sections: Section1.1 (titled "Applicability of Arbitration Agreement") through Section 1.9 (titled "Modification"). The American Arbitration Association's ("AAA") rules, including the AAA's Consumer Arbitration Rules, are incorporated into Section 1.4 (titled "Rules and Forum") of the Arbitration Agreement. Pursuant to AAA's rules: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rules, R-14(a).

### D. The U.S. District Court Case

On June 16, 2022, counsel for Claimant filed a putative class action complaint in the Northern District of California on behalf of Claimant and one other plaintiff asserting six causes of action against Respondents, including claims under the Consumers Legal Remedies Act ("CLRA"). Declaration of Julie C. Erickson In Support of Claimant's Motion Regarding Arbitrability ("Erickson Decl."), ¶ 2. Counsel for Claimant filed a first amended complaint on September 20, 2022. On September 12, 2022, Coinbase filed a motion to compel arbitration and on February 3, 2023, the district court granted Coinbase's motion. Pearl v. Coinbase Glob., Inc., 2023 WL 176190 (N.D. Cal. 2023).

### E. AAA Proceedings

On March 21, 2023, Claimant filed his AAA Arbitration Demand against Respondents. The sole issue presented in the Arbitration Demand is whether the Arbitration Agreement is enforceable. On April 18, 2023, Coinbase filed an Answering Statement and Counterclaim for

4

breach of contract, alleging that Claimant breached the Arbitration Agreement by filing a putative class action in federal district court rather than submitting his claims to AAA arbitration.

On August 8, 2023 a preliminary hearing was convened and on August 10, 2023, the Arbitrator issued a Preliminary Hearing Order.  The parties agreed upon a briefing schedule for Claimant's motion and as of September 26, 2023, briefing was completed.  A forty-five minute hearing via Zoom videoconference was convened on October 3, 2023 during which the parties amplified their written submissions and answered questions from the Arbitrator.

## II.   DISCUSSION

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA reflects a "liberal policy favoring arbitration."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2010).

Through his motion, Claimant seeks a ruling that the Arbitration Agreement is unenforceable.  Claimant contends that the Arbitration Agreement is unenforceable because it is procedurally and substantively unconscionable.  Respondents oppose the motion and contend that the Arbitration Agreement is enforceable.

### A.  Unconscionability

A contract or any of its clauses is unenforceable if it was "unconscionable at the time it was made." Cal. Civ. Code § 1670.5.  Claimant bears the burden to show that the Arbitration Agreement is procedurally and substantively unconscionable.  Armendariz v. Found. Health Psychcare Serv., Inc., 24 Cal. 4th 83, 114-15 (2000). Procedural and substantive

unconscionability are determined on a "sliding scale." "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." <u>Armendariz</u>, 24 Cal. 4th 83, 114.

### 1. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." <u>Chavarria v. Ralphs Grocery Co.</u>, 733 F.3d 916, 922 (9th Cir. 2013).

In determining whether the Arbitration Agreement is procedurally unconscionable, the following factors are considered: 1. the relative bargaining power and sophistication of the parties; 2. the aggrieved party's access to reasonable market alternatives; and 3. the degree to which an offending provision of a contract is buried in a lengthy agreement. <u>Shierkatz Rllp v. Square, Inc.</u>, 2015 WL 9258082 (N.D. Cal. 2015). Applying these three factors to the facts here leads the Arbitrator to conclude that only a modicum of procedural unconscionability exists.

Respondents do not challenge Claimant's position that the 2022 User Agreement was presented on a "take it or leave it basis" and is properly characterized as an "adhesion" contract. Respondents' bargaining power and sophistication meaningfully exceeded that of Claimant. This factor weighs solidly in Claimant's favor.

An adhesion contract, however, does not in and of itself equate to procedural unconscionability "when the customer has meaningful choices." <u>Wayne v. Staples, Inc.</u>, 135 Cal. App. 4th 466, 482 (2006). As a threshold matter, the record indicates that Claimant would not have lost his cryptocurrency investment had he chose to not accept the 2022 User Agreement. The respective declarations of Suellen Black and Hamzah Zia in support of

Respondents' opposition reflect that had Claimant declined to accept the 2022 User Agreement, Coinbase would close his account and prompt Claimant to transfer his Coinbase account assets to a different platform.  Black Decl. ¶ 13; Zia Decl. ¶¶ 3 and 8.

Claimant, who bears the burden of demonstrating procedural (and substantive) unconscionability has not shown that Coinbase was Claimant's only option for cryptocurrency services, that he lacked market alternatives to Coinbase and/or that he could not have purchased the TerraUSD cryptocurrency through other cryptocurrency exchanges.  Accordingly, the "reasonable market alternatives" factor weighs in Respondents' favor.

As to whether the Arbitration Agreement was "buried" in a lengthy agreement, it is true that the 2022 User Agreement's fifty-two pages render it lengthy.  Nevertheless, Respondents tried to draw Claimant's attention to the Arbitration Agreement and its implications.  This effort included publishing the January 2022 article with questions and answers.  It also included alerting Claimant in bold and capitalized text on the 2022 User Agreement's second page that Appendix 5 contained an agreement to arbitrate and that agreement, with limited exceptions, required "**THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION**."

On balance, the "buried in a lengthy agreement" factor does not weigh in either party's favor.

In deciding a string of motions to compel arbitration filed by Coinbase, a line of recent federal district court cases analyzing the same 2022 User Agreement and the same Coinbase communications to users regarding the 2022 update each have held that the Arbitration

Agreement's "Delegation Clause"[1] is enforceable.  Pearl v. Coinbase Glob., Inc., 2023 WL

176190 (N.D. Cal. 2023) (granting Coinbase's motion to compel arbitration and finding "at

most, a minimal degree of procedural unconscionability arising from the Delegation Clause");

Donovan v. Coinbase Global, Inc., 2023 WL 2124776 (C.D. Cal. 2023) (granting Coinbase's

motion to compel arbitration and finding "minimal" procedural unconscionability); Kattula v.

Coinbase Glob., Inc., 2023 WL 4373385 (N.D. Ga. 2023) (same); Flores v. Coinbase, Inc., 2023

WL 3564756 (C.D. Cal. 2023) (same); Aggrawal v. Coinbase, Inc., 2023 WL 4935003 (N.D.

Cal. 2023) (same).

     To reach these holdings and in granting Coinbase's motions to compel arbitration, each

of these five district courts found only a minimal degree of procedural unconscionability. The

analysis of procedural unconscionability and the same conclusions drawn by these district courts

in respect of the Arbitration Agreement's Delegation Clause are equally applicable here in

respect of the Arbitration Agreement as a whole.  That's because procedural unconscionability

concerns the manner in which a contract (rather than a specific contract provision or part of a

contract) was negotiated and the parties' circumstances at the time.  Chavarria, 733 F.3d 916,

922. Coinbase presented to its users (including to Claimant) the entire 2022 User Agreement,

which includes the Arbitration Agreement in Appendix 5 and which Appendix 5, in turn,

contains the Delegation Clause.  Pearl, Donovan, Kattula, Flores and Aggrawal are particularly

germane here and the Arbitrator similarly finds only a modicum of procedural unconscionability.

---

[1] The delegation clause is embraced within Section 1.6 of the Arbitration Agreement.  The clause
delegates exclusive authority to the arbitrator to resolve disputes between the parties while carving-out
from the arbitrator's authority certain disputes to be decided by a court of competent jurisdiction.

## 2.  Substantive Unconscionability

In view of the foregoing procedural unconscionability analysis and applying unconscionability's "sliding scale", Armendariz, 24 Cal. 4th 83, 114, Claimant must make a strong showing of substantive unconscionability to prevail on his motion.

Claimant contends that "numerous harsh and one-sided" provisions of the Arbitration Agreement render it substantively unconscionable.  Among the "harsh and one-sided' provisions that Claimant identifies are an intellectual property provision, a pre-arbitration provision, a "batch" arbitration provision, and a provision that limits statutorily imposed remedies.  As discussed below, the Arbitrator finds that save for this latter provision, Claimant has not met his burden to demonstrate substantive unconscionability.

"[A]n arbitration provision is substantively unconscionable if it is overly harsh or generates one-sided results.  Armendariz, 24 Cal. 4th 83, 114.  "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided to shock the conscience."  Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., LLC, 55 Cal 4th 223, 246 (2012).

### a)  Intellectual Property Provision

Section 1.1 of the Arbitration Agreement carves out from binding arbitration the option for either party to "seek equitable relief in court for infringement or other misuse of intellectual property rights."  Claimant contends that this exemption "obviously favors" Coinbase and is substantively unconscionable.  The Arbitrator disagrees.

First, the intellectual property exemption is bilateral and discretionary rather than mandatory.  Second, it is widely accepted practice for intellectual property owners to reserve contractually the right to pursue equitable relief in court (such relief could include, for example,

a temporary restraining order or preliminary injunction) when an arbitral forum lacks the authority or has limited authority to award injunctive relief.  Finally, Coinbase has a legitimate business interest in protecting its intellectual property rights.  See Tompkins v. 23andMe, 840 F.3d 1016, 1031 (9th Cir. 2016) (intellectual property protection is a legitimate business interest even if it accrues more to one contracting party's benefit).

Section 1.1 of the Arbitration Agreement is valid and enforceable.

**b) Pre-Dispute Resolution**

Claimant argues that the Arbitration Agreement is substantively unconscionable because the "Formal Complaint Process" (Section 7.2 of the 2022 User Agreement) requires users to attempt resolving their disputes amicably prior to filing an arbitration claim or small claims action pursuant to the Arbitration Agreement.  The Arbitrator is not persuaded.

Analyzing the same provision, two federal district courts recently rejected the same argument.  See Kattula, 2023 WL 4373385 at *5 (Section 7.2 of the 2022 User Agreement does not lack mutuality; "Notably, the 2022 User Agreement does not precondition arbitration on resolution of the dispute through the "Formal Complaint Process"); Flores, 2023 WL 3564756 at *6 ("this minimally burdensome process, which permits Coinbase an opportunity to fix customers problems before resorting to slower and more expensive arbitration is not substantively unconscionable"); see also Serpa v. Cal Sur Investigations, Inc., 215 Cal. App. 4th 695, 710 (2013) ("a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate").

Section 7.2 of the 2022 User Agreement is valid and enforceable.

### c) "Batch" Arbitration and <u>Heckman</u>

Section 1.8 of the Arbitration Agreement contains a "batch" arbitration provision designed to "increase the efficiency of administration and resolution of arbitrations".  Pursuant to Section 1.8, and to the extent there are 100 or more substantially similar arbitration demands filed against Coinbase by the same law firm, the AAA is required to appoint one arbitrator and administer the arbitration demands in the same "batch."  Claimant challenges this batch arbitration provision as "fatally unconscionable" on the grounds that it offends Claimant's due process rights.

In challenging the Arbitration Agreement's batch arbitration provision, Claimant relies heavily on <u>Heckman v. Live Nation Entertainment</u>, 2023 WL 5505999 (C.D. Cal. 2023). <u>Heckman</u> is readily distinguishable.

In <u>Heckman</u>, plaintiffs brought a putative class action against defendants Live Nation and Ticketmaster alleging various anticompetitive procedures in violation of the Sherman Act.  In the midst of pending litigation between the same parties, defendants updated their click-through Terms of Use and designated a new arbitration provider along with new arbitration terms. Among the updated arbitration terms[2] was a batch arbitration provision that provided for the selection of "bellwether" cases.  These "bellwether" cases would serve as precedent for later filed cases.  The <u>Heckman</u> court focused sharply on, and was particularly troubled by, this bellwether precedent provision.

---

[2] Other updated terms included a one-sided appeal process that permitted defendants alone – even in the face of losing thousands of arbitration claims – to return to the arbitration provider and file an appeal.  Another provision governing expedited arbitrations (including mass arbitrations) failed to provide claimants with the right to discovery.

The Arbitration Agreement's provisions that Claimant challenges are a far cry from those in Heckman.  Unlike the updated Terms of Use in Heckman (which defendants foisted upon plaintiffs while litigation was pending), the batch arbitration provision here does not provide for the selection of bellwether cases or for precedent to be applied to subsequently filed cases.  And in stark contrast to Heckman's "mechanical process for summarily disposing of an entire class of claimants based on an earlier proceeding to which they were not a party," Coinbase's batch process affords a claimant notice and an opportunity to be heard by virtue of being represented by the "same law firm, group of law firms, or organizations."

It is true that Section 1.8 of the Arbitration Agreement, unlike Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), does not provide for the right to "opt out".  The absence of such an opt out, however, particularly when considered in view of the batch arbitration process as a whole, is not so one-sided as to shock the conscience.  Pinnacle, 55 Cal 4th 223, 246.

In light of the Supreme Court's approval of class action waivers in Concepcion, 563 U.S. 333 (2010), it is reasonable to infer that Respondents are not required to replicate Rule 23 or Rule 23's opt out requirement in a batch arbitration process.  In the absence of an opt out requirement and because the batch arbitration contemplated by Section 1.8 is intended to streamline litigation, a tension between efficiency and fairness is nevertheless presented.  But that tension is disarmed here.   A claimant subject to Section 1.8 is provided notice, afforded an opportunity to be heard, allowed the right to discovery, permitted representation by counsel (who presumably will have, like Claimant's counsel, meaningful experience representing consumer clients in both federal court and in arbitration before the AAA), and able to pursue the same remedies available in court.

Section 1.8 of the Arbitration Agreement is valid and enforceable.

**d) Limitation of Remedies**

Section 8.2 of the 2022 User Agreement contains a limitation of liability provision (the "LOL") that limits Coinbase's liability and precludes Claimant from recovering certain damages.  The LOL is referenced in the last sentence of Section 1.6 of the Arbitration Agreement: "In any award of damages, the arbitrator shall abide by the "Limitation of Liability" section of this User Agreement."

Claimant contends that the LOL is unenforceable because it prevents the Arbitrator from awarding statutorily imposed remedies.  Claimant argues that, were the Arbitrator to abide by the last sentence of Section 1.6, Claimant would be denied statutorily imposed remedies available under the CLRA such as punitive damages, and attorneys' fees and costs awardable to the prevailing party.

Claimant's arguments are well-founded and supported by well-established authority. California law is clear that an arbitration provision may not limit statutorily imposed remedies. See Armendariz, 24 Cal. 4th 83, 103 (Arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees; limitation on statutory damages is "contrary to public policy and unlawful").

Section 9.3 of the 2022 User Agreement contains a severability provision pursuant to which the contracting parties intended that "to the greatest extent possible" the valid provisions of the contract "shall not be affected" by those determined to be unenforceable.  Harmonizing this severability provision with Claimant's well-founded argument that Section 1.6 of the Arbitration Agreement improperly limits the award of statutorily imposed remedies, the

Arbitrator finds that the last sentence of Section 1.6 is unenforceable.[3]

## III.    CONCLUSION

In view of the foregoing: Claimant's motion regarding arbitrability is **DENIED**.  Save for the last sentence of Section 1.6, the Arbitration Agreement is valid and enforceable.

IT IS SO ORDERED.

This Order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

Date: <u>October 23, 2023</u>                              <u>/s/ Jonathan Gentin</u>
                                                                        Jonathan Gentin, Arbitrator

---

[3] This finding, which would allow Claimant to pursue attorneys' fees available through the CLRA, moots Claimant's separate argument regarding the award of attorneys' fees.  As to Claimant's argument regarding attorneys' fees available to Respondents through "fee-shifting," the argument rings hollow. California law permits bilateral prevailing-party clauses.  <u>See</u> <u>Tompkins</u>, 840 F.3d at 1025 (bilateral attorneys' fee shifting clause is not unconscionable under California law).