IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY PEARL, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COINBASE GLOBAL, INC., et al.,<br><br>　　　　Defendants. | Case No. 22-cv-03561-MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING WITHOUT PREJUDICE MOTION TO STRIKE** |

　　　　Before the Court are defendants' Coinbase, Inc. ("Coinbase") and Coinbase Global, Inc.'s ("Coinbase Global") motion, filed May 9, 2024, "to Dismiss the Second Amended Class Action Complaint" and motion "to Strike Class Allegations," filed concurrently therewith. On June 10, 2024, plaintiff Larry Pearl ("Pearl") filed opposition to both motions, to which defendants, on June 24, 2024, replied. Having read and considered the papers respective written submissions, the Court hereby rules as follows.[1]

## BACKGROUND[2]

　　　　Coinbase is "an online marketplace that operates . . . digital asset exchanges" for cryptocurrencies. (See SAC ¶ 36.) One cryptocurrency traded on the platform is TerraUSD ("UST"), a "stablecoin" issued by Terraforms Lab PTE Ltd. ("Terraform"). (See id. ¶¶ 2, 4.) A stablecoin is a cryptocurrency whose value is "pegged, or tied to that of

---

[1] By Order filed July 1, 2024, the Court took the matter under submission. (See Doc. No. 72.)

[2] The following facts, unless stated otherwise, are taken from the allegations of the operative complaint, the Second Amended Complaint ("SAC"). (See Doc. No. 49.)

another currency, commodity, or financial instrument" in order to "hold the value of the cryptocurrency steady." (See Decl. of Meredith R. Dearborn in Supp. of Defs.' Mot. to Dismiss ("Dearborn Decl."), Ex. 4 ("Investopedia Article"), Doc. No. 54-5.)[3] Some stablecoins "use 'reserve' assets to maintain a peg" while others "maintain a peg through an algorithm." (See SAC ¶ 47.) UST, as an "algorithmic stablecoin," falls into the latter category because it is "not backed by actual U.S. dollars or any other currency," but, rather, the "Anchor Protocol," a "mechanism[] Terraform . . . purported would bring about a stable 1:1 US dollar conversion rate." (See id. ¶¶ 6, 28.)

Coinbase, in connection with its operation as a cryptocurrency marketplace, "offers educational resources for its customers to learn about the fundamentals of cryptocurrencies." (See id. ¶ 46.) One such resource is a webpage titled "What is a stablecoin?", which, from 2021 through January 23, 2024, defined a stablecoin as "a digital currency that is pegged to a 'stable' reserve asset like the U.S. dollar or gold," and described stablecoins as being "free from the volatility of non-pegged cryptocurrencies" and able to "give buyers and sellers certainty that the value of their tokens won't rise or crash unpredictably in the near future." (See id.)[4]

In May 2022, Pearl "made purchases" of UST (see id. ¶ 72), purchases he alleges were made in reliance "on representations made by Coinbase" in the "What is a stablecoin?" webpage (see id. ¶ 73). On May 7, 2022 "[t]he price of UST . . . showed signs of instability" and dropped from its intended $1 peg to "35 cents by May 9, 2022." (See id. ¶ 65.) "When UST collapsed, the value of [p]laintiff's investment fell in value by over 90 percent." (See id. ¶ 78.)

---

[3] Defendants' unopposed request for judicial notice of the May 22, 2022, version of the website cited in ¶ 24 of the SAC, Investopedia's "Stablecoin" webpage (see Defs.' Request for Judicial Notice ("Defs.' RJN") at 3:23–4:2, Doc. No. 55 citing Dearborn Decl. Ex. 4, Investopedia Article), is hereby GRANTED.

[4] Defendants' unopposed request for judicial notice of the October 23, 2021, version of Coinbase's "What is a stablecoin?" webpage (see Defs.' RJN at 3:23–4:2 citing Dearborn Decl. Ex. 2 ("Coinbase Stablecoin Webage"), Doc. No. 54-3) is hereby GRANTED.

Based on the above allegations, Pearl, on behalf of himself and a putative class, asserts the following nine causes of action against defendants: (1) "Negligence," (2) "Negligence per se," (3) "Negligent Misrepresentation," (4) "California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ('UCL')," (5) "California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. ('FAL')," (6) "California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ('CLRA')," (7) "Unregistered Offer and Sale of Securities in Violation of California Corporations Code Section 25110 and 25503," (8) "Violation of the California Corporations Code Section 25401," and (9) "Unjust Enrichment." (See id. 26:13–41:8.)

By the instant motions, defendants seek (1) an order dismissing all of plaintiff's claims for failure to state a claim (see Defs.' Mot. to Dismiss the Second Amended Class Action Complaint ("Defs.' Mot."), Doc. No. 54), and (2) an order striking plaintiff's class allegations (see Defs.' Mot. to Strike Class Allegations ("Defs.' Mot. to Strike"), Doc. No. 56).

**LEGAL STANDARD**

**A. Failure to State a Claim**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the

nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

### B. Motion to Strike Class Allegations

Under Rule 23(d), a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons." See Fed. R. Civ. P. 23(d)(1)(D). District courts have the authority to strike class allegations at the pleading stage where the class as defined in the complaint cannot be certified. See, e.g. Kamm v. California City Dev. Co., 509 F.2d 205, 207 n.3, 212–14 (9th Cir. 1975) (affirming order striking class allegations where plaintiff would be unable to meet requirements of Rule 23).

## DISCUSSION

As noted, defendants first seek dismissal of each of plaintiff's claims.

### A. Motion to Dismiss

#### 1. Unfair Competition (Count IV), False Advertising (Count V), and Consumer Legal Remedies Act (Count VI)

California prohibits any "unlawful, unfair, or fraudulent business act or practice" under the UCL, see Cal. Bus. & Prof. Code § 17200, "unfair, deceptive, untrue, or misleading advertising" under the FAL, see id. § 17500, and "unfair methods of competition and unfair or deceptive acts or practices" under the CLRA," see Cal. Civ. Code § 1770. In the instant case, plaintiff's claims under said statutes are predicated on alleged misrepresentations, and, as such, "are governed by the reasonable consumer test," whereby a plaintiff must show "members of the public are likely to be deceived." See Williams v. Gerber Products, Co., 552 F.3d 934, 938 (9th Cir. 2008) (internal

4

quotations and citations omitted). In that regard, the UCL, FAL, and CLRA prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." See id. citing Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002). To state a claim, however, a plaintiff must allege "more than a mere possibility that [a representation] might conceivably be misunderstood by some few customers viewing it in an unreasonable manner"; rather, such plaintiff must allege facts showing "a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." See Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (internal quotations and citations omitted).

### a. Plaintiff Alleges No Actionable Misrepresentation or Omission

#### (i) Misrepresentation

Plaintiff alleges defendants' "categoriz[ation]" of UST as a stablecoin, combined with the statements made on the "What is a stablecoin?" webpage misrepresented the "nature and stability of UST" as a collateralized asset. (See SAC ¶¶ 46–47, 55; Pl.'s Opp'n. at 4:2.) Specifically, plaintiff alleges, several of defendants' statements were misleading, namely, that stablecoins are "a digital currency that is pegged to a 'stable' reserve asset like the U.S. dollar or gold," that stablecoins are "free from the volatility of non-pegged cryptocurrencies," and that "an asset that's pegged to a more stable currency can give buyers and sellers certainty that the value of their tokens won't rise or crash unpredictably in the near future." (See SAC ¶ 73; Pl.'s Opp'n. at 4:1–10.)

Plaintiff's theory of misrepresentation is dependent upon his allegation that "reasonable consumers of cryptocurrencies" understand "the established definition" of a stablecoin to be a collateralized cryptocurrency "backed by an underlying tangible asset." (See SAC ¶ 24) The Investopedia article[5] upon which the SAC relies to establish such

---

[5] Investopedia is a website that "provides information and advice about financial matters." See Caldwell v. City of San Francisco, No. 12-cv-01892-DMR, 2021 WL 1391464, at *4 n.1 (N.D. Cal. Apr. 13, 2021).

1  understanding, however, is not so limited; rather, it specifies that stablecoins "peg their
2  market value to some external reference" by "maintaining reserve assets as collateral <u>or</u>
3  through algorithmic formulas that are supposed to control supply." (<u>See</u> Dearborn Decl.
4  Ex. 4, Investopedia Article (emphasis added).) Consequently, to the extent plaintiff relies
5  on the Investopedia Article to demonstrate that reasonable consumers believe
6  stablecoins are necessarily collateralized, such reliance is unavailing. <u>See</u> <u>Houser v.</u>
7  <u>GlaxoSmithKline Consumer Healthcare Holdings (US) LLC</u>, No. 21-cv-09390-JST, 2023
8  WL 7284160, at *2 (N.D. Cal. Nov. 3, 2023) (holding "[a] reasonable consumer is not
9  likely to be misled by a representation when a plaintiff's interpretation is inconsistent with
10 its plain language"; collecting cases). Moreover, defendants, on a page specific to UST
11 and which plaintiff alleges he viewed, clarified that UST was "not backed by US dollars in
12 a bank account," and described the algorithm upon which its valuation was based.[6] (<u>See</u>
13 SAC ¶¶ 57, 75; Dearborn Decl. Ex. 3, Coinbase UST Webpage.) <u>See</u> <u>Moore v. Trader</u>
14 <u>Joe's Co.</u>, 4 F.4th 874, 882 (9th Cir. 2021) (noting court may look to "other information
15 readily available to the consumer that could easily resolve" ambiguity in allegedly
16 misleading statement).[7]

17  Likewise unpersuasive is plaintiff's argument that defendants' statements
18 misleadingly implied UST was a "safe investment" (<u>see</u> SAC ¶ 124). In support thereof,
19 plaintiff omits language from the "What is a stablecoin?" webpage (<u>see</u> SAC ¶ 46) that
20 would put a reasonable consumer on notice that investing in UST does not guarantee a
21 successful investment outcome, but only that stablecoins are "designed to reduce
22 volatility." (<u>See</u> Dearborn Decl. Ex. 2, Coinbase Stablecoin Page.)

---

[6] Defendants' unopposed request for judicial notice of the August 10, 2021, version of the webpage cited in ¶ 57 of the SAC (<u>see</u> Defs.' RJN at 3:23–4:2 citing Dearborn Decl. Ex. 3 ("Coinbase UST Webpage"), Doc. No. 54-4), is hereby GRANTED.

[7] Plaintiff cites a number of cases he asserts support his contention that "[c]ourts have sustained comparable claims under the reasonable consumer standard at the pleading stage" (<u>see</u> Pl.'s Opp'n. at 4:11–5:5) but does not explain how those cases are analogous to the instant case.

Accordingly, plaintiff has failed to state a misrepresentation claim predicated on affirmative misrepresentation.

### (ii) Omission

An omission is actionable under California law where the omitted fact is "contrary to a [material] representation actually made by the defendant" or is "a fact the defendant was obliged to disclose." See Gutierrez v. Carmax Auto Superstores Cali., 19 Cal.App.5th 1234, 1255 (2018) (discussing requirements for omission claim under CLRA). Here, plaintiff bases his omission claim on defendants' failure to disclose that "UST was not collateralized by tangible assets in reserve," that "UST's stabilizing algorithm was untested and uncertain," and that "Coinbase invested millions in Terraform Labs." (See Pl.'s Opp'n. at 7:24–26 citing SAC ¶¶ 55–56, 59.)[8] As plaintiff has not alleged any representation contrary to said omissions, plaintiff states a claim only if defendants were "obliged to disclose" them. See Gutierrez, 19 Cal.App.5th at 1255.

A duty to disclose arises under one of four circumstances, namely, "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." See Edwards v. FCA US LLC, No. 22-cv-01871-WHO, 2022 WL 1814144, at *3 (N.D. Cal. June 2, 2022) (internal quotation and citation omitted). Here, plaintiff argues, defendants' duty to disclose the alleged omissions arose from "partial representations" and "exclusive knowledge." (See Pl.'s Opp'n. at 7:5-6, 15–17.) As set forth below, plaintiff fails to make the requisite showing.

---

[8] The Court has not addressed herein plaintiff's additional allegation that "Coinbase omitted that UST was an unregistered security" (see SAC ¶ 63), as plaintiff, in his opposition, has not responded to defendants' challenge thereto, see Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 888 (9th Cir. 2010) (holding "[a] plaintiff who makes a claim in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss, has effectively abandoned his claim") (internal citation, quotation, and alterations omitted).

First, as to partial representations, "the duty to disclose allegedly omitted information arises from the fact that the omission is 'contrary to a representation actually made by the defendant.'" See Anderson v. Apple, Inc., 500 F.Supp.3d 993, 1013 (N.D. Cal. 2023) (quoting Hodson v. Mars, Inc., 891 F.3d 857, 861 (9th Cir. 2018)). Here, plaintiff alleges the partial representations triggering the duty to disclose were the above-discussed statements made on defendants' "What is a stablecoin?" webpage. (See SAC ¶ 69.) As discussed above, however, defendants publicly disclosed, on a webpage plaintiff viewed, that UST was not backed by a tangible asset, but, rather, an algorithm. (See SAC ¶ 57; Dearborn Decl. Ex. 3, Coinbase UST Webpage.) Moreover, the webpage on which plaintiff relies makes no representation as to the nature or certainty of UST's algorithm, nor has either defendant, each a commercial entity, held itself out as a neutral reviewer or advisor.

Next, as to exclusive knowledge, "[i]t is generally sufficient for [the] defendant[ ] to have had superior knowledge and for the information to have not been reasonably discoverable by the plaintiff[ ]." See Edwards, 2022 WL 1814144, at *3 (internal quotation and citation omitted). In determining whether such showing has been made, courts look to "the nature of the product, the nature of the alleged omission, and the difficulty in reasonably finding the omitted information from sources other than the defendant." See id. Here, plaintiff's sole allegation is as to defendants' "superior knowledge." (See SAC ¶ 68.) Plaintiff makes no allegation as to his inability to discover the allegedly omitted information elsewhere.

Accordingly, plaintiff has failed to state a misrepresentation claim predicated on omission.

### b. Plaintiff Fails to Plead a Violation of the UCL's Unfairness Prong

To the extent plaintiff asserts a claim under the UCL's unfairness prong, such claim is derivative of plaintiff's misrepresentation claims. See SAC ¶ 138 (alleging "[t]here is no utility in deceptively characterizing the nature and risk of UST").

Accordingly, to the extent plaintiff's UCL claim is based on unfairness, the claim is

subject to dismissal. See Kim v. Bluetriton Brands, Inc., No. 22-56063, 2024 WL 243343, at *2 (9th Cir. 2024) (affirming dismissal of claim under "the UCL's unfair prong" where it "presume[d] the success of [plaintiff's] consumer deception and fraud claims").[9]

### c. The CLRA Does Not Apply to Cryptocurrencies

Although, as discussed above, plaintiff's CLRA claim fails because plaintiff has failed to allege a misstatement or omission, such claim fails for the additional reason that the CLRA does not apply to digital assets, including cryptocurrency.

The CLRA applies to "a transaction intended to result or that results in the sale or lease of goods or services to any consumer," and defines "goods" as "tangible chattels," and "services" as "work, labor, or services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." See Cal Civ. Code §§ 1761(b), 1770(a). The parties agree UST is not a "good" under the CLRA. (See Defs.' Mot. at 21:15–16; Pl.'s Opp'n. at 13:3–4.) Plaintiff argues, however, defendants' facilitation of the sale of cryptocurrencies is a "service" within the scope of the CLRA. (See Pl.'s Opp'n. at 13:4–8 (noting "[t]he CLRA is to be 'liberally construed'" (citing Cal. Civ. Code § 1760).)

"[T]he existence of . . . ancillary services" is, however, insufficient "to bring intangible goods within the coverage of the [CLRA]." See Fairbanks v. Superior Court, 46 Cal.4th 56, 65 (2001) (noting inclusion of ancillary services "would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels'"); see also, e.g. Suski v. Marden-Kane, Inc., No. 21-cv-04539-SK, 2022 WL 3974259, at *7–8 (N.D. Cal. Aug. 31, 2022) (holding Coinbase's services in connection with sale of cryptocurrency not covered by CLRA).

//

---

[9] Although plaintiff alleges defendants also violated the "unlawful" prong of the UCL (see SAC ¶¶ 137), he has not challenged defendants' argument that he fails to state a claim for relief thereunder. The Court accordingly deems this theory abandoned. See Carvalho, 629 F.3d at 888.

The cases on which plaintiff relies are distinguishable on their facts. In each such case, unlike here, the purpose of the transaction at issue was to allow the plaintiff to participate in a covered service. See Doe v. Roblox Corp., 602 F.Supp.3d 1243, 1263–64 (N.D. Cal. 2022) (holding purchase of in-game currency covered; finding such activity constituted "engaging with . . . [covered] online entertainment service"); Ochoa v. Zeroo Gravity Games, LLC, No. CV 22-5896-GW, 2023 WL 4291650, at *13 (C.D. Cal. May 24, 2023) (finding claims based on purchase of in-game currency "f[e]ll within the purview" of CLRA); SeaWorld Parks & Ent., Inc., No. 15-cv-02172-JSW, 2016 WL 8929295, at *12 (N.D. Cal. Nov. 7, 2016) (holding "purchase of admission tickets" to "educational and entertainment services"[10] falls within scope of "services for other than a commercial or business use" covered by CLRA).

Accordingly, for all of the above reasons, plaintiff's claims under the FAL, CLRA, and UCL, are subject to dismissal.

### 2. Negligence (Count I) and Negligence Per Se (Count II)

Under California law, "there is no recovery in tort for negligently inflicted purely economic loss." See Sheen v. Wells Fargo Bank, N.A., 12 Cal. 5th 905, 922 (2022) (internal quotation and citation omitted). In other words, "[i]n general, economic losses not flowing from conventional injury to person or property are not covered in tort." See Huynh v. Quora, Inc., No. 18-cv-07597-BLF, 2019 WL 11502875, at * 7 (N.D. Cal. Dec. 19, 2019); see also Quelimane Co. v. Stewart Title Guar. Co., 19 Cal.4th 26, 59 (1998) (holding "a business entity has no duty to prevent financial loss to others with whom it deals directly"). The economic loss rule has only "rare exceptions," see id., one being "where the plaintiff and the defendant have a special relationship," see S. California Gas Leak Cases, 7 Cal. 5th 391, 400 (2019). Here, plaintiff argues, the rule does not bar his

---

[10] The Court finds unpersuasive plaintiff's argument that defendants are providing educational services. Plaintiff here, unlike the plaintiff in SeaWorld, does not allege he purchased the information defendants provide, only an intangible asset they made available.

negligence claims against defendants because he has alleged non-economic loss and because the parties had a special relationship that exempts his negligence claims from the rule.[11] As set forth below, the Court disagrees.

First, plaintiff's allegation that he experienced "stress, anxiety, and outrage" as a result of the collapse of UST (see Pl'.s Opp'n. at 15:23–24 citing SAC ¶ 78) is insufficient to plead a physical injury, i.e., an injury sufficient to take a claim outside the scope of the economic loss rule. See Pegasus Trucking, LLC v. Asset Redeployment Grp., Inc., No. CV 19-10339, 2021 WL 1234879, at *7 (C.D. Cal. Feb. 16, 2021) (noting plaintiffs cite "no authority for the proposition that there is an 'emotional distress' exception to the economic loss rule").

Plaintiff's allegation that he lost time responding to defendants' alleged negligence (see SAC ¶ 110) fares no better. Although, as plaintiff correctly notes, courts have recognized loss of time as a non-economic loss, in each of the cases on which he relies the alleged loss of time was incurred in connection with a non-economic injury, namely, loss of privacy. See Stasi v. Inmediata Health Group Corp., 501 F.Supp.3d 898, 913 (S.D. Cal. 2020) (finding economic loss rule inapplicable where plaintiffs alleged "privacy injury" along with "increase in spam/phishing emails" in wake of data breach); Huynh, 2019 WL 11502875, at *2, *6–7 (N.D. Cal. Dec. 19, 2019) (holding "risk of identity theft" and "loss of time" spent monitoring credit reports for fraudulent activity avoided application of economic loss rule); Flores-Mendez v. Zoosk, Inc., No. C 20-04929 WHA, 2021 WL 308543, at *3–4 (N.D. Cal. Jan. 30, 2021) (finding economic loss rule inapplicable where victims of data breach alleged, in addition to loss of time, "enlarged risk of identity theft").

---

[11] To the extent plaintiff argues Warren v. PNC Bank Nat'l. Ass'n., 671 F.Supp.3d 1035, 1049 (N.D. Cal. 2023) demonstrates his claims are not subject to the economic loss rule because they are based on statutory violations, the Court disagrees. Warren was concerned with the question of duty; the economic loss rule was not addressed. Although a statute may serve to impose a duty on a defendant, a statutory underpinning "is not an exception to the economic loss rule." See Andrews v. Plains All American Pipeline, LP, No. CV 15-4113 PSG, 2020 WL 3105423, at *11 (C.D. Cal. 2020).

11

Plaintiff's argument that he and defendants were in a "special relationship" likewise is unpersuasive. As defendants note, the "special relationship" doctrine does not apply where the parties are in contractual privity with each other, see Sheen, 12 Cal. 5th at 937–38 (noting California Supreme Court has never "impose[d] a tort duty on a contracting party to avoid negligently causing monetary harm to another party to that contract"), and, in support of their motion, defendants ask the Court to take judicial notice of a document titled "User Agreement." (See Defs.' RJN at 2:6–8.)

A court may take judicial notice of a document that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b)(2). Here, as defendants point out, plaintiff himself, at an earlier stage in these proceedings, submitted the User Agreement in support of a position plaintiff took at that time. (See Decl. of J. Erickson in Supp. of Pl.'s Opp'n. to Mot. to Compel Arbitration, Exhibit 1, User Agreement, Doc. No. 38-2.) Under such circumstances, the Court finds the existence of the User Agreement is not subject to reasonable dispute, and accordingly, defendants' request for judicial notice thereof is granted.

Accordingly, plaintiff's negligence and negligence per se claims are subject to dismissal.[12]

### 3. Negligent Misrepresentation (Count III)

Under California law, "[t]he elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting

---

[12] As Coinbase argues and plaintiff does not dispute, plaintiff's claim for negligence per se is also subject to dismissal because it is not cognizable as a stand-alone claim under California law. See DeBons v. Globus Med., Inc., 668 F. App'x 258, 260 (9th Cir. 2016) (affirming district court's dismissal of "negligence per se claim on the grounds that negligence per se is not a recognized independent claim under California law").

12

damage." See Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App.4th 226, 243 (Cal. Ct. App. 2007).

Although courts within the Ninth Circuit have split on the question of the economic loss rule's applicability to claims for negligent misrepresentation, see Broomfield v. Craft Brew Alliance, Inc., Case No. 17-cv-01027-BLF, 2017 WL 3838453, at *9 (N.D. Cal. Sept. 1, 2017) (collecting authority), the Court need not resolve said question here, in that, as discussed above, plaintiff has failed to allege a misrepresentation.

Accordingly, plaintiff's claim for negligent misrepresentation is subject to dismissal.

### 4. California Unregistered Securities §§ 25110, 25503 (Count VII) and § 25401 (Count VIII)

Section 25110 of the California Corporations Code makes it "unlawful . . . to offer or sell . . . any security in an issuer transaction" unless the sale has been properly "qualified". See Cal. Corp. Code § 25110; see also id. § 25503 (providing "[a]ny person who violates" section 25110 "shall be liable to any person acquiring from him the security sold in violation of such section").) Section 25401 makes it "unlawful for any person to offer or sell a security . . . by means of any written or oral communication that includes an untrue statement of material fact." See id. § 25401; see also id. § 25501 (providing "[a]ny person who violates Section 25401 shall be liable to the person who purchases a security from . . . that person").

Each such statute by its express terms only applies to an entity that either offers to sell or sells a security. See Hayes v. Scherer, Case No. 8:21-cv-00389-SSS, 2023 WL 5507072, at *3 (N.D. Cal. July 3, 2023) (dismissing claims under § 25110 and § 25401 where defendant was "not a party to the sale of the security, but rather a facilitator"); Apollo Capital Fund, 158 Cal. App. 4th at 253 (noting "[s]ection 22501 on its face requires privity between the plaintiff and the defendants"; finding defendant not liable for violation of § 25401 where plaintiff purchased securities from another entity).

Here, plaintiff alleges "Coinbase . . . faces both the buyer and the seller" by acting as "an intermediary in every transaction it effects." (See id. ¶¶ 39–41.) There is no

13

allegation that defendants themselves sold any UST to plaintiff. (See id.)

Accordingly, plaintiff's claims for violation of California securities laws are subject to dismissal.

### 5. Unjust Enrichment

Where "the parties have a contract" there "cannot be a separate claim for unjust enrichment." See Wright v. Charles Schwab & Co., Inc., Case No. 20-cv-05281-LB, 2020 WL 6822887 at *4 (N.D. Cal. Nov. 20, 2020). Defendants move to dismiss plaintiff's claim for unjust enrichment on the grounds that the User Agreement is a contract that bars an unjust enrichment claim. Plaintiff, in opposing defendants' motion, argues solely that the Court should not judicially notice the User Agreement. (See Pl.'s Opp'n. at 21:1–2.) As discussed above, the Court has taken judicial notice of the existence of the User Agreement. (See supra Part A.2.)

Accordingly, the Court finds plaintiff's claim for unjust enrichment is subject to dismissal.

### 6. Claims against Coinbase Global, Inc.

Plaintiff brings his claims against Coinbase and its parent company, Coinbase Global, alleging the two companies "operate as a single company and users have no clear insight about which entity they are transacting with." (See SAC ¶ 17.) In addition to the above-discussed grounds for dismissal, defendants argue the claims against Coinbase Global are subject to dismissal because "[p]laintiff has pleaded no facts to support [his] conclusory allegations that" Coinbase Global and Coinbase "should be conflated." (See Defs.' Mot. at 25:10–12.) Specifically, defendants assert that the "trading services" upon which plaintiff's claims are based "were provided by Coinbase, Inc." (see id. at 25:8–10), an assertion plaintiff does not dispute (see Pl.'s Opp'n. to Def.'s Mot. to Dismiss ("Pl.'s Opp'n.") at 21:9–22:2, Doc. No. 63).

"It is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries," see United States v. Bestfoods, 524 U.S. 51, 61 (1998), and as the Ninth Circuit has observed, "courts are reluctant to disregard the

14

separate existence of related corporations by piercing the corporate veil," see McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc., 339 F.3d 1087, 1094 (9th Cir. 2003) (internal quotation and citation omitted) (noting courts "have consistently given substantial weight to the presumption of separateness"). "[M]erely conclusory allegations that the parent corporation[ ] controlled, directed, authorized, or ratified the acts of the child corporation[ ]," are "insufficient to state a claim for piercing the corporate veil." See Wolfson v. Bank of Am. Nat'l. Ass'n., No. C17-6064 BHS, 2018 WL 6571180, at *2 (W.D. Wash. Dec. 13, 2018) (granting motion to dismiss claims against parent corporation based on seven paragraphs of "conclusory allegations" regarding control of subsidiaries). Rather, the plaintiff must allege "(1) that there is such a unity of interest and ownership between a subsidiary and its parent corporation that the separate personalities of the two do not exist; and (2) that failure to disregard the corporate form would lead to an unjust result." See Price v. Synapse Group, No. 16-cv-01524-BAS-BLM, 2017 WL 3131700, at *11 (S.D. Cal. July 24, 2017).

Here, the totality of plaintiff's allegations in support of joint liability comprise his allegation that the two corporations "operate as a single company," that they jointly "created and operated the Coinbase platform," and that they are "refer[red] to jointly as the 'Company' in SEC filings." (See SAC ¶ 17.) The first two of said allegations are conclusory, and plaintiff cites to no authority holding the third suffices.

Accordingly, plaintiff's claims against Coinbase Global are subject to dismissal for the above-discussed additional reason.

**B. Motion to Strike Class Allegations**

As discussed above, plaintiff's individual claims are subject to dismissal.

Accordingly, defendants' motion to strike the class allegations will be denied without prejudice to refiling.

//

//

//

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is hereby GRANTED. As plaintiff may be able to cure the above-discussed deficiencies, he is hereby afforded leave to amend. Plaintiff's Third Amended Complaint, if any, shall be filed no later than August 9, 2024.

**IT IS SO ORDERED.**

Dated: July 15, 2024

MAXINE M. CHESNEY
United States District Judge