RANDALL SCOTT LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street. 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

KRISTINA A. BUNTING (admitted *pro hac vice*)
kbunting@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

PAUL D. BRACHMAN (*pro hac vice* pending)
pbrachman@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

Attorneys for Defendant
COINBASE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LARRY PEARL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>COINBASE, INC.,<br><br>                    Defendant. | Case No. 3:22-cv-03561-MMC<br><br>**DEFENDANT COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE CLASS ALLEGATIONS OR DENY CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 6, 2026<br>Time: 9:00 am<br>Dept.: Courtroom 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................................... ii

NOTICE OF MOTION AND MOTION ...................................................................................... i

STATEMENT OF RELIEF SOUGHT ......................................................................................... i

STATEMENT OF ISSUE TO BE DECIDED.............................................................................. i

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT BACKGROUND ............................................................................. 3

III.    LEGAL STANDARD ........................................................................................... 6

IV.     ARGUMENT ........................................................................................................ 6

    A.      No Class Can Be Certified Because Putative Class Members Have Agreed
        to Resolve Questions of Arbitrability on an Individual Basis in Arbitration .......... 6

    B.      No Class Can Be Certified Because Each Putative Class Member Agreed to
        a Class Action Waiver ........................................................................................... 13

    C.      No Class Can Be Certified Because the Requirements of Rule 23 Cannot
        Be Satisfied in This Case ....................................................................................... 16

V.      CONCLUSION ................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aggarwal* v. *Coinbase, Inc.*,
2023 WL 4935003 (N.D. Cal. Aug. 2, 2023)...................................................................... 2

*Andrews* v. *Ring LLC*,
2020 WL 6253319 (C.D. Cal. Sept. 17, 2020)................................................................... 17

*AT&T Mobility LLC* v. *Concepcion*,
563 U.S. 333 (2011).................................................................................................... 2, 15

*Bielski* v. *Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .................................................................... 4, 7, 8, 10

*Brennan* v. *Opus Bank*,
796 F.3d 1125 (9th Cir. 2015).......................................................................................... 9

*Campanelli* v. *Image First Healthcare Laundry Specialists, Inc.*,
2018 WL 6727825 (N.D. Cal. Dec. 21, 2018) ................................................................. 17

*Carter* v. *Rent-A-Ctr., Inc.*,
718 F. App'x 502 (9th Cir. 2017) .................................................................................... 15

*Cipolla* v. *Team Enters., LLC*,
2023 WL 2648204 (N.D. Cal. Mar. 26, 2023).................................................. 10, 11, 13, 18

*Conde* v. *Open Door Mktg., LLC*,
223 F. Supp. 3d 949 (N.D. Cal. 2017) ......................................................................... 6, 17

*Donovan* v. *Coinbase Glob., Inc.*,
2023 WL 2124776 (N.D. Cal. Jan. 6, 2023) ..................................................................... 2

*Farr* v. *Acima Credit LLC*,
2021 WL 2826709 (N.D. Cal. July 7, 2021)...................................................................... 17

*Flores* v. *Coinbase, Inc.*,
2023 WL 3564756 (C.D. Cal. Apr. 6, 2023) ..................................................................... 2

*Fuentes* v. *Dish Network LLC*,
2021 WL 4916754 (N.D. Cal. June 24, 2021) ........................................................ 10, 12, 18

*Garcia* v. *Central Coast Restaurants, Inc.*,
2022 WL 657972 (N.D. Cal. Mar. 4, 2022)...................................................................... 11

*Gile* v. *Dolgen Calif. LLC*,
2022 WL 3574168 (C.D. Cal. Aug. 2, 2022) .................................................................... 18

*Henry Schein, Inc.* v. *Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ........................................................................................... 9

*Kattula* v. *Coinbase Glob., Inc.*,
   2023 WL 4373385 (N.D. Ga. July 6, 2023) .......................................................... 2

*Kilgore* v. *KeyBank, Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ...................................................................... 2, 15

*Laver* v. *Credit Suisse Sec. (USA), LLC*,
   976 F.3d 841 (9th Cir. 2020) ...................................................................... 13, 15

*Lawson* v. *Grubhub, Inc.*,
   13 F.4th 908 (9th Cir. 2021) .............................................................. *passim*

*Macedonia Distrib., Inc.* v. *S-L Distrib. Co., LLC*,
   2020 WL 610702 (C.D. Cal. Feb. 7, 2020) ....................................................... 17

*Mohamed* v. *Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ............................................................................ 8

*O'Connor* v. *Uber Techs., Inc.*,
   2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) ..................................................... 7

*O'Connor* v. *Uber Techs., Inc.*,
   904 F.3d 1087 (9th Cir. 2018) ........................................................... *passim*

*Pablo* v. *ServiceMaster Glob. Holdings Inc.*,
   2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) .................................................... 16

*Passa* v. *City of Columbus*,
   2010 WL 1372455 (S.D. Ohio Mar. 30, 2010) ................................................. 17

*Patrick* v. *Running Warehouse, LLC*,
   93 F.4th 468 (9th Cir. 2024) ........................................................................... 10

*Quinlan* v. *Macy's Corp. Servs., Inc.*,
   2013 WL 11091572 (C.D. Cal. Aug. 22, 2013) ................................................ 17

*Rent-A-Center, W., Inc.* v. *Jackson*,
   561 U.S. 63 (2010) .............................................................................................. 9

*Renton* v. *Kaiser Found. Health Plan, Inc.*,
   2001 WL 1218773 (W.D. Wash. Sept. 24, 2001) ............................................. 17

*Rushing* v. *Williams-Sonoma, Inc.*,
   2024 WL 779601 (N.D. Cal. Feb. 21, 2024) .................................................... 11

*Stolt-Nielsen S.A.* v. *Animal Feeds Int'l Corp.*,
   559 U.S. 662 (2010) .......................................................................................... 14

*Tan* v. *Grubhub, Inc.*,
    2016 WL 4721439 (N.D. Cal. July 19, 2016) .................................................................. *passim*

*In re Titanium Dioxide Antitrust Litig.*,
    962 F. Supp. 2d 840 (D. Md. 2013) .................................................................. 17

*TransUnion LLC* v. *Ramirez*,
    594 U.S. 413 (2021) .................................................................. 18

*Tschudy* v. *J.C. Penney Corp., Inc.*,
    2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) .................................................................. 17

*Vandenberg* v. *Superior Ct.*,
    21 Cal. 4th 815, 824 (1999) .................................................................. 10

*Vinole* v. *Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) .................................................................. i, 6

*Wal-Mart Stores, Inc.* v. *Dukes*,
    564 U.S. 338 (2011) .................................................................. 16

*Ward* v. *Crow Vote LLC*,
    343 F.R.D. 133 (C.D. Cal. 2022), *aff'd*, 2024 WL 2239010 (9th Cir. May 17,
    2024) .................................................................. 12, 18

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................. *passim*

Fed. R. Civ. P. 23(a) .................................................................. 6, 16, 18

Fed. R. Civ. P. 23(a)(1) .................................................................. 2, 16

Fed. R. Civ. P. 23(a)(2) .................................................................. 3, 16, 17

Fed. R. Civ. P. 23(a)(3) .................................................................. 3, 17

Fed. R. Civ. P. 23(a)(4) .................................................................. 3

Fed. R. Civ. P. 23(b) .................................................................. 6

Fed. R. Civ. P. 23(c)(1)(A) .................................................................. 6

Fed. R. Civ. P. 23(d)(1)(D) .................................................................. 6

1

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that on February 6, 2026 at 9:00 a.m. or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Maxine M. Chesney, located in Courtroom 7, 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Coinbase, Inc. ("Coinbase") will and hereby does move this Court for an order striking the class allegations from Plaintiff's Fourth Amended Class Action Complaint ("FAC") (Dkt. 127) or otherwise denying class certification.

This Motion is based on the Court's authority, under 23(c)(1)(A) and 23(d)(1)(D) of the Federal Rules of Civil Procedure, to strike class allegations or otherwise "deny class certification before a plaintiff files a motion to certify a class." *Vinole* v. *Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009).  Coinbase respectfully submits that Plaintiff cannot certify a class because the members of the putative class have agreed to arbitrate their claims on an individual basis and signed class action waivers.  *See, e.g.*, *Tan* v. *Grubhub, Inc.*, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016), *aff'd sub nom. Lawson* v. *Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021).

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all of the pleadings and papers on file in this case, and on such other evidence and argument as may be presented to the Court on this matter.

## STATEMENT OF RELIEF SOUGHT

Coinbase respectfully requests an order striking the class allegations from the FAC or otherwise denying class certification.

## STATEMENT OF ISSUE TO BE DECIDED

Should the Court strike Plaintiff's class allegations or otherwise deny class certification because the putative class members agreed to Coinbase's arbitration agreement and class action waiver?

#    #    #

1

## I.    INTRODUCTION

Plaintiff Larry Pearl's claims against Coinbase all fail as a matter of law for the reasons explained in Coinbase's motion to dismiss, filed earlier today.  But, if any of his claims survive, this case cannot proceed as a class action because members of the proposed classes have agreed to arbitrate their claims against Coinbase and, like Plaintiff, also have agreed to a class action waiver.  As a result, no class can be certified as a matter of law.

Plaintiff's claims have taken a winding and unlikely road to this point.  In 2022, Plaintiff Pearl and another named plaintiff, Eric Vladimirsky, filed a putative class action complaint against Coinbase alleging claims based on their transactions in TerraUSD ("UST").  Coinbase moved to compel arbitration of each of their claims, arguing that the arbitration agreement in Coinbase's 2022 User Agreement required Pearl and Vladimirsky to arbitrate on an individual basis any dispute arising out of or relating in any way to their use of Coinbase's services and any disputes about the enforceability of the arbitration agreement itself.  This Court granted Coinbase's motion to compel. Pearl and Vladimirsky each then filed separate arbitrations before the American Arbitration Association ("AAA") in which they argued that the arbitration agreement was unconscionable.  The arbitrator presiding over Vladimirsky's case (like all others of which Coinbase is aware) found the agreement enforceable, and Vladimirsky's claims were resolved in favor of Coinbase before the AAA.  Dkt. 111.  The arbitrator presiding over Pearl's case reached the opposite conclusion, however, finding that the same arbitration agreement was not enforceable.  After securing that ruling, Pearl filed a Second Amended Class Action Complaint ("SAC") in this Court, again purporting to bring claims on a class-wide basis.  Dkt. 49.  The Court dismissed the SAC for failing to state a claim upon which relief could be granted.  Dkt. 74.  Pearl then filed a Third Amended Class Action Complaint ("TAC"), Dkt. 75, which the Court again dismissed as insufficient to state a claim.  Dkt. 119.  Undeterred, Pearl has now filed the operative FAC which, again, purports to bring class-wide claims.  Dkt. 127.

This case's history shows why no class can be certified.  To begin with, all members of the putative classes except Plaintiff are bound to arbitrate.  This Court has already held that the delegation clause in the arbitration agreement is valid and enforceable.  Dkt. 45 at 12–13.  As a

result, putative class members must, at a minimum, arbitrate any questions regarding the arbitrability of their claims.  Only Coinbase users who go to the AAA and obtain a ruling that their claims are not arbitrable, like Plaintiff did, are even plausibly eligible to be class members.  All others, like Vladimirsky, will be obligated to resolve their claims against Coinbase in arbitration before the AAA.  It is unlikely that other Coinbase users will obtain a ruling that their claims are not arbitrable.  No other arbitrator has found the Arbitration Agreement in the 2022 User Agreement unenforceable, even though many plaintiffs have been ordered to arbitrate that issue.  *Donovan* v. *Coinbase Glob., Inc.*, 2023 WL 2124776 (N.D. Cal. Jan. 6, 2023) (enforcing delegation clause); *Kattula* v. *Coinbase Glob., Inc.*, 2023 WL 4373385 (N.D. Ga. July 6, 2023) (same); *Flores* v. *Coinbase, Inc.*, 2023 WL 3564756 (C.D. Cal. Apr. 6, 2023) (same); *Aggarwal* v. *Coinbase, Inc.*, 2023 WL 4935003 (N.D. Cal. Aug. 2, 2023) (same).  Plaintiff is thus likely to remain a class of one.  But, in all events, the basic fact that arbitrability must be determined by an arbitrator, on a plaintiff-by-plaintiff basis, makes class certification inherently improper.  *O'Connor* v. *Uber Techs., Inc.*, 904 F.3d 1087, 1094–95 (9th Cir. 2018).

Even if other Coinbase users succeed in following Plaintiff's unusual path, a class action still would not be appropriate in this case because members of the putative classes signed a class action waiver.  Coinbase users—including Plaintiff—agreed to a class action waiver provision contained within the Coinbase arbitration agreement.  Thus, even if a Coinbase user obtains an AAA order finding that his or her claims are not arbitrable, he or she could only participate in a class action if this Court holds that the class action waiver provision also is unenforceable.  But well-settled law leaves no doubt that the class action waiver provision is enforceable.  *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 352 (2011); *Kilgore* v. *KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc).  The Court cannot certify a class where, as here, class members have waived the right to bring their claims on a class-wide basis.

Finally, the putative classes alleged in the FAC cannot satisfy the requirements of Rule 23.  Coinbase users could only potentially join the putative classes in this case if an arbitrator determines, one-by-one, that their claims are *not* subject to arbitration.  Even if a handful of users obtain such a ruling, that would not satisfy the numerosity requirements of Rule 23(a)(1).  *Tan* v.

1  *Grubhub, Inc.*, 2016 WL 4721439, at *4 (N.D. Cal. July 19, 2016), *aff'd sub nom. Lawson* v.

2  *Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021).  And the substantial ancillary litigation that would be

3  necessary to resolve the threshold question of arbitrability for all putative class members defeats

4  commonality, as required by Rule 23(a)(2).  *Id.*  Plaintiff also cannot satisfy the typicality and

5  adequacy requirements of Rule 23(a)(3) and Rule 23(a)(4) because, unlike the putative class

6  members, he is not obligated to arbitrate the merits of his claims.  Class certification is inappropriate

7  under those circumstances because Plaintiff is "neither typical of the class nor an adequate

8  representative, and because the proceedings are unlikely to generate common answers."  *Lawson*,

9  13 F.4th at 913.

10       For those reasons, as explained more fully below, the Court should strike the class

11  allegations from the FAC or otherwise issue an order denying class certification.[1]

12  **II.    RELEVANT BACKGROUND**

13       Plaintiff Pearl and his former co-plaintiff Vladimirsky filed the first putative class action

14  complaint in this case over three years ago.  Dkt. 1; Dkt. 111 at 1.  Coinbase promptly moved to

15  compel arbitration on the basis of the 2022 Coinbase User Agreement.  Dkt. 30; Dkt. 111 at 1.  The

16  User Agreement contains two separate agreements that are relevant here: (1) an agreement to

17  arbitrate in the AAA any substantive claims arising out of or related in any way to the class

18  members' use of Coinbase's site or services (the "arbitration clause"); and (2) an antecedent

19  agreement to submit to arbitration in the AAA any disputes about the arbitrability of such claims—

20  including any disputes about whether the arbitration clause is enforceable (the "delegation clause").

21  Erickson Decl., Ex. 1, Dkt. 38-2, App. 5, §§ 1.1, 1; *see also* Dkt. 45 at 3:16–4:20.  Pearl and

22  Vladimirsky opposed Coinbase's motion to compel, arguing that the arbitration clause and the

23  delegation clause were both unconscionable.  Dkt. 38.  But this Court granted Coinbase's motion

24  to compel, correctly holding that the delegation clause is enforceable.  As the Court explained, there

25  was, "at most, a minimal degree of procedural unconscionability" because the User Agreement is

26

---

27  [1] By bringing this Motion, Coinbase does not waive and expressly reserves any additional
arguments against class certification that could be raised in response to a motion for class
28  certification, should such a motion be filed by Plaintiff at a later date.

1    a form contract, but Plaintiffs "failed to show the Delegation Clause in the Arbitration Agreement

2    is unenforceable as unconscionable." Dkt. 45 at 11:15–13:1; Dkt. 111 at 1–2 ("On September 12,

3    2022, Coinbase moved to compel arbitration pursuant to its User Agreement, and on February 3,

4    2023, the Court granted the motion." (citations omitted)).

5         Pearl and Vladimirsky then filed arbitration demands with the AAA challenging the

6    enforceability of the arbitration agreement.  The arbitrator presiding over Vladimirsky's case found

7    that the Coinbase arbitration agreement was enforceable because it was not unconscionable.  Dkt.

8    47, Ex. 2; Dkt. 111 at 2.  Consistent with the weight of authority, including this Court's prior ruling,

9    Vladimirsky's arbitrator found only a "minimal" degree of procedural unconscionability due to the

10   adhesive nature of the User Agreement.  Dkt. 47, Ex. 2 at ECF 22 (collecting cases).  And

11   Vladimirsky's arbitrator also concluded that the features of the arbitration agreement, including its

12   pre-dispute resolution procedures, were not substantively unconscionable. *Id.* at ECF 23–28.  That

13   ruling likewise conformed to the weight of authority. *Id.* at ECF 21–22.

14        The arbitrator presiding over Pearl's case, on the other hand, held that the arbitration

15   agreement was not enforceable because it was unconscionable.  Dkt. 47, Ex. 1.  Contrary to this

16   Court's (and others') findings, Dkt. 45 at 11–12 (citing cases), Pearl's arbitrator held that there was

17   "substantial procedural oppression . . . given the adhesive nature of the subject User Agreement

18   and the unequal bargaining positions of the parties." Dkt. 47, Ex.1 at ECF 9.  The arbitrator also

19   found that the agreement was substantively unconscionable because (among other things) it

20   included a "one-sided pre-dispute resolution requirement." *Id.* at ECF 10.  Several months later,

21   the Ninth Circuit held that a prior version of Coinbase's arbitration agreement containing many of

22   the same features as the 2022 Agreement, including the pre-dispute resolution requirement, was

23   not unconscionable. *Bielski* v. *Coinbase, Inc.*, 87 F.4th 1003, 1015 (9th Cir. 2023).

24        Following those rulings, Plaintiff, but not Vladimirsky, filed the SAC in this Court, seeking

25   to bring a variety of claims on behalf of two putative classes of Coinbase users:  "all persons in the

26   United States," and "all persons in the State of California," respectively, who "purchased or

27   acquired" UST "through Coinbase."  Dkt. 49 ¶ 79.  Coinbase moved to dismiss the SAC for failure

28   to state a claim, and also moved to strike the class allegations from the SAC or to deny class

certification.  Dkts. 54 (motion to dismiss), 56 (motion to strike or deny).  The Court granted Coinbase's motion to dismiss and denied Coinbase's motion to strike or deny without prejudice to refiling if Pearl filed a third class action complaint.  Dkt. 74 at 15–16.  Pearl thereafter filed his TAC, which once again sought to assert a variety of claims against Coinbase on behalf of the same classes of Coinbase users alleged in the SAC.  Dkt. 75 ¶ 94.  Coinbase, in turn, again moved to dismiss (Dkt. 79) and moved to strike or deny the class claims (Dkt. 81).  On August 8, 2025, the Court once again granted Coinbase's motion to dismiss and denied the motion to strike or deny without prejudice to refiling.  Dkt. 119 at 13.  Plaintiff has now filed his FAC, in which he again seeks to pursue claims on behalf of the same two classes alleged in each prior iteration of his complaint.  Dkt. 127 ¶ 100.

Like Plaintiff and Vladimirsky, the members of those putative classes have agreed to arbitrate their claims against Coinbase on an individual basis.  As Coinbase explained in its motion to compel arbitration, Coinbase provides its online platform and services to its users exclusively under the terms of the Coinbase User Agreement, meaning users cannot make transactions through the Coinbase platform unless they have agreed to the User Agreement.  *See* Black Decl., Dkt. 30-1, ¶ 7.[2]  Since at least 2013, the User Agreement has contained a binding individual arbitration provision.  *Id.*, Ex. C–F (providing examples from 2013, 2014, 2016, 2017).  And, in January 2022, all users were required, upon logging into their accounts, to agree to the same 2022 User Agreement that Pearl and Vladimirsky agreed to, if they wished to continue using their Coinbase accounts.  *Id.* ¶ 19; Dkt. 30 at 3:21–4:2.

In addition to agreeing to arbitration, users who agreed to the 2022 User Agreement also "waive[d] all rights to have any dispute be brought, heard, administered, resolved, or arbitrated on a class, collective, representative, or mass action basis."  Erickson Decl., Ex. 1, Dkt. 38-2, Appendix

---

[2] Citations to "Black Decl." refer to the Declaration of Suellen Black submitted in support of Coinbase's Motion to Compel Arbitration (Dkt. 30-1).

1  5, § 1.3.[3]  Under the Agreement, whether that class waiver provision is enforceable is a question

2  that must "be decided by a court of competent jurisdiction and not by an arbitrator."  *Id.* § 1.6.

3       The combination of the arbitration agreement, the class action waiver provision, and Rule

4  23's requirements make class certification in this case impossible.

5  ## III.    LEGAL STANDARD

6       A class may be certified only if Plaintiff satisfies all of the threshold requirements of Rule

7  23(a) and one of the requirements of Rule 23(b).  Rule 23(c)(1)(A) mandates that, "[a]t an early

8  practicable time after a person sues or is sued as a class representative, the court must determine by

9  order whether to certify the action as a class action."  Rule 23(d)(1)(D) permits a court to "issue

10  orders that . . . require that the pleadings be amended to eliminate allegations about representation

11  of absent persons and that the action proceed accordingly."  Taken together, these Rules permit the

12  Court to strike or resolve class allegations at the pleading stage where the class cannot be certified

13  as defined in the complaint.  *Tan*, 2016 WL 4721439, at *2; *Conde* v. *Open Door Mktg., LLC*, 223

14  F. Supp. 3d 949, 958 (N.D. Cal. 2017); *see also Vinole* v. *Countrywide Home Loans, Inc.*, 571 F.3d

15  935, 941 (9th Cir. 2009) ("A defendant may move to deny class certification before a plaintiff files

16  a motion to certify a class.").

17  ## IV.    ARGUMENT

18  ### A.    No Class Can Be Certified Because Putative Class Members Have Agreed to Resolve Questions of Arbitrability on an Individual Basis in Arbitration

19

20       The Court should strike the class allegations or otherwise deny class certification because

21  each of the putative classes, as defined in the FAC, includes only individuals who have agreed to

22  arbitrate their substantive claims against Coinbase and agreed to arbitrate the preliminary question

23  of whether their claims are arbitrable in the first instance.

24       All Coinbase users who continued to use their account after January 2022, like Plaintiff,

25  agreed to the 2022 Coinbase User Agreement.  Black Decl., Dkt. 30-1, ¶ 19.  Users who did so

26

27  ---

28  [3] Citations to "Erickson Decl." refer to the Declaration of Julie Erickson submitted in support of Plaintiffs' Opposition to Coinbase's Motion to Compel Arbitration (Dkt. 38-1).

1    agreed to the arbitration clause, which requires them to arbitrate "any dispute, claim, disagreements

2    arising out of or relating in any way to . . . access to or use of the Services or of the Coinbase Site,

3    any Communications [they] receive, any products sold or distributed through the Coinbase Site, the

4    Services, or the User Agreement," with limited exceptions not applicable here.  Erickson Decl., Ex.

5    1, Dkt. 38-2, Appendix 5, § 1.1.  Those users also agreed to the delegation clause, which provides

6    that an arbitrator would "have exclusive authority to resolve" any dispute about the "enforceability,

7    revocability, scope, or validity of the Arbitration Agreement."  *Id.* § 1.6.  The Court has already

8    held that the delegation provision is enforceable.  Dkt. 45 at 2–14; *see also Bielski*, 87 F.4th at 1015

9    (enforcing delegation provision in 2021 User Agreement).  On that basis, the Court ordered Plaintiff

10   and former plaintiff Vladimirsky to submit their disputes with Coinbase—including "the question

11   of arbitrability"—to individual arbitration before the AAA.  Dkt. 45 at 8, 14.

12         Because of the delegation clause, it is not possible for this Court to determine on a class-

13   wide basis whether the claims of putative class members are arbitrable.  That question can only be

14   answered on a plaintiff-by-plaintiff basis, in the AAA, following the same process that Plaintiff and

15   Vladimirsky followed.  Where, as here, the question of arbitrability cannot be resolved by the Court

16   on a class-wide basis, class certification is improper.  The Ninth Circuit's decision in *O'Connor* v.

17   *Uber Technologies, Inc.* is directly on point.  904 F.3d 1087 (2018).  There, as here, plaintiffs

18   sought to certify a class that included individuals who had entered into arbitration agreements that

19   contained a provision delegating threshold questions of arbitrability to the arbitrator.  *Id.* at 1091–

20   92.  The district court denied the defendant's motion to compel arbitration, concluding that certain

21   versions  of  the  arbitration  agreement  were,  as  a  whole,  unconscionable  and  therefore

22   unenforceable.  *Id.*  On that basis, the district court certified a proposed class of plaintiffs who had

23   entered into the purportedly unenforceable arbitration agreements, reasoning that there were "no

24   individualized issues to resolve with respect to whether drivers bound to such earlier agreements

25   may participate in this class action lawsuit."  *O'Connor* v. *Uber Techs., Inc.*, 2015 WL 5138097,

26   at *34 (N.D. Cal. Sept. 1, 2015), *rev'd and remanded*, 904 F.3d 1087 (9th Cir. 2018).

27         On appeal, however, the Ninth Circuit reversed the district court's order denying the

28   defendant's motion to compel arbitration, holding that the delegation provision in the relevant

1  agreements was enforceable and so the "district court should have ordered the parties to arbitrate

2  their dispute over arbitrability." *Mohamed* v. *Uber Techs., Inc.*, 848 F.3d 1201, 1210–11 (9th Cir.

3  2016). In the wake of that ruling, the Ninth Circuit held that the district court's class certification

4  orders could not stand. *O'Connor*, 904 F.3d at 1094–95. As the court of appeals explained,

5  "[c]ertification of the class by the district court, notably the court's determinations that the

6  requirements of Rule 23 were satisfied, was premised upon the district court's conclusion that the

7  arbitration agreements were not enforceable." *Id.* at 1094. That premise collapsed once it was

8  determined that the "question of arbitrability was designated to the arbitrator" and "not properly

9  for the district court to answer." *Id.* at 1094–95. Because the arbitrability question was subject to

10 determination by individual arbitrators through individual arbitration, *Mohamed*, 848 F.3d at 1207,

11 1208 n.3, there was no mechanism for determining on a class-wide basis whether putative class

12 members were bound to arbitrate their claims, and so the district court's class certification order

13 had to be reversed. *O'Connor*, 904 F.3d at 1094–95.

14     That same logic applies in this case. For any putative class members who agreed to the

15 2022 or 2021 Coinbase User Agreement, this Court and the Ninth Circuit have already held that

16 questions of arbitrability are for the arbitrator to decide in the first instance. Dkt. 45 at 3–14

17 (enforcing delegation provision in 2022 User Agreement); *Bielski*, 87 F.4th at 1015 (enforcing

18 delegation provision in 2021 User Agreement). For those putative class members, the fundamental

19 question of whether they are bound to arbitrate their claims or, instead, may participate in this

20 lawsuit must be resolved on an individual basis through arbitration. This leaves no path for the

21 Court to answer these questions on a common basis. *O'Connor*, 904 F.3d at 1094–95.

22     The fact that Plaintiff is no longer obligated to arbitrate his claims does not alter the analysis.

23 If anything, it only highlights why class certification is improper. Pursuant to the terms of the

24 delegation provision in the 2022 User Agreement, the Court ordered Plaintiff and Vladimirsky to

25 submit their claims to arbitration. Dkt. 45 at 14. Plaintiff successfully challenged the enforceability

26 of the arbitration agreement and so his claims returned to this Court. The arbitrator in

27 Vladimirsky's case held that the arbitration agreement was enforceable, and so his claims were

28 resolved in arbitration. There is no question that Vladimirsky was not eligible to be a member of

1  either of the putative classes alleged in the FAC while his claims were pending before the AAA,

2  and he certainly cannot join either class now that his claims have been resolved in Coinbase's favor.

3  The same would be true for any other class member as to whom an arbitrator rules that the Coinbase

4  arbitration agreement is enforceable.  Because those questions of arbitrability *must* be determined

5  on a plaintiff-by-plaintiff basis in arbitration, pursuant to the delegation clause, and *cannot* be

6  litigated on a class-wide basis in this Court, class certification is improper.  *O'Connor*, 904 F.3d at

7  1094–95.

8  Plaintiff has now had two tries at distinguishing *O'Connor*, and failed both times.  When

9  Coinbase moved to strike or deny the class allegations in the SAC, Plaintiff argued that the

10  delegation clause did not preclude class certification, as in *O'Connor*, because the arbitrator in his

11  case had "ruled that the version of the arbitration agreement at issue in this case *as a whole*"—

12  including the delegation clause—"is unconscionable and unenforceable."  Dkt. 64 at 11 (emphasis

13  in original).  But that argument is a non-starter because this Court has already held that the

14  delegation clause *is* enforceable, Dkt. 45 at 12, and Plaintiff's arbitration ruling cannot and does

15  not overrule the Court's order.

16  The arbitrator had no authority to decide the enforceability of the delegation clause.  That

17  issue was already necessarily determined by this Court in its prior order granting Coinbase's motion

18  to compel arbitration.  The delegation clause here, like all delegation provisions, is a separate,

19  antecedent agreement that is enforceable on its own terms, separate and apart from the

20  enforceability of the arbitration agreement as a whole.  *Rent-A-Center, W., Inc.* v. *Jackson*, 561

21  U.S. 63, 69–70 & n.1 (2010); *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 139 S. Ct. 524,

22  529–30 (2019); *Brennan* v. *Opus Bank*, 796 F.3d 1125, 1132–33 (9th Cir. 2015).  The Court was

23  required to—and did—determine that the delegation clause was not "invalidated by a 'generally

24  applicable contract defense, such as fraud, duress, or unconscionability'" before it granted

25  Coinbase's prior motion to compel arbitration.  *See* Dkt. 45 at 3 (quoting *Mohamed*, 848 F.3d at

26  1209).  Plaintiff's arbitrator could not decide an issue that was necessarily committed to this Court

27  to resolve, much less overrule this Court's prior order.  And, even if the arbitrator purported to do

28  so, his ruling applies only to Plaintiff.  The Coinbase User Agreement provides that arbitration will

be conducted "only on an individual basis" and that an arbitrator may award relief "only in favor of the individual party," except in limited and specific circumstances where the provisions for batch arbitration apply.  Erickson Decl., Ex. 1, Dkt. 38-2, App. 5, §§ 1.3, 1.8.  Plaintiff's poorly reasoned[4] arbitration ruling thus applies to him and him alone—it does not displace the decisions of other arbitrators, like Vladimirsky's (and others), who have consistently found the Coinbase arbitration agreement enforceable, and it does not bind other putative class members.[5]

Coinbase could—and would—move this Court to compel every putative class member, once identified, to arbitrate his or her claims on an individual basis pursuant to the delegation clause, just as Plaintiff and Vladimirsky were required to do.  And this Court has already ruled that the delegation clause that every putative class member agreed to is enforceable.  The Court's prior ruling enforcing the delegation clause is the law of this case, and there are no different facts or circumstances that would compel a different result when that delegation clause is applied to putative class members.  As a result, each putative class member would be required to go to the AAA, just as Plaintiff and Vladimirsky did, to determine the arbitrability of his or her claims.  Because individual class members would be required to arbitrate questions of arbitrability on an individual basis in the AAA, the Court necessarily cannot resolve those questions on a class-wide basis.  That precludes class certification.  *O'Connor*, 904 F.3d at 1094–95.

Plaintiff alternatively argued that *O'Connor* does not apply because rather than opting out of arbitration, like the plaintiff in *O'Connor*, Plaintiff successfully went to arbitration and challenged the enforceability of the arbitration agreement as applied to his own claims.  Dkt. 64 at

---

[4] Plaintiff's arbitrator based his ruling on arguments that the Ninth Circuit has rejected, including the absurd premise that an arbitration agreement is unenforceable if it contains a pre-dispute resolution process that could help the parties *avoid* litigation.  *See Bielski*, 87 F.4th at 1015.

[5] Under California law, the default rule is that a "private arbitration award . . . can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed . . . that such a consequence should apply."  *Patrick* v. *Running Warehouse, LLC*, 93 F.4th 468, 478 (9th Cir. 2024) (quoting *Vandenberg* v. *Superior Ct.*, 21 Cal. 4th 815, 824 (1999)); *see also Fuentes* v. *Dish Network LLC*, 2021 WL 4916754, at *3 (N.D. Cal. June 24, 2021) (arbitrator ruling obtained by named plaintiff that the arbitration clause was unenforceable did not "bind[] . . . non-parties to the arbitration"); *Cipolla* v. *Team Enters., LLC*, 2023 WL 2648204, at *5–6 (N.D. Cal. Mar. 26, 2023).  There is no such agreement here.

8–10.  But that argument for distinguishing *O'Connor* fundamentally misunderstands the central holding of that case.  The outcome in *O'Connor* did not turn on whether the named plaintiff had opted out of arbitration, never agreed to arbitrate at all, or successfully challenged the enforceability of the arbitration agreement before an arbitrator.  Rather, *O'Connor* holds that there is no basis for class certification if arbitrability is delegated to an arbitrator because, in such circumstances, arbitrability cannot be determined on a class-wide basis.  904 F.3d at 1094–95.  As discussed above, the same is true here.

Pearl previously cited two district court decisions that granted class certification where a plaintiff obtained a finding of non-arbitrability in arbitration, Dkt. 64 at 7–10, but those cases cannot and do not displace *O'Connor*.  They are also distinguishable, because each decision assumed that a named plaintiff *would* be able to challenge arbitrability in court on a class-wide basis.  In *Garcia* v. *Central Coast Restaurants, Inc.*, the court observed that the named plaintiff was making "an unconscionability argument that would be applicable on a class-wide basis."  2022 WL 657972, at *4 (N.D. Cal. Mar. 4, 2022).  Likewise, in *Rushing* v. *Williams-Sonoma, Inc.*, the court assumed that the named plaintiff could argue "that the arbitrator's conclusions preclude [defendant] from asserting the arbitration agreement as against the putative class members."  2024 WL 779601, at *7 (N.D. Cal. Feb. 21, 2024).  Neither *Garcia* nor *Rushing* analyzed what should happen here, but *O'Connor* did:  When, as here, each putative class member is bound by an enforceable delegation clause, and therefore required to individually arbitrate the question of arbitrability, a court cannot certify a class action.

Other courts that have considered this question have rightly concluded that class certification is impossible.  In *Cipolla* v. *Team Enterprises, LLC*, the defendant moved to compel arbitration of the claims of five named plaintiffs pursuant to a delegation clause.  2023 WL 2648204, at *1.  The district court initially denied the motion, but the Ninth Circuit reversed on appeal and the district court sent the named plaintiffs to arbitration.  *Id.*  In arbitration, four out of five arbitrators found the arbitration agreement as a whole to be unenforceable, and the claims of those four named plaintiffs were returned to court.  *Id.* at *2.  Plaintiffs thereafter sought to certify a class of individuals subject to the same provision, *id.*, but the district court denied the motion.  As

the court explained, under the "binding delegation clause as to the question of arbitrability . . . potential class members would first have to attempt to arbitrate their claims and receive a ruling on enforceability before being freed into the federal court." *Id.* at *6. Because that "elephant in the room" was "capable of dooming all class claims as to every class member besides the named representatives," class certification was improper. *Id.* Here, Plaintiff's arbitrator is the *only one* who has ruled that Coinbase's arbitration agreement is unenforceable. But the central point is the same. The "elephant in the room" is the binding delegation clause. As in *Cipolla*, unless and until putative class members go to arbitration and receive a ruling on arbitrability, they cannot litigate their claims in this Court. *See also Ward* v. *Crow Vote LLC*, 343 F.R.D. 133, 145 (C.D. Cal. 2022) (denying class certification where, as here, "Defendants could potentially assert the delegation provision against the putative class members"), *aff'd*, 2024 WL 2239010 (9th Cir. May 17, 2024); *Fuentes*, 2021 WL 4916754, at *6 (denying class certification where named plaintiff was not bound by arbitration agreement but arbitral ruling did not bind other putative class members).

The second (and most recent) time Coinbase filed this motion, it argued *O'Connor* and *Cipolla* were directly on point and foreclosed class certification in this case. Plaintiff had no answer whatsoever to *Cipolla*, because there is none. Dkt. 86 (no attempt to distinguish *Cipolla*); Dkt. 91 at 1. And Plaintiff again failed to distinguish *O'Connor*. Recognizing the futility of his arguments in opposition to Coinbase's first motion to strike or deny (discussed above), Plaintiff instead argued that *O'Connor* does not necessarily preclude class certification in cases involving valid delegation provisions because the Ninth Circuit remanded that case for further proceedings. Dkt. 86 8–10. That makes no sense. The Ninth Circuit explicitly vacated the district court's class certification decision, which was based on the district court's mistaken belief that the court—rather than individual arbitrators—could determine the enforceability of class members' arbitration agreements. *O'Connor*, 904 F.3d at 1095. *O'Connor* holds that where, as here, putative class members have entered into arbitration agreements containing valid delegation provisions, the district court cannot certify a class. That the case was remanded does not alter *O'Connor*'s holding, which is squarely applicable here.

1    Plaintiff also argued that *O'Connor* is distinguishable because the class in that case was

2    defined by reference to whether or not the putative class members opted out of the arbitration

3    agreement, whereas Plaintiff's class definition makes no mention of the Coinbase arbitration

4    agreement. Dkt. 86 at 10.  That is another distinction without a difference.  Pearl's purported class

5    includes those "whose transactions of UST were conducted through Coinbase."  Dkt. 127 ¶ 100.

6    That class definition necessarily includes only Coinbase users who agreed to Coinbase's User

7    Agreement before using Coinbase because all Coinbase users were required to agree to Coinbase's

8    User Agreement before using Coinbase.  *See supra* 5.[6]

9    In sum, class certification is impossible here because Plaintiff cannot argue—and the Court

10   cannot resolve—the threshold question of arbitrability on a class-wide basis.  As this Court

11   correctly held, any arguments as to the enforceability of the arbitration agreement within the

12   Coinbase User Agreement must be raised in the AAA, pursuant to the delegation clause.  Dkt. 45

13   at 14.  Those arguments must be raised by putative class members one at a time before individual

14   arbitrators, just as Plaintiff and Vladimirsky did.  Where, as here, fights about arbitrability cannot

15   be waged in court on a class-wide basis by the class representative, class certification is improper.

16   *See, e.g.*, *O'Connor*, 904 F.3d at 1094–95; *Cipolla*, 2023 WL 2648204, at *6.

17   **B.    No Class Can Be Certified Because Each Putative Class Member Agreed to a
         Class Action Waiver**

18

19   Class certification is improper here for the independent reason that Plaintiff and other

20   putative class members have agreed to bring any claims they might have against Coinbase on an

21   individual basis, rather than as a class.

22   "A class action waiver is a promise to forgo a procedural right to pursue class claims."

23   *Laver* v. *Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020).  Class certification is

24

---

25   [6] Plaintiff also argued last time around that the Court should ignore *O'Connor* until Plaintiff files
26   a motion for class certification.  Dkt. 86 at 10.  But Rule 23 and Ninth Circuit precedent authorize
     early motions to strike or deny class certification, *supra* 6, and *O'Connor*'s holding is equally
27   applicable now.  The Court need not pretend this case can proceed as a class action—and expose
     the parties to the burdens of class discovery—where, as here, it is plain as a matter of law that no
28   class can be certified for the reasons explained in *O'Connor* and *Cipolla*.

improper where putative class members have "signed agreements waiving their right to participate in a class action." *Lawson*, 13 F.4th at 913.  Coinbase users who agreed to the 2022 User Agreement, including Plaintiff, "waive[d] all rights to have any dispute be brought, heard, administered, resolved, or arbitrated on a class, collective, representative, or mass action basis." Erickson Decl., Ex. 1, Dkt. 38-2, Appendix 5, § 1.3.  Accordingly, Plaintiff, and any other class members who agreed to the 2022 User Agreement, cannot bring their claims relating to UST on a class-wide basis.

Plaintiff's arbitration ruling has no bearing on this issue.  That ruling says *nothing* about the enforceability of the class waiver provision (Section 1.3 of the arbitration agreement); instead, it states only that the "***batch Arbitration Provisions***"—Section 1.8 of the arbitration agreement— "further appear to lack transparency." Dkt. 47 at 11 (emphasis added).[7]  And, Pearl's arbitrator could not have invalidated the class waiver provision in any event.  The parties expressly agreed that the validity of the class action waiver provision had to "be decided by a court of competent jurisdiction and not by an arbitrator."  Erickson Decl., Ex. 1, Dkt. 38-2, Appendix 5, § 1.6.  It is paradigmatic that arbitration is a matter of contract and parties can only be required to submit to arbitration issues that they have agreed to arbitrate.  *See Stolt-Nielsen S.A.* v. *Animal Feeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to

---

[7] The arbitrator incorrectly described the batch arbitration provisions as being "contained in the 'Waiver of Class and Other Non-Individualized Relief.'" Dkt. 47 at 11.  The arbitrator either failed to study or badly misread the parties' agreement.  The batch arbitration provisions of the arbitration agreement (Section 1.8) are *not* found within the class action waiver provision (Section 1.3), as Plaintiff's arbitrator stated in his order.  Erickson Decl., Ex. 1, Dkt. 38-2, App. 5, §§ 1.3, 1.8.  In fact, the class action waiver provision (Section 1.3) goes out of its way to state that "[n]othing in [its terms] is intended to, nor shall it, affect the terms and conditions under the subsection 1.8 entitled 'Batch Arbitration.'"  *Id.*, § 1.3.  Moreover, the class action waiver provision states that "mass actions," such as mass arbitrations, are prohibited "except" as permitted by the batch arbitration provision. *See id.* ("YOU AND COINBASE AGREE THAT, *EXCEPT AS SPECIFIED IN SUBSECTION 1.8*, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS," including not on a "MASS ACTION BASIS.") (emphasis added); *see also* § 1.8 ("This Batch Arbitration provision shall in no way be interpreted as authorizing a class, collective and/or mass arbitration or action of any kind, or arbitration involving joint or consolidated claims under any circumstances, except as expressly set forth in this provision.").

class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") (emphasis in original).  Here, the parties expressly agreed that the arbitrator would have "exclusive authority to resolve any Dispute . . . except for . . . Disputes arising out of or relating to the Section entitled 'Waiver of Class and Other Non-Individualized Relief.'"  Erickson Decl., Ex. 1, Dkt. 38-2, App. 5, § 1.6.  The parties agreed that those Disputes—including as to whether the class action waiver provision was "unenforceable, illegal, void[,] or voidable"—would be "decided by a court of competent jurisdiction and not by an arbitrator." *Id.*

Thus, so long as this Court concludes that the class action waiver is enforceable, no class can be certified.  The waiver is enforceable.  The Supreme Court's decision in *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333 (2011), "foreclose[es] any argument that a class action waiver, by itself, is unconscionable under state law." *Carter* v. *Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017).  Likewise, any argument that a contract's "ban on class arbitration is unconscionable" also is "expressly foreclosed by *Concepcion*." *Kilgore* v. *KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc).  And this Court has already determined that the manner in which the 2022 User Agreement—which includes the class action waiver—was presented to Coinbase users, including Pearl, evinced only a "minimal degree of procedural unconscionability." Dkt. 45 at 11.  This leaves Plaintiff with only his individual claims and no path to class certification. *See Laver*, 976 F.3d at 848 ("Because the class waiver survives, [plaintiff] relinquished his right to bring class claims in any forum, and . . . is left with only individual claims.").[8]

---

[8] Even if Plaintiff's arbitrator had ruled on the enforceability of the class action waiver (which he did not), his ruling would apply to Pearl alone, for the reasons discussed above. *Supra* 10 and n.5 (citing *Running Warehouse*, 93 F.4th at 478).  At best, that ruling would only further underscore why Pearl cannot satisfy the typicality and adequacy requirements of Rule 23. *Infra* at 17–18.  In *Lawson*, the Ninth Circuit affirmed the district court's order denying class certification precisely because the named plaintiff was not subject to a class waiver provision in an arbitration agreement that otherwise applied to the putative class members.  13 F.4th at 913.

**C.      No Class Can Be Certified Because the Requirements of Rule 23 Cannot Be Satisfied in This Case**

The Court should also strike the class allegations or deny class certification because Plaintiff cannot satisfy the requirements of Rule 23, for at least three reasons.

*First*, Plaintiff cannot show that "the class is so numerous that joinder of all members is impracticable," as Rule 23(a)(1) requires. Fed. R. Civ. P. 23(a)(1). Plaintiff is the only Coinbase user who has gone to arbitration and obtained a ruling that his claims are not arbitrable. Other users are subject to arbitration agreements containing valid delegation provisions that require them to submit the question of arbitrability to an arbitrator. Unless and until an arbitrator determines that their claims are not arbitrable, those putative class members have contractually agreed not to bring their claims against Coinbase in court and so they are not eligible to be members of the putative classes alleged in the FAC. *Supra* at 6–8. This leaves Pearl as a class of one. In *Tan* v. *Grubhub, Inc.*, Judge Corley held that Rule 23(a)(1)'s numerosity requirement was not satisfied where a named plaintiff and one other individual had opted out of an arbitration agreement, but other class members had not. 2016 WL 4721439, at *4. Under those circumstances, the court explained, "the proposed class would consist of just two total members," and joinder would, therefore, "not be impracticable." *Id.* That reasoning applies with equal force here, and precludes class certification. *See also Pablo* v. *ServiceMaster Glob. Holdings Inc.*, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011) (likelihood that class members are subject to arbitration provisions "raise[s] concerns about whether plaintiffs will be able to satisfy Rule 23(a)'s numerosity requirement").

*Second*, Plaintiff cannot show that "a class-wide proceeding [would] generate common answers apt to drive the resolution of the litigation," as Rule 23(a)(2) requires. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). Specifically, this case cannot "generate common answers" on (i) the merits of the claims asserted in the FAC or (ii) the question of whether the arbitration agreement is enforceable. *See Tan*, 2016 WL 4721439, at *4. Both points have *already* been proven true: Plaintiff's claims are before this Court, pursuant to his arbitrator's ruling, but the claims of his former co-plaintiff, Vladimirsky, were resolved in AAA, pursuant to a different arbitrator's ruling. This proceeding thus cannot generate common answers to the merits of

Plaintiff's and Vladimirsky's claims, just as it could not provide a common answer to whether Plaintiff's and Vladimirsky's claims were arbitrable. Where, as here, neither arbitrability nor the merits can be resolved on a class-wide basis, there can be no commonality. *See Renton* v. *Kaiser Found. Health Plan, Inc.*, 2001 WL 1218773, at *5 (W.D. Wash. Sept. 24, 2001) (unresolved issues as to enforceability of arbitration agreements applicable to majority of putative class members weighed against commonality); *Passa* v. *City of Columbus*, 2010 WL 1372455, at *7 (S.D. Ohio Mar. 30, 2010) ("[I]ndividualized determination of the enforceability of such [arbitration] provision militates against a finding of commonality sufficient to satisfy Rule 23(a)(2)."). Simply put, if "certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroy[] the commonality and typicality of the class." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861 (D. Md. 2013).

*Third*, because Plaintiff is no longer bound to arbitrate the merits of his claims, but other putative class members are, he cannot satisfy the typicality and adequacy requirements of Rule 23(a)(3) and Rule 23(a)(4). District courts in this Circuit have, for years, routinely found "typicality and adequacy of representation to be lacking where the lead plaintiff [is] not subject to the same arbitration provisions as unnamed plaintiffs." *Tan*, 2016 WL 4721439, at *3.[9] And the Ninth

---

[9] *See, e.g., Conde*, 223 F. Supp. 3d at 958–61; *Farr* v. *Acima Credit LLC*, 2021 WL 2826709, *7 (N.D. Cal. July 7, 2021) ("[T]he Court finds that plaintiff cannot represent a class made up of individuals who, unlike her, may be subject to the mandatory arbitration agreement and class action waiver. Accordingly, plaintiff will not be able to demonstrate her typicality and adequacy with respect to the proposed class."); *Campanelli* v. *Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825, at *7 (N.D. Cal. Dec. 21, 2018) ("[Plaintiff] is neither subject to an arbitration clause nor a class/collective action waiver. Thus, he is not an adequate representative and his claims lack typicality with respect to putative Rule 23 plaintiffs who have signed the DRA or the Employment Agreement."); *Andrews* v. *Ring LLC*, 2020 WL 6253319, at *4 (C.D. Cal. Sept. 17, 2020) ("Plaintiff is therefore atypical and inadequate because he will be unable to assert certain arguments (such as unenforceability) on behalf of the proposed class."); *Macedonia Distrib., Inc.* v. *S-L Distrib. Co., LLC*, 2020 WL 610702, at *6 (C.D. Cal. Feb. 7, 2020) ("[C]ourts in this Circuit have found typicality and adequacy of representation lacking where the lead plaintiff is not subject to the same arbitration provisions as the putative class."); *Tschudy* v. *J.C. Penney Corp., Inc.*, 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) (named plaintiffs, who were not subject to arbitration agreement, failed to satisfy typicality and adequacy where putative class members bound by arbitration provisions); *Quinlan* v. *Macy's Corp. Servs., Inc.*, 2013 WL 11091572, at *3 (C.D. Cal.

1  Circuit has now squarely held that a named plaintiff, like Pearl, who is not subject to the same
2  agreement as other class members does "not satisfy the requirements in Rule 23(a) because he is
3  neither typical of the class nor an adequate representative, and because the proceedings would be
4  unlikely to generate common answers." *Lawson*, 13 F.4th at 913. So too here. Where a defendant
5  can "assert the delegation provision" in an arbitration agreement "against the putative class
6  members," but the named plaintiff is not subject to the same defense, typicality is not established.
7  *Ward*, 343 F.R.D. at 145; *see also Fuentes*, 2021 WL 4916754, at *6.

8      Plaintiff will no doubt argue, as he did before, that *Tan* and other cases confirming these
9  commonsense points are distinguishable because he obtained a AAA ruling that his claims are not
10  subject to arbitration. That changes nothing. As "someone not bound to arbitrate," Plaintiff no
11  longer has a "legal interest in" litigating the enforceability of the arbitration agreement on behalf
12  of others. *Fuentes*, 2021 WL 4916754, at *6; *Gile* v. *Dolgen Calif. LLC*, 2022 WL 3574168, at *2
13  (C.D. Cal. Aug. 2, 2022) (citing *TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 422–24 (2021)) ("Once
14  a party is not bound by a contract, that party has no concrete stake in the enforceability of that
15  contract as it applies to others."). But, even if he did, unlike the named plaintiffs in *Rushing* and
16  *Garcia*, Dkt. 64 at 15–16, Plaintiff cannot challenge the enforceability of the arbitration agreement
17  on a class-wide basis. Rather, this Court has already determined that question must be decided on
18  a plaintiff-by-plaintiff basis in arbitration. That means there is no prospect that this proceeding will
19  generate common answers to the question of arbitrability, and experience shows that arbitration
20  will not, either. *Cipolla*, 2023 WL 2648204, at *6. And without a sufficiently numerous class of
21  plaintiffs whose claims are *not* subject to arbitration, there also is no prospect that resolving the
22  merits of Plaintiff's claims will provide common, class-wide answers for any other putative class
23  member. *Lawson*, 13 F.4th at 913; *Tan*, 2016 WL 4721439, at *2–5.

24
25
26
27
28

---

Aug. 22, 2013) (typicality not satisfied where substantial number of putative class members subject
to binding arbitration, but not named plaintiff).

1    **V.    CONCLUSION**

2          For the foregoing reasons, the Court should enter an order striking the class allegations in

3    the FAC or otherwise denying class certification.

4    Dated: October 13, 2025                                    PAUL, WEISS, RIFKIND, WHARTON &
                                                                 GARRISON LLP
5

6                                                    By: _/s/ Randall S. Luskey_
                                                         Randall S. Luskey
7                                                        Kristina A. Bunting (admitted *pro hac vice*)
                                                         Paul D. Brachman (*pro hac vice* pending)
8
                                                         Attorneys for Defendant
9                                                        COINBASE, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28