RANDALL SCOTT LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street. 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

KRISTINA A. BUNTING (admitted *pro hac vice*)
kbunting@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

PAUL D. BRACHMAN (*pro hac vice* pending)
pbrachman@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

Attorneys for Defendant
COINBASE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LARRY PEARL, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE, INC.,<br><br>Defendant. | Case No. 3:22-cv-03561-MMC<br><br>**DEFENDANT COINBASE, INC.'S MOTION TO DISMISS THE FOURTH AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 6, 2026<br>Time: 9:00 am<br>Dept.: Courtroom 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

1

### NOTICE OF MOTION AND MOTION TO DISMISS

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE

3    that on February 6, 2026 at 9:00 a.m., in the courtroom of the Honorable Maxine M. Chesney,

4    located in Courtroom 7, 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San

5    Francisco, CA 94102, Defendant Coinbase, Inc. will and hereby does move this Court to dismiss

6    the Fourth Amended Class Action Complaint ("FAC") (Dkt. 127) in its entirety.

7

This Motion is based on the following Memorandum of Points and Authorities, the

8    Declaration of Kristina A. Bunting and exhibits, the pleadings and other documents on file, all

9    matters of which the Court may take judicial notice, and any other argument or evidence that may

10    be received by the Court.

11

### STATEMENT OF RELIEF SOUGHT

12

Coinbase, Inc. respectfully seeks an order dismissing the Complaint under Federal Rules of

13    Civil Procedure 8, 9(b), and 12(b)(6) on the grounds that it fails to state a claim against it.

14

### STATEMENT OF ISSUE TO BE DECIDED

15

1.    Should all claims be dismissed with prejudice for failure to state a claim upon which

16    relief can be granted pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6)?

17

\#        \#        \#

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................... 1

II. RELEVANT ALLEGATIONS ...................................................................... 2

   A.  Coinbase Explained The Risks of Trading in Digital Assets and Other Terms of Use .................................................................................................. 2

   B.  Coinbase's Website Informed Plaintiff About UST and Coinbase's Review Process .......................................................................................................... 3

   C.  UST Loses Parity With The U.S. Dollar ................................................. 5

III. DISMISSAL OF THE TAC AND LEAVE TO AMEND SPECIFIC CLAIMS ................. 6

IV. LEGAL STANDARD .................................................................................... 6

V.  ARGUMENT ................................................................................................. 7

   A.  Plaintiff's Negligent Misrepresentation Claim (Count I) Should Be Dismissed ........................................................................................................ 7

      1.  Coinbase Made No Alleged Misrepresentations ........................................ 8

      2.  Plaintiff Fails to Plead Justifiable Reliance Because Any Reliance Was Unreasonable Under The Circumstances ........................................... 10

      3.  Plaintiff Fails to Plead That Coinbase's Conduct Proximately Caused His Losses Because He Would Have Suffered His Losses No Matter What ................................................................................... 11

   B.  Plaintiff Fails To Plead Violation Of The Unfair Competition Law (Count II) .................................................................................................................. 12

      1.  Plaintiff Fails to Plead Any Omission ........................................................ 12

         (a)  Partial Representations ................................................................. 13

         (b)  Exclusive or Superior Knowledge ................................................ 14

   C.  If UST Is A Security, Then The UCL Does Not Apply ....................... 17

   D.  Plaintiff Fails To Plead A Violation Of The False Advertising Law (Count III) .................................................................................................................. 17

   E.  Plaintiff Fails To Plead Any Violation Of The California Securities Laws (Counts IV, V, VI, and VII) ....................................................................... 17

1.  Plaintiff's Claim under Cal. Corp. Code §§ 25110 & 25503 Fails (Count IV) ................................................................. 17

2.  Plaintiff's Claim under Cal. Corp. Code §§ 25401 & 25501 Fails (Count V) .................................................................. 19

3.  Plaintiff's Cal. Corp. Code §§ 25130 & 25503 Claim Fails (Count VI) ...................................................................... 20

    (a)  Plaintiff Fails to Allege a Primary Violation of §§ 25130 and 25503 ...................................................... 20

    (b)  Plaintiff's Claim for Joint and Several Liability Under § 25504 Fails ........................................................ 20

4.  Plaintiff Fails to Plead Either a Primary Violation of Cal. Corp. Code §§ 25400(d) & 25500 or a Secondary Liability Claim (Count VII) ................................................................................ 21

    (a)  Plaintiff Fails to Plead a Primary Violation of §§ 25400(d) and 25500 .................................................... 21

    (b)  Plaintiff Fails to Plead Secondary Liability under § 25504.1 ....... 23

5.  Plaintiff Fails to Plausibly Allege He Engaged in Securities Transactions ........................................................... 24

VI.  CONCLUSION .................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adams* v. *United of Omaha Life Ins. Co.*,
5
    2013 WL 12113225 (C.D. Cal. Jan. 10, 2013) .......................................................................... 7

6
*In re All. Equip. Lease Program Sec. Litig.*,
    2002 WL 34451621 (S.D. Cal. Oct. 15, 2002) ...................................................................... 20
7

*Anderson* v. *Apple Inc.*,
8
    500 F. Supp. 3d 993 (N.D. Cal. 2020) .................................................................................. 13

9
*Apollo Cap. Fund, LLC* v. *Roth Cap. Partners, LLC*,
    158 Cal. App. 4th 226 (2007) ......................................................................................... 21, 23
10

*Ashcroft* v. *Iqbal*,
11
    556 U.S. 662 (2009) ................................................................................................................ 7

12
*Atari Corp.* v. *Ernst & Whinney*,
13
    981 F.2d 1025 (9th Cir. 1992) ............................................................................................... 10

14
*Azadpour* v. *Sun Microsystems, Inc.*,
    2007 WL 2141079 (N.D. Cal. July 23, 2007) ........................................................................ 7
15

*Bains* v. *Moores*,
16
    172 Cal. App. 4th 445 (2009) ............................................................................................... 21

17
*Bell Atl. Corp.* v. *Twombly*,
18
    550 U.S. 544 (2007) ........................................................................................... 7, 22, 23, 24

19
*People* v. *Black*,
    8 Cal. App. 5th 889 (2017) ................................................................................................... 24
20

*BMA LLC* v. *HDR Glob. Trading Ltd.*,
21
    2021 WL 4061698, at *11 (N.D. Cal. Sept. 7, 2021) ........................................................... 11

22
*Brown* v. *Madison Reed, Inc.*,
23
    622 F. Supp. 3d 786 (N.D. Cal. 2022) .................................................................................... 7

24
*Cal. Amplifier, Inc.* v. *RLI Ins. Co.*,
    94 Cal. App. 4th 102 (2001) ........................................................................................... 21, 22
25

*Cress* v. *Nexo Fin. LLC*,
26
    2023 WL 6609352 (N.D. Cal. Oct. 10, 2023) ...................................................................... 17

27
*Crystal Springs Upland Sch.* v. *Fieldturf USA, Inc.*,
28
    219 F. Supp. 3d 962 (N.D. Cal. 2016) .................................................................................... 7

*Davis* v. *HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012)................................................................................................. 11

*Dinan* v. *Sandisk LLC*,
  2019 WL 2327923 (N.D. Cal. May 31, 2019) ......................................................................... 17

*Dodaro* v. *Standard Pac. Corp.*,
  2012 WL 12948706 (C.D. Cal. Mar. 26, 2012) ...................................................................... 10

*Donovan* v. *GMO-Z.com Tr. Co., Inc.*,
  779 F. Supp. 3d 372 (S.D.N.Y. 2025)............................................................................... 24, 25

*Espineli* v. *Toyota Motor Sales, U.S.A., Inc.*,
  2019 WL 2249605 (E.D. Cal. May 24, 2019)........................................................................... 7

*Goller* v. *Nat'l Life of Fla. Corp.*,
  554 F.2d 1349 (5th Cir. 1977).................................................................................................. 19

*Gray* v. *Toyota Motor Sales, U.S.A.*,
  2012 WL 313703 (C.D. Cal. Jan. 23, 2012)............................................................................ 17

*Guo* v. *Robl*,
  2023 WL 2683473 (C.D. Cal. Mar. 2, 2023) ...................................................................... 7, 20

*Hayes* v. *Scherer*,
  2023 WL 5507072 (C.D. Cal. July 3, 2023)............................................................................ 17

*Herron* v. *Best Buy Co. Inc.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013).................................................................................... 15

*Hollifield* v. *Resolute Cap. Partners Ltd., LLC*,
  2023 WL 8168831 (C.D. Cal. Aug. 1, 2023)........................................................................... 23

*Huerta* v. *Ocwen Loan Servicing, LLC*,
  2010 WL 2485936 (N.D. Cal. June 16, 2010) .......................................................................... 7

*Irving Firemen's Relief & Ret. Fund* v. *Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021)................................................................................................... 22

*Jackson* v. *Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013) ................................................................................... 20

*Kalin* v. *Semper Midas Fund, Ltd.*,
  2022 WL 16935782 (N.D. Cal. Oct. 12, 2022)........................................................... 19, 21, 23

*Kamen* v. *Lindly*,
  94 Cal. App. 4th 197 (2001) .............................................................................................. 22, 23

*Kwang Tae Kim* v. *JPMorgan Chase Bank, N.A.*,
  2017 WL 8186672 (C.D. Cal. July 27, 2017).......................................................................... 11

*Marine Bank* v. *Weaver*,
   455 U.S. 551 (1982)................................................................................ 24

*Marolda* v. *Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................................. 12

*McColgan* v. *Mut. of Omaha Ins. Co.*,
   4 F. Supp. 3d 1228 (E.D. Cal. 2014)................................................. 10, 11

*Moore* v. *Apple, Inc.*,
   73 F. Supp. 3d 1191 (N.D. Cal. 2014) .................................................. 11

*Moore* v. *Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ...................................................................... 8

*Moss* v. *Kroner*,
   197 Cal. App. 4th 860 (2011) ................................................................. 21

*MTC Elec. Techs. Co.* v. *Leung*,
   876 F. Supp. 1143 (C.D. Cal. 1995)........................................................ 19

*OCG Energy, LLC* v. *Shen*,
   2023 WL 2628689 (C.D. Cal. Jan. 11, 2023) ........................................ 23

*Pearl* v. *Coinbase Glob., Inc.*,
   2024 WL 3416505 (N.D. Cal. July 15, 2024)...................................*passim*

*Prostar Wireless Grp., LLC* v. *Domino's Pizza, Inc.*,
   360 F. Supp. 3d 994 (N.D. Cal. 2018), aff'd, 815 F. App'x 117 (9th Cir. 2020) .................. 10

*Quintara Biosciences, Inc.* v. *Ruifeng Biztech Inc.*,
   2020 WL 6118494 (N.D. Cal. Oct. 16, 2020)......................................... 11

*Raiser* v. *City of Los Angeles*,
   2014 WL 794786 (C.D. Cal. Feb. 26, 2014).......................................... 8

*Real* v. *Yuga Labs, Inc.*
   No. 22-cv-08909, Dkt. 288 (C.D. Cal. Sept. 30, 2025) ......................... 24

*SEC* v. *Ripple Labs, Inc.*,
   682 F. Supp. 3d 308, 328 (S.D.N.Y.)..................................................... 25

*Robinson Helicopter Company, Inc.* v. *Dana Corporation*,
   34 Cal. 4th 979, 988, 991 n.7 (2004) ...................................................... 7

*Robinson* v. *J.M. Smucker Co.*,
   2019 WL 2029069 (N.D. Cal. May 8, 2019) ........................................... 7

*Rubenstein* v. *The Gap, Inc.*,
   14 Cal. App. 5th 870 (2017) ................................................................... 16

*Rugg* v. *Johnson & Johnson*,
   2018 WL 3023493 (N.D. Cal. June 18, 2018) ............................................................ 8

*Seeger* v. *Odell*,
   18 Cal. 2d 409 (1941) ................................................................................................ 11

*Sneed* v. *Talphera, Inc.*,
   147 F.4th 1123 (9th Cir. 2025) .............................................................................. 8, 10

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
   753 F. Supp. 3d 849 (N.D. Cal. 2024) ........................................................................ 8

*Terpin* v. *AT&T Mobility, LLC*,
   2020 WL 5369410 (C.D. Cal. Sept. 8, 2020) ............................................................ 14

*SEC* v. *Terraform Labs*,
   684 F. Supp. 3d 170, 195 (S.D.N.Y. 2023) .............................................................. 25

*Tillage* v. *Comcast Corp.*,
   2021 WL 2177225 (N.D. Cal. May 28, 2021) ........................................................... 17

*Trombley Enters., LLC* v. *Sauer, Inc.*,
   2019 WL 452044 (N.D. Cal. Feb. 5, 2019) ................................................................. 7

*SEC* v. *W.J. Howey Co.*,
   328 U.S. 293 (1946) .................................................................................................. 24

*Weisbuch* v. *Cnty. of Los Angeles*,
   119 F.3d 778 (9th Cir. 1997) .................................................................................... 15

*Woods* v. *Google, Inc.*,
   889 F. Supp. 2d 1182 (N.D. Cal. 2012) ................................................................... 11

*Wright* v. *Charles Schwab & Co.*,
   2021 WL 1056838 (N.D. Cal. Mar. 18, 2021) ......................................................... 17

*Zakinov* v. *Ripple Labs, Inc.*,
   2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ........................................................... 20

**Statutes**

Cal. Bus & Prof. Code § 17200 et seq. ........................................................................ 12

Cal. Bus. & Prof. Code § 17500 .................................................................................. 17

Cal. Corp. Code § 25011 .............................................................................................. 18

Cal. Corp. Code § 25110 .................................................................................... 17, 19, 20

Cal. Corp. Code § 25130 .................................................................................... 20, 21

Cal. Corp. Code § 25400(d) ................................................................................. 21, 22, 23

Cal. Corp. Code § 25401 ........................................................................................... 19, 23

Cal. Corp. Code § 25500 ................................................................................. 21, 22, 23

Cal. Corp. Code § 25501 ........................................................................................... 19, 20

Cal. Corp. Code § 25503 ......................................................................................... 17, 20, 21

Cal. Corp. Code § 25504 ........................................................................................... 20, 21

Cal. Corp. Code § 25504.1 ................................................................................................ 23

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................... 7, 12, 23

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 6

Fed. R. Evid. 201 ................................................................................................................ 3

1    **I.      INTRODUCTION**

2         This is the fifth iteration of a case that this Court has now twice dismissed in its entirety.  In

3    the Fourth Amended Complaint (the "FAC"), Plaintiff has merely reasserted claims and allegations

4    that this Court rejected and did not permit him to replead; deleted allegations that this Court has

5    previously held undermine his claims; and invented new theories that are contradicted by the very

6    materials he cites.  This latest attempt makes clear that Plaintiff cannot plead a viable case, and any

7    further attempts would be futile.  The FAC should be dismissed with prejudice.

8         Plaintiff's negligent misrepresentation, Unfair Competition Law, and False Advertising

9    Law claims (Counts I-III) fail because he cannot show that Coinbase made any actionable

10   misrepresentation or omission.  Plaintiff was only afforded leave to replead Claims I-III based on

11   alleged misrepresentations by Coinbase about its "legitimacy" or its "reliability" (*i.e.* Coinbase's

12   review process before listing a digital asset).  But Plaintiff merely rehashes his claims that he was

13   misled about the collateralization or stability of UST and by the statement that stablecoins are "free

14   from the volatility of non-pegged cryptocurrencies."  This Court already rejected the notion that

15   Coinbase misrepresented UST's volatility, including on the basis of the very statement he focuses

16   on, because Coinbase's website made clear that stablecoins, including UST, are only "designed"

17   (*i.e.*, not guaranteed) to "***reduce*** volatility ***relative*** to unpegged cryptocurrencies."  (Emphasis

18   added.)  Plaintiff now pivots to claiming that the statement misrepresented that UST could be

19   impacted by LUNA, the cryptocurrency designed to assist UST in maintaining its peg.  But this

20   strained interpretation is belied by its context which makes clear that Coinbase was addressing the

21   relative volatility of digital assets.  In any event, LUNA's impact on UST was fully disclosed in

22   readily accessible sources *that Plaintiff cites*.  Though Plaintiff has added repetitive allegations

23   about what Coinbase said about its "review process" prior to listing UST (largely relying on

24   statements that post-date his alleged loss), he does not actually allege that Coinbase ***misrepresented***

25   anything about its review. Plaintiff's negligent misrepresentation claim also fails because he did

26   not justifiably rely on Coinbase's alleged misrepresentations and they did not cause his losses.

27        Plaintiff also fails to plead any omission forming the basis for his Unfair Competition Law

28   and False Advertising Law claims (Counts II and III).  The crux of Plaintiff's claim is that Coinbase

either made partial and contradictory representations about, or had exclusive knowledge regarding: (1) the riskiness of UST's ecosystem, (2) the volatility of LUNA and its relationship with UST, and (3) that UST's creators had a history of failed crypto assets and were being investigated by the SEC. But Plaintiff fails to identify any representations by Coinbase that contradicted these facts or show that Coinbase had exclusive knowledge of them.  The very facts that Plaintiff says were omitted were in fact publicly disclosed and readily accessible to Plaintiff, which is fatal to Plaintiff's claims.

Plaintiff's California securities law claims should also be dismissed because he fails to plead the statutory requirements.  Counts IV and V replead claims the Court already dismissed without leave to amend, and they should be dismissed accordingly.  Those claims also fail for the same reasons the Court has now twice identified: California law requires strict privity with the seller, yet Plaintiff alleges no facts showing he purchased UST from Coinbase.  For the same reason, Plaintiff cannot state a claim for primary liability under §§ 25130/25503 (Count VI).  Without a claim for primary liability, Plaintiff's claim for joint and several liability under section 25504 also fails.

Plaintiff's attempt to plead a claim under §§ 25400(d)/25500 (Count VII) is equally unavailing for several reasons; most obviously, Plaintiff has not plausibly alleged that Coinbase made a false statement or omission.  Plaintiff's attempt to shoehorn a secondary liability claim into Count VII falls flat as Plaintiff has again failed to allege a predicate violation of the securities laws.

For the foregoing reasons, the Court should dismiss the FAC in its entirety with prejudice.

## II.    RELEVANT ALLEGATIONS

Plaintiff alleges that Coinbase operates an online platform for trading digital assets.  *See* ¶¶ 69, 71-72.  The FAC concerns a digital asset, UST, that was issued by a third party, Terraform Labs PTE, Ltd. ("Terraform"), and listed by Coinbase in 2021.  ¶¶ 1-2.

### A.  Coinbase Explained The Risks of Trading in Digital Assets and Other Terms of Use

Plaintiff alleges that he purchased UST tokens using Coinbase's website in May 2022. ¶ 89.  There is "no dispute" that Plaintiff "agreed to the 2022 User Agreement" to access Coinbase's platform, Dkt. 45 at 5, and that the agreement governed his use of the Coinbase website.  *See*

Dkt. 38-2,[1] preamble.  The User Agreement explained the risks of transacting in digital assets.  The preamble cautioned that, as "with any asset, the value of Digital Assets can increase or decrease and there can be a substantial risk that you lose money buying, selling, holding, or investing in Digital Assets," and warned Plaintiff to "carefully consider whether trading or holding Digital Assets is suitable for you."  Dkt. 38-2, preamble.  The User Agreement explained that Plaintiff was "not buying Digital Assets from Coinbase or selling Digital Assets to Coinbase" and that instead Coinbase "facilitate[s] that purchase or sale between you and other Coinbase customers."  *Id.* at § 3.2.  "Title to Digital Assets shall at all times remain with you and shall not transfer to Coinbase[,]" and "[n]one of the Digital Assets . . . are the property of, or shall or may be loaned to, Coinbase; Coinbase does not represent or treat assets . . . as belonging to Coinbase."  *Id.* at § 2.6.1.

**B. Coinbase's Website Informed Plaintiff About UST and Coinbase's Review Process**

Plaintiff claims he "researched UST on Coinbase's website," ¶ 50, and that Coinbase misled him about: (a) UST's collateralization; (b) UST's volatility or stability, including whether its price could be affected by its sister cryptocurrency, LUNA; and (c) the review process conducted by Coinbase before listing digital assets.  ¶¶ 132-33.  Putting aside that this Court did not grant Plaintiff leave to replead (a) and (b), the sources cited by Plaintiff made disclosures that contradict his claims and demonstrate that Coinbase's statements were not misleading to any reasonable consumer.

***Collateralization and Stability.***  As in the Second Amended Complaint ("SAC") (Dkt. 49) and the Third Amended Complaint ("TAC") (Dkt. 75), Plaintiff quotes selectively from Coinbase's "What is a Stablecoin?" webpage.  The page referred to stablecoins in general as being "designed" (*i.e.* not guaranteed) to "reduce volatility *relative* to unpegged cryptocurrencies like Bitcoin," which "fluctuate[] a lot [in value]—sometimes by the minute."  Ex. 1[2] (emphasis added).  Stablecoins can thus be used to "[m]inimize volatility."  *Id.*  The very quote Plaintiff highlights (that "[s]tablecoins

---

[1] Dkt. 38-2, Exhibit 1 to the Declaration of Julie Erickson in Support of Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. 38-1) reflects the Coinbase User Agreement that Plaintiff signed on February 8, 2022.  *See* Decl. of Suellen Black, Dkt. 30-1, at ¶ 22; Dkt. 45 at 3-4.

[2] All references to "Ex." refer to exhibits to the Declaration of Kristina A. Bunting in support of this Motion, unless otherwise noted.  As explained in the concurrently filed Request for Judicial Notice, the Court should consider these exhibits under Federal Rule of Evidence 201.

are free from the volatility of non-pegged cryptocurrencies," *e.g.* ¶ 42) referred to stablecoins' volatility in relative terms (*i.e.*, relative to non-pegged cryptocurrencies).

Coinbase's "TerraUSD Price" page, cited extensively by Plaintiff, described UST's collateralization, explaining that it was not "backed by US dollars in a bank account," and that "[i]nstead," UST's value depended on "burn[ing]" its "reserve asset," LUNA. Ex. 2. The page also said that UST "attempts" to maintain its pegged value, but did not guarantee that it would do so. *Id.* Coinbase repeated its description of UST elsewhere. Ex. 3. On one page, Coinbase specifically identified UST as a "seigniorage algorithmic stablecoin," which might "struggle[] to maintain a stable price." Ex. 4. A Coinbase Blog post that Plaintiff appears to cite cautioned that "[c]rypto is a new type of asset. Besides potential day to day or hour to hour volatility, each crypto asset has unique features. Make sure you research and understand individual assets before you transact." Ex. 5; *see* ¶ 49 (appearing to cite Ex. 5).

The "TerraUSD Price" page also contained a link to the Terraform whitepaper, which described the algorithmic link to LUNA that was intended to keep UST pegged to the U.S. dollar, and did not represent that UST was collateralized by dollars in a bank account. Exs. 2, 6. The Court previously noted that Plaintiff alleged "that he read and relied upon" the whitepaper, which "explicitly described 'the UST algorithmic mechanism.'" Aug. 8 Order at 9. Plaintiff now claims he did not read the whitepaper (*see infra* § V.B.1), but he does not contend that the whitepaper did not disclose UST's algorithmic mechanism, or that the whitepaper was inaccessible.

Investopedia, a "[r]eference source[]" (FAC ¶ 68) cited by Plaintiff[3] explained that "[s]tablecoins achieve their price stability via collateralization (backing) or through algorithmic mechanisms." Ex. 7, 8.[4]

***Coinbase's Review Process.*** Plaintiff claims that Coinbase made representations about its "review process" but does not identify when or where they were published or specify the specific representations that were allegedly misleading. ¶¶ 47-53. Plaintiff appears to cite a Coinbase

---

[3] Plaintiff earlier said Investopedia reflected a reasonable consumer's understanding. SAC ¶ 24.
[4] Plaintiff alleges that Investopedia did not identify *UST* as algorithmic until April 11, 2022. But the key language was present throughout 2022. Ex. 7, *see Pearl* v. *Coinbase Glob., Inc.,* 2024 WL 3416505, at *3 (N.D. Cal. July 15, 2024).

Security webpage titled "Most trusted. Most secure," which stated as of May 11, 2022, that "[e]very digital asset on Coinbase goes through an extensive review process ensuring it meets our security and compliance requirements." ¶¶ 49, 133, 153; Ex. 9.  Coinbase did not suggest on this page that it undertook any testing of the volatility or stability of any digital asset—it is apparent from the context that "security" does not refer to price stability but instead, for example, to account and storage security.  It also states nothing about UST at all.

Plaintiff also appears to point to statements on a page titled "Enhancing Trust with Regulatory Compliance." ¶ 50; Ex. 10.  This page explains that Coinbase considers "several factors" "[t]o determine the nature or level of compliance risks," "including" "the history of the project team's experience in related industry and crypto."  *Id*.  It notes that Coinbase "seeks to exclude digital assets . . .  where the asset is known or likely to defraud or harm consumers," but nowhere suggests that its review guarantees that a digital asset is safe or protected from fraud.  *Id*.

Many of Plaintiff's other sources about Coinbase's review process appear to have been published or created ***after*** May 2022, after Plaintiff purportedly purchased UST.  *See* ¶ 48, Ex. 11 (July 2022 podcast appearance by Coinbase CEO Brian Armstrong); ¶ 48, Ex. 12 (September 2024 Coinbase Security landing page);[5] ¶ 49, Ex. 13 (October 2022 Coinbase "Asset Listing Process" page, referring to "rigorous vetting/review process.").  Many representations allegedly made "at all relevant times," in fact seem to be drawn from a ***September*** 2022 blog post. Ex. 14.[6]

**C. UST Loses Parity With The U.S. Dollar**

Plaintiff alleges that he purchased UST in May 2022.  ¶ 89.  For nearly the entire month of May—from May 7 onwards—the price of UST "showed signs of instability." ¶ 82.  It had dropped to 35 cents by May 9, 2022.  *Id.*  Plaintiff claims that he was damaged when UST failed to return to parity with the U.S. dollar.  Yet again, Plaintiff does not allege that he bought UST only at a time

---

[5] Plaintiff alleges that a representation cited in this paragraph was made by Armstrong during the podcast appearance, ¶ 48, it does not appear in the video.  Ex. 10.  Coinbase identified this error in its briefing on the motion to dismiss the TAC; Plaintiff has not corrected it.  Dkt. 79.  The language did not appear on the landing page in 2022.  *See* Ex. 9.

[6] The post contains language that is nearly identical to ¶ 50, which cites no source.  For example, the post states that "around 90% [of tokens reviewed] never get considered for listing," and that since launching an additional layer of review earlier in 2022, "the Listings team has identified nearly 100 projects with tokens that we perceive to be high risk and have chosen not to list."

when it was at parity with the U.S. dollar—there were only six days out of 31 in May 2022 when that would have been possible.  ¶¶ 82, 89.[7]  The FAC also omits any claim that Plaintiff was unaware of the price of one UST, or how it compared to the price of the U.S. dollar when he traded. That information was available to him, as the FAC demonstrates.  ¶¶ 41, 43 n.5.

### III.    DISMISSAL OF THE TAC AND LEAVE TO AMEND SPECIFIC CLAIMS

The Court dismissed the TAC on August 8, 2025—the second dismissal of Plaintiff's claims in their entirety.  The Court again rejected Plaintiff's core theory: that "'reasonable consumers of cryptocurrencies' understand 'the established definition' of a 'stablecoin' to be a 'collateralized' cryptocurrency, *i.e.*, one 'backed by an underlying tangible asset,' thus having lower volatility, and, consequently, that Coinbase's description of UST as a 'stablecoin' is false."  Aug. 8 Order at 5. The Court granted Plaintiff leave to amend "***only*** as to the following claims" (emphasis added):

- For negligent misrepresentation, Plaintiff was granted leave to amend his "additional theory": an alleged misrepresentation relating to Coinbase being a trusted place to trade cryptocurrency ("legitimacy") and/or the review process applied before listing a digital asset on Coinbase ("reliability").  Aug. 8 Order at 6-7, 14.  The Court did ***not*** grant Plaintiff leave to replead his "primary theory," which concerned the "collateralization or safety" of UST (*i.e.*, whether it was collateralized by dollars in a bank account or its level of volatility). *Id.* at 5-6, 14.  Nor was he granted leave to plead an omission theory.

- Plaintiff was granted leave to amend his UCL and FAL claims to allege a "legitimacy and/or reliability" misrepresentation, or "to . . . rely on an omission theory."  *Id.* at 14; and

- Plaintiff was also granted leave to amend his claims under California Corporations Code §§ 25130, 25400(d), 25504, and 25504.1.  *Id.*

### IV.    LEGAL STANDARD

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "[f]actual allegations"—not legal conclusions—sufficient to "raise a right to relief above the

---

[7] Plaintiff transacted in UST on May 9, 21, and 22, 2022—all days when UST was already trading significantly below the value of the U.S. dollar.  Dkt. 30-1, Black Decl. ¶¶ 23-24; *see* ¶ 82 (35 cents by May 9, 2022).  Plaintiff has never disputed this, and cannot do so.  *See* Bunting Decl. at ¶ 24.

speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 570 (2007).  Dismissal is appropriate where the complaint does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  FRCP Rule 9(b)'s heightened standards apply to most of Plaintiff's claims.  *Trombley Enters.*, *LLC* v. *Sauer, Inc.*, 2019 WL 452044, at *3 (N.D. Cal. Feb. 5, 2019) (negligent misrepresentation); *Brown* v. *Madison Reed, Inc.*, 622 F. Supp. 3d 786, 795 (N.D. Cal. 2022) (consumer law); *Espineli* v. *Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 2249605, at *4 (E.D. Cal. May 24, 2019) (partial representation-based omissions); *Guo* v. *Robl*, 2023 WL 2683473, at *6 (C.D. Cal. Mar. 2, 2023) (state securities fraud).

The Court need not accept allegations that contradict a prior complaint "and may, in fact, strike the changed allegations as 'false and sham.'" *Azadpour* v. *Sun Microsystems, Inc*., 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007).  Courts may consider prior allegations as judicial admissions.  *Adams* v. *United of Omaha Life Ins. Co.*, 2013 WL 12113225, at *3 (C.D. Cal. Jan. 10, 2013).  Courts can take judicial notice of documents previously considered.  *Huerta* v. *Ocwen Loan Servicing*, *LLC*, 2010 WL 2485936, at *2 (N.D. Cal. June 16, 2010); Aug. 8 Order at 6 n.4.

## V.    ARGUMENT

### A.    Plaintiff's Negligent Misrepresentation Claim (Count I) Should Be Dismissed

"Under California law, '[t]he elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'"  *Pearl*, 2024 WL 3416505, at *7 (citation omitted).  As with the TAC, Plaintiff's claim fails because he does not allege with particularity any misrepresentation, justifiable reliance, or causation.[8]

---

[8] The Court noted a "split" as to whether the economic loss rule bars negligent misrepresentation, *e.g.*, Aug. 8 Order at 12, the better view is that it does.  In *Robinson Helicopter Company, Inc.* v. *Dana Corporation*, which the Ninth Circuit relied on in *Kalitta Air, L.L.C.* v. *Central Texas Airborne Systems, Inc.*, 315 Fed. App'x 603, 607 (9th Cir. 2008), did not address negligent misrepresentation. 34 Cal. 4th 979, 988, 991 n.7 (2004).  After *Robinson*, the "clear pattern" that has emerged is that the rule bars claims for pure economic losses in cases like this, involving a commercial relationship and no allegation of intentional falsehoods or risk of physical harm.  *See, e.g.*, *Crystal Springs Upland Sch.* v. *Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 970 (N.D. Cal. 2016) (requiring affirmative misrepresentation and independent personal liability); *Robinson* v. *J.M.*

### 1.  Coinbase Made No Alleged Misrepresentations[9]

To plead a misrepresentation, Plaintiff must show "more than a mere possibility'' that a statement "might conceivably be misunderstood by some few customers viewing it in an unreasonable manner."  Aug. 8 Order at 4 (quoting *Ebner* v. *Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).  It instead requires "a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled."  *Id*.  "This is not a negligible burden."  *Moore* v. *Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).  "Because the reasonable consumer inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement, in context, is such that no reasonable consumer could be misled in the manner claimed by the plaintiff."  *Rugg* v. *Johnson & Johnson*, 2018 WL 3023493, at *3 (N.D. Cal. June 18, 2018) (cleaned up).  Courts should also "take into account all the information available to consumers and the context in which the information is provided and used."  *Moore*, 4 F.4th at 882.

Plaintiff identifies ***one*** purportedly false statement—that "UST was 'free from the volatility of non-pegged cryptocurrencies.'"  ¶¶ 5, 65, 132, 152, 170, 225.  Plaintiff alleged that this statement was misleading in the TAC because it misrepresented UST's stability.  The Court rejected that claim and ***did not*** grant Plaintiff leave to replead it.  Plaintiff's claim should therefore be dismissed at the threshold.  *Raiser* v. *City of Los Angeles*, 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014) (no abuse of discretion in dismissing portions of amended complaint that were not permitted).

In any event, Plaintiff's claim fails because the plain language and context of Coinbase's statement demonstrates that it was not misleading to any reasonable consumer.  *See Sneed* v. *Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025).  This Court has twice held that Coinbase's statements about the relative volatility of stablecoins compared to non-pegged cryptocurrencies were not misleading because "Coinbase made clear on its website . . . that stablecoins are designed

---

*Smucker Co.*, 2019 WL 2029069, at *6 (N.D. Cal. May 8, 2019) (same).
[9] The Court did not grant Plaintiff leave to replead an omission theory for his negligent misrepresentation claim.  Aug. 8 Order at 14.  In any event, "negligent misrepresentation by omission is not recognized in California."  *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 926-27 (N.D. Cal. 2024).

1  to reduce volatility" and did not represent they had "virtually no volatility."[10]  Aug. 8 Order at 6

2  (internal quotation marks omitted); *Pearl*, 2024 WL 3416505, at *4.

3      Attempting to circumvent this finding, Plaintiff adopts a contorted interpretation of a

4  statement on a webpage addressing stablecoins in general.  He claims that the statement

5  "stablecoins are free from the volatility of non-pegged cryptocurrencies," (Ex. 1 at 3) represented

6  that UST was not intertwined with LUNA, the cryptocurrency behind its algorithmic stabilization

7  mechanism, and that UST was not volatile.  ¶¶ 132, 152, 170.  But this interpretation makes no

8  sense when the statement is read in context.  The "What is a Stablecoin?" page the statement

9  appeared on *compared* stablecoins generally with other digital assets that were not pegged to any

10  external reference.  *See supra* § II.B.  It described stablecoins as being "designed to reduce volatility

11  relative to unpegged cryptocurrencies like Bitcoin."  Ex. 1 at 2.  Coinbase did not guarantee that

12  stablecoins would always hold their value.  It said that volatility was *reduced* compared to the

13  volatility of other digital assets.  Ex. 1 at 3-4 ("Stablecoins are free from the volatility of non-

14  pegged cryptocurrencies"; "Minimize volatility.  The value of cryptocurrencies like Bitcoin and

15  Ether fluctuates a lot—sometimes by the minute.").  There was nothing on this page concerning

16  UST, and there was no representation regarding UST's relationship with its sister cryptocurrency.

17      Even adopting Plaintiff's strained interpretation of the statement, UST's relationship with

18  LUNA was fully disclosed.  Plaintiff *admits* that the TerraUSD Price webpage specifically

19  disclosed that "in order to mint 1 TerraUSD, US$1.00 worth of Terra USD's reserve asset (LUNA)

20  must be burned."  ¶ 45.  Plaintiff attempts to evade this clear language by asserting that "no

21  reasonable consumer of cryptocurrency in 2021–2022 would have understood from this one

22  sentence that UST's peg was reliant on an algorithm tethered to a volatile cryptocurrency."  *Id.*

23  This ignores that the reference to LUNA quoted by Plaintiff appeared under the heading

24  "AboutTerraUSD," and that a link to the whitepaper followed immediately below, under the same

25  "About" heading.  As the Court has already held, *Plaintiff* previously alleged "that he read and

26

27  [10] Plaintiff admits that he relied on "historical pricing" information, ¶ 41.  This would have shown
UST's previous "depegging."  The version of the TerraUSD Price page *cited in the FAC* (¶ 43 n.5)
(and TAC ¶ 56 n.8) stated that "[t]he price of [UST] has fallen by 21.20% in the past 7 days," that

28  its price "is $0.788 per UST," and quoted articles describing UST's "[c]ollapse."  Ex. 2 at 3.

relied upon" the whitepaper, which "explicitly described 'the UST algorithmic mechanism.'"  Aug. 8 Order at 9 (quoting TAC ¶ 131).  The "UST algorithmic mechanism" described in the whitepaper explained UST's relationship with LUNA in detail, including that "[t]he system uses Luna to make the price for Terra."  Ex. 6 at 5.  By providing a link to the whitepaper, Coinbase disclosed how UST was intended to interact with LUNA.  A reasonable consumer of cryptocurrencies "with money on the line" would not have been misled.  *See Sneed* 147 F.4th, 1128.[11]

### 2. Plaintiff Fails to Plead Justifiable Reliance Because Any Reliance Was Unreasonable Under The Circumstances

To plead justifiable reliance, Plaintiff must allege "actual reliance and that the reliance was reasonable."  *Prostar Wireless Grp., LLC* v. *Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1018 (N.D. Cal. 2018), aff'd, 815 F. App'x 117 (9th Cir. 2020).  California courts do not "merely wink at this requirement, but rather take it quite seriously."  *Atari Corp.* v. *Ernst & Whinney*, 981 F.2d 1025, 1031 (9th Cir. 1992).  Justifiable reliance can be decided as a matter of law on a motion to dismiss "where the undisputed facts leave no room for a reasonable difference of opinion."  *McColgan* v. *Mut. of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1233-34 (E.D. Cal. 2014).

**First**, for the same reasons that Plaintiff cannot allege that Coinbase's statements were untrue, it was unreasonable for him to have interpreted them in the way he now claims he did.  Plaintiff's belief to the contrary "is manifestly unreasonable" because he could only have reached his conclusion by "clos[ing] his eyes to avoid discovery of the truth."  *Dodaro* v. *Standard Pac. Corp.*, 2012 WL 12948706, at *14 (C.D. Cal. Mar. 26, 2012).

**Second**, UST lost parity in early May 2022, the month that Plaintiff claims he made his purchases.  ¶¶ 82, 89.  Tellingly, although Defendant raised precisely this argument in relation to the SAC and the TAC, Plaintiff **still** does not allege that he purchased UST when it was at parity with the U.S. dollar—even when he had the opportunity to include any such allegation in the TAC and the FAC.  Purchasing UST while it was already unpegged defeats justifiable reliance.  It shows that Plaintiff's irrational beliefs about UST were "so patently and obviously false that he must have

---

[11] A reasonable consumer of cryptocurrencies would have read this information with a general understanding that some stablecoins are algorithmically stabilized, *see* Aug. 8 Order at 5-6.

closed his eyes to avoid discovery of the truth." *Seeger* v. *Odell*, 18 Cal. 2d 409, 415 (1941) ("If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable . . . he will be denied recovery"); *Quintara Biosciences, Inc.* v. *Ruifeng Biztech Inc.*, 2020 WL 6118494, at *2 (N.D. Cal. Oct. 16, 2020) ("willful blindness . . . forecloses justifiable reliance"). Even if UST was at parity when acquired by Plaintiff, its potential volatility would have been obvious in the "historical pricing," that Plaintiff allegedly relied upon. ¶ 41; *supra* n.10.

**Third**, it is unjustifiable to allege reliance when the contract that Plaintiff signed and other webpages warned him of the risks to which he claims he was blind. Dkt. 38-2, preamble; *see Woods* v. *Google, Inc.*, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (reliance on misstatements not reasonable where they contradicted plain language of contract); *Davis* v. *HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162-64 (9th Cir. 2012) (affirming dismissal of fraudulent concealment claim where plaintiff could have discovered disputed fees by reading contract and disclosures). To the extent that Plaintiff says he relied on a few webpages, while ignoring the other information he concedes was available to him, that is unreasonable behavior. *McColgan*, 4 F. Supp. 3d at 1234.

**Finally**, Plaintiff could not have relied on misstatements made after May 2022—well after he purchased UST, after UST collapsed, and after Coinbase delisted UST. *See supra* § II.B; *Moore* v. *Apple, Inc.*, 73 F. Supp. 3d 1191, 1200-01 (N.D. Cal. 2014) (lack of reliance where misrepresentations or omissions "had not yet taken place.").

### 3. Plaintiff Fails to Plead That Coinbase's Conduct Proximately Caused His Losses Because He Would Have Suffered His Losses No Matter What

Plaintiff's threadbare allegations, ¶¶ 158-59, are insufficient to explain why Coinbase caused his losses. *Kwang Tae Kim* v. *JPMorgan Chase Bank, N.A.*, 2017 WL 8186672, at *3 (C.D. Cal. July 27, 2017) (conclusory statement insufficient to allege causation). It was the unstaking of $2 billion of UST from the protocol and the mass selling of UST in May 2022 that caused Plaintiff's losses, not anything Coinbase did or did not do. *See* ¶ 8; *BMA LLC* v. *HDR Glob. Trading Ltd.*, 2021 WL 4061698, at *11 (N.D. Cal. Sept. 7, 2021) (dismissing for lack of standing when plaintiffs' "damages only occurred once their positions were liquidated," which "could have been due to the acts by third parties or inherent market forces").

1

**B.      Plaintiff Fails To Plead Violation Of The Unfair Competition Law (Count II)**

2          California's Unfair Competition Law prohibits "unlawful, unfair or fraudulent business

3    act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."  Cal. Bus & Prof.

4    Code § 17200 et seq.  Plaintiff's claims under the "unlawful" and "unfair" prongs contain no factual

5    or legal analysis (*e.g.*, ¶¶ 145, 147, which lists statutory provisions), so do not state a claim.  These

6    allegations are also derivative of and assume the success of the misrepresentation, omission, and

7    statutory claims made elsewhere in the FAC, and fail for the same reasons as the claims they borrow

8    from.  *Pearl*, 2024 WL 3416505, at *5; Aug. 8 Order at 4.  Under the "fraudulent" prong, Plaintiff

9    alleges that Coinbase deceived the public through misrepresentations or omissions.  ¶ 149.  His

10   misrepresentation theory restates his negligent misrepresentation claim, and fails for the same

11   reasons (*supra* § V.A).  And Plaintiff's omission claims fail for the reasons set out below.

12          **1.   Plaintiff Fails to Plead Any Omission**

13          Insofar as Plaintiff's consumer protection claims are based on an omission theory (*see*

14   ¶ 157), the FAC fails at the first hurdle, because it falls well short of Rule 9(b)'s requirement "to

15   plead the circumstances of omission with specificity," including "describ[ing] the content of the

16   omission and where the omitted information should or could have been revealed."  *Marolda* v.

17   *Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).[12]  As best as can be discerned,

18   Plaintiff now alleges that Coinbase omitted the following information:

19   - that "not all stablecoins use 'reserve' assets to maintain a peg," and that some would

20      "attempt to maintain their pegged value through an algorithm dependent on a volatile

21      cryptocurrency"; ¶ 44[13]

22   - "that the entire Terraform ecosystem was risky"; ¶¶ 61, 135, 155, 157, 173, 175;[14]

23

24

[12] Plaintiff's earlier complaints identified the "specific omissions" alleged.  *See, e.g.*, ¶ TAC 139.
25   [13] Plaintiff does not identify any duty to disclose this alleged omission.  The "What is a stablecoin?"
     page does not contradict it, and Plaintiff alleges no other partial misrepresentation.  *See infra* §
26   V.B.1.a.  It also was not in Coinbase's exclusive knowledge—the Court already found that a
     reasonable consumer *would* have understood that some stablecoins are algorithmic.  Aug. 8 Order
27   at 5-6.  And Coinbase specifically identified UST as algorithmic on its website, explained that it
     was not collateralized, and linked to the whitepaper containing further details.  Exs. 2-4, 6.
28   [14] Plaintiff restates this already-rejected allegation, without adding further facts.  *See* TAC ¶ 144.

- "that UST's sister token, LUNA, was responsible for maintaining UST's peg and that LUNA was especially volatile" ¶¶ 135, 155, 157, 173, 175;[15]

- that LUNA had a propensity to cause its pegged stablecoins to depeg/that other stablecoins linked to LUNA had depegged; ¶¶ 134, 154, 172;

- "that the key individuals responsible for the Terraform ecosystem—Do Kwon in particular—had a history of failed crypto assets, including a prior failed algorithmic stablecoin," ¶¶ 61, 135, 155, 157, 173, 175; and

- that the SEC was investigating Do Kwon and Terraform Labs, ¶¶ 154, 172.

Omissions are not generally actionable except where the omitted fact is "contrary to a material representation actually made by the defendant or is a fact the defendant was obliged to disclose." *Pearl*, 2024 WL 3416505, at *4 (cleaned up); *see* ¶¶ 85-86.  None of the alleged omissions are contrary to a representation by Coinbase, or were in its "exclusive or superior knowledge" giving rise to a disclosure obligation.

### (a) Partial Representations

"[T]he failure to disclose a fact can constitute actionable fraud . . . when the defendant makes partial representations that are misleading because some other material fact has not been disclosed."  Aug. 8 Order at 8, quoting *Opperman* v. *Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015).  This requires a showing that the challenged statement "plausibly contradicts the alleged omissions."  *Anderson* v. *Apple Inc.*, 500 F. Supp. 3d 993, 1014 (N.D. Cal. 2020).

Plaintiff specifically alleges that Coinbase made two partial representations that gave rise to its "Duty to Disclose the True Nature and Risks of UST" (¶¶ 65, 86): (1) that UST was a "stablecoin" that "attempts to maintain a value of US $1.00."; and (2) defining a stablecoin on its "What is a Stablecoin" webpage, including representing that stablecoins are "free from the volatility of non-pegged cryptocurrencies."  Plaintiff contends that those representations "omitted that UST is, in fact, inextricably linked to a non-pegged cryptocurrency, and a particularly volatile one at that."  ¶ 86.  But none of the alleged omissions are actionable, because they do not "contradict" the

---

[15] Plaintiff also alleges that a third cryptocurrency, "wrapped LUNA" or "WLUNA" was volatile, but does not explain how this is material to any omission concerning UST.

alleged representations.  If anything, the first alleged partial representation (that UST **attempts** to maintain its value) contradicts **Plaintiff's** core theory—it plainly states that UST will only *attempt* to maintain its value.  The second alleged partial representation is identical to the misrepresentation alleged by Plaintiff, and fails for the same reasons.  *Supra* § V.A.

Elsewhere in the FAC, Plaintiff vaguely suggests that Coinbase had a duty to disclose the link between UST and LUNA, prior depegging events, and negative information relating to Terraform and Do Kwon, such as the SEC investigation.  ¶¶ 49, 134-35, 154-55, 157, 172-73.  Coinbase allegedly had a duty to disclose this information because it represented that "every digital asset on Coinbase goes through an extensive review process ensuing it meets our security and compliance requirements," including "due diligence on the key members of the team."  ¶¶ 49, 133-34, 153-54, 171-72.  Plaintiff alleges that when Coinbase listed UST on its platform, it implicitly represented that it had passed the review process.  ¶¶ 135, 155, 157, 173.

Again, none of the allegedly omitted information contradicts any alleged partial representations, rendering them inactionable.  The representations alleged by Plaintiff are that digital assets listed on Coinbase go through a review process, and that this includes due diligence on team members.  Plaintiff acknowledges that those statements were **true**.  ¶ 11.  That is the end of the matter—the FAC contains no allegation that Coinbase represented that it would make negative information identified during its review public.  None of the alleged omissions contradict the accurate statement that Coinbase would review assets prior to listing them.  It was not a half-truth rendered misleading by omitting (for example) details of the SEC investigation.  In any event, omission claims premised on a duty to disclose fail where the allegedly omitted facts were, in fact, disclosed.  *See Pearl*, 2024 WL3416505 at *4; *Terpin* v. *AT&T Mobility, LLC*, 2020 WL 5369410, at *4 (C.D. Cal. Sept. 8, 2020).  As explained below, much of the allegedly omitted information (like UST's prior depegging) was disclosed to Plaintiff **by Coinbase**.  *Infra* § V.B.1.b.

*(b) Exclusive or Superior Knowledge*

"[A] defendant has exclusive knowledge of material facts giving rise to a duty to disclose where according to the complaint, [the defendant] knew of [a material fact] while plaintiffs did not, and, given the nature of the [material fact], it was difficult to discover."  Aug. 8 Order at 10.

1  Plaintiff alleges that Coinbase had superior information concerning (a) "the true nature of UST,

2  including that UST was based on an uncertain and untested algorithm," ¶ 85; (b) "prior depegging

3  events involving UST as well as other Terra stablecoins tethered to LUNA," ¶¶ 134, 154, 172; and

4  (c) "the SEC investigation into Do Kwon and Terraform Lab's Mirror Protocol," ¶¶ 134, 154, 172.

5       To successfully show that Coinbase had exclusive or superior knowledge, Plaintiff must

6  show that he was ***unable*** to find the allegedly omitted information elsewhere, taking into account

7  the "nature of the product, the nature of the alleged omission, and the difficulty in reasonably

8  finding the omitted information from sources other than the defendant." *Pearl*, 2024 WL 3416505,

9  at *5 (internal quotation omitted); *see Herron* v. *Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175

10  (E.D. Cal. 2013) (claim defendant had "superior knowledge" unsuccessful where plaintiff "could

11  have readily recognized any deficiencies," and the information was reported in *Newsweek*).  The

12  information in question was publicly known, widely disseminated, and easily discoverable by

13  reasonable consumers of cryptocurrency.  Most of it was even disclosed to Plaintiff ***by Coinbase***:

14       ***UST's Nature.***  Plaintiff complains that "Coinbase . . . was at all relevant times aware of

15  the true nature of UST, including that UST was based on an uncertain and untested algorithm."

16  ¶ 85.  Plaintiff could have "reasonably [found] the omitted information" by reading the whitepaper,

17  which Coinbase provided a link to on the TerraUSD page.  *Pearl*, 2024 WL 3416505, at *5; *see*

18  *supra* § V.A.1.  The Court previously found that Plaintiff "read and relied upon a Terraform

19  whitepaper that explicitly described 'the UST algorithmic mechanism.'" Aug. 8 Order at 9 (citing

20  TAC. ¶ 131).  Plaintiff attempts to escape that finding, claiming that he "did not read the UST

21  whitepaper and did not know that UST was tied to LUNA."  ¶ 134.  Plaintiff never challenged the

22  Court's finding that he read the whitepaper.  On the contrary, Plaintiff repeatedly alleged that he

23  was misled ***by the whitepaper*** during more than three years of litigation and across over four

24  separate complaints.  *See* Class Action Complaint (Dkt. 1) and First Amended Complaint (Dkt. 28)

25  at ¶¶ 27-29, 35-36; SAC at ¶¶ 52-53; TAC at ¶¶ 58-59, 141-142.  Plaintiff has realized that he

26  "plead[ed] himself out of court" by invoking the whitepaper.  *Weisbuch* v. *Cnty. of Los Angeles*,

27  119 F.3d 778, 783 n.1 (9th Cir. 1997).  The Court should not countenance his implausible about-

28  face.  Aug. 8 Order at 6 n.4 (quoting *Stanislaus Food Prod. Co.* v. *USS-POSCO Indus.*, 782

F.Supp.2d 1059, 1075 (E.D. Cal. 2011) ("[t]he Court does not ignore the prior allegations in determining the plausibility of the current pleadings").

Even if Plaintiff did not read the whitepaper, the allegedly omitted information was readily available to him, which is sufficient.  Aug. 8 Order at 8 (Courts consider difficulty of discovering allegedly omitted fact); *Rubenstein* v. *The Gap, Inc.*, 14 Cal. App. 5th 870, 878 (2017) (no exclusive knowledge of quality difference between items, where consumers could examine them before purchase, and could review details on label).  Coinbase described UST's algorithmic link to LUNA (*see supra* § V.A.1), provided a link to the whitepaper on the TerraUSD Price page that Plaintiff viewed, and elsewhere on its website specifically described UST as a "seigniorage algorithmic stablecoin" which might "struggle[] to maintain a stable price."  Ex. 4.  In short, Coinbase disclosed the very information it is alleged to have omitted.

**Prior "Depegging Events."**  Plaintiff's own pleading undermines his claim that "Coinbase had exclusive or superior knowledge of prior depegging events involving UST as well as other Terra stablecoins tethered to LUNA."  ¶¶ 134, 154, 172.  Plaintiff alleges that he relied upon "historical pricing" information and "trading activity" provided by Coinbase.  ¶ 41.  The TerraUSD Price page showed "ALL" of UST's price history.[16]  This would have shown the prior depegging events.  Again, Plaintiff has pleaded himself out of court—the historical pricing information that he cites disclosed the allegedly omitted information.

**Terraform SEC Investigation.**  The SEC investigation into Do Kwon and Terraform was well publicized before Plaintiff purchased UST in May 2022.  The SEC filed a subpoena enforcement action and issued a press release about its investigation in November 2021.  Exs. 15, 16.  A month prior, Terraform filed a publicized lawsuit against the SEC, alleging (among other things) that the SEC had publicly served Do Kwon at a well-attended event in New York.  Exs. 17, 18, 19, 20, 21.[17]  A reasonable consumer of cryptocurrencies could have readily found this widely-

---

[16] Plaintiff has not shown that information about alleged depegging of "TerraKRW" and "THT" was exclusively known to Coinbase, or that he could not readily discover it.  The whitepaper described the intention to create stablecoins linked to other currencies.  Ex. 6 at 2.  Any depegging of these stablecoins would have been discoverable.  Plaintiff also does not plead how the depegging of TerraKRW or THT was material to his decisions or bore on the risks of UST.
[17] These articles are illustrative examples.  Plaintiff cited a Coindesk article in the FAC.  n.10.

disseminated information.  *Gray* v. *Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *8 (C.D. Cal. Jan. 23, 2012) (no exclusive knowledge of newsworthy topic that was subject of media attention).

Plaintiff tacitly admits that the purportedly omitted information was publicly disclosed, attempting to sidestep that fact by asserting that he "would not know to look for such sources or how to obtain the correct information, let alone be able to comprehend them."  ¶¶ 134, 154, 172. That is beside the point—that Plaintiff might not have understood information available to him is insufficient.  *Dinan* v. *Sandisk LLC*, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019) (claim that reasonable consumers deceived because of potentially confusing technological details insufficient).

### C.    If UST Is A Security, Then The UCL Does Not Apply

If the Court finds that this case involves a securities transaction (a finding that Coinbase would strongly dispute, *see infra* § V.E.5), then the UCL "does not apply."  *Wright* v. *Charles Schwab & Co.*, 2021 WL 1056838, at *7 (N.D. Cal. Mar. 18, 2021); *see also Cress* v. *Nexo Fin. LLC*, 2023 WL 6609352, at *13 (N.D. Cal. Oct. 10, 2023).

### D.    Plaintiff Fails To Plead A Violation Of The False Advertising Law (Count III)

The False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500) requires that Plaintiff prove he "suffered some economic injury, that [Coinbase] engaged in a deceptive or unfair practice, and that the deceptive practice caused [Plaintiff's] injury." *Tillage* v. *Comcast Corp.*, 2021 WL 2177225, at *1 (N.D. Cal. May 28, 2021).  Plaintiff's FAL claim is based on the same alleged misrepresentation and omissions as his negligent misrepresentation and UCL claims and fails for the same reasons, *see supra* §§ V.A, V.B—he cannot prove any actionable misstatements or omissions constituting a deceptive practice, or that the purported misconduct caused his injuries.

### E.    Plaintiff Fails To Plead Any Violation Of The California Securities Laws (Counts IV, V, VI, and VII)

#### 1.  Plaintiff's Claim under Cal. Corp. Code §§ 25110 & 25503 Fails (Count IV)

Plaintiff alleges that Coinbase violated California Corporations Code §§ 25110 and 25503. ¶¶ 184-95.  Section 25110 makes it unlawful "to offer or sell in this state any security in an issuer transaction" without qualification, § 25503 provides the cause of action.  Plaintiff must plausibly allege that he was in privity with Coinbase in that he purchased the relevant alleged security ***from***

1    ***Coinbase***.  *Hayes* v. *Scherer*, 2023 WL 5507072, at \*3 (C.D. Cal. July 3, 2023).  Count IV is

2    identical to Count V in the TAC (¶¶ 198-208), which the Court dismissed and ***did not*** grant leave

3    to amend.  Aug. 8 Order at 14.  Count IV should be rejected as an improper attempt to replead a

4    previously dismissed cause of action.  *See supra* § V.A.1.

5          Plaintiff's unchanged claim also fails for the reasons set out in the Court's prior decisions

6    dismissing the SAC and TAC.  In dismissing the SAC, the Court held that this claim was subject

7    to dismissal because each statute "only applies to an entity that either offers to sell or sells a

8    security," and that Pearl, in the SAC, had alleged only that Coinbase acted as an "intermediary"

9    and had not alleged that "defendants themselves sold any UST to plaintiff."  *Pearl*, 2024 WL

10   3416505, at \*8.  In dismissing the TAC, the Court noted that "although Pearl has changed the word

11   'intermediary' to the phrase 'indispensable party' (*compare* SAC ¶ 41 *with* TAC ¶ 52), he has not

12   added any allegations that are inconsistent with Coinbase's identity as an intermediary rather than

13   a seller."  Aug. 8 Order at 12.  Plaintiff does no better here; he does not add allegations showing

14   that Coinbase passed title to Plaintiff.[18]  Where Plaintiff changed the word "intermediary" to

15   "indispensable party" between the SAC and the TAC, he has now simply ***deleted*** that sentence of

16   the complaint altogether.  *Compare* TAC ¶ 52 *with* FAC ¶ 75.[19]  Thus, Plaintiff's fifth bite at the

17   apple once again "has not added any allegations that are inconsistent with Coinbase's identity as

18   an intermediary rather than a seller," and his claims must be dismissed.  Aug. 8 Order at 12.[20]

19         Plaintiff's claim fails for the independent reason that it does not adequately allege an "issuer

20   transaction," which must be "directly or indirectly for the benefit of the issuer."

21   Cal. Corp. Code § 25011.  Here, Plaintiff has not plausibly alleged that the "issuer" of UST—

22   Terraform Labs, ¶ 1—received "any portion of the purchase price"—as required to be a "transaction

23

---

24   [18] The User Agreement clearly states that when users buy "Digital Assets on the Coinbase Site,

25   [they] are not buying Digital Assets from Coinbase," Dkt. 38-2, § 3.2, and that "[t]itle to Digital Assets shall at all times remain with [the user] and shall not transfer to Coinbase," *id.* at § 2.6.1.

26   [19] But"[t]he Court does not ignore the prior allegations in determining the plausibility of the current pleading."  Aug. 8 Order at 6 n.4 (quoting *Stanislaus Food*, 782 F. Supp. 2d at 1076).

27   [20] The Court previously held that allegations "that Coinbase offered to sell UST by soliciting sales of UST through numerous mass media platforms" do not establish the privity required.  Aug. 8

28   Order at 13 (internal quotation marks omitted).  Plaintiff repeats these allegations in the FAC, *e.g.*, ¶¶ 77, 188, and they are just as unpersuasive as in the TAC.  *See* Aug. 8 Order at 13.

1   indirectly for the benefit of the issuer"—for Plaintiff's UST transactions on Coinbase. *See id.*;

2   *Goller* v. *Nat'l Life of Fla. Corp.*, 554 F.2d 1349, 1352 (5th Cir. 1977) (noting California law limits

3   an issuer transaction "to situations where some type of monetary consideration flows to the issuer").

4   Plaintiff's new claim is that the UST transactions on Coinbase "conferred a direct or indirect benefit

5   on Terraform Labs" because "[t]he sale of UST on Coinbase enabled Terraform Labs to sell more

6   UST," and therefore "Terraform Labs directly or indirectly received portions of the purchase price

7   of UST." ¶ 191. But this is wholly conclusory; Plaintiff does not explain how his purchases of

8   UST led to Terraform directly or indirectly receiving a portion of the purchase price *of those sales*.

9   Indeed, Plaintiff's theory would transform nearly any transaction into an issuer transaction. Next,

10  Plaintiff claims that "Terraform Labs was in a common enterprise with Plaintiff and other UST

11  investors." *Id.* But the "common enterprise" analysis for purposes of defining a security has no

12  bearing on defining an "issuer transaction" under the California securities law.

13          **2.   Plaintiff's Claim under Cal. Corp. Code §§ 25401 & 25501 Fails (Count V)**

14          Under § 25401, Plaintiff "must allege that there was a sale or purchase of stock in California

15  by fraudulent untrue statements or by omitting material facts that would by omission make the

16  statements misleading." *MTC Elec. Techs. Co.* v. *Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995).

17  Section 25501 provides a cause of action for a violation of § 25401. As with Count IV, Plaintiff

18  has improperly attempted to replead a violation of § 25401—the same violation alleged in Count

19  VI of the TAC—without leave to amend. *Compare* ¶¶ 196-206 *with* TAC ¶¶ 209-18; *see* Aug. 8

20  Order at 14. For that reason alone, Count V must be dismissed. *See supra* §§ III, V.A.1, V.E.1.

21          In any event, for the same reasons discussed with respect to his §§ 25110 and 25503 claim,

22  Plaintiff's attempt to replead a violation of §§ 25401 and 25501 fails, as it did in the TAC, for a

23  failure to plausibly allege privity of sale. *See supra* § V.E.1; Aug. 8 Order at 12-13. And as yet

24  another independent basis to dismiss this claim, Plaintiff has not pleaded with particularity that

25  Coinbase made an "untrue statement of a material fact or omit[ted] to state a material fact." Cal.

26  Corp. Code § 25401; *see supra* §§ V.A, V.B; *Kalin* v. *Semper Midas Fund, Ltd.*, 2022 WL

27  16935782, at *6 (N.D. Cal. Oct. 12, 2022) (dismissing §§ 25401/25501 claim where plaintiff "failed

28  to plausibly allege that a materially false or misleading statement was made at the time of

disclosure"); *see Guo*, 2023 WL 2683473, at \*6 (such claims "must adhere to [FRCP Rule] 9(b)").

### 3. Plaintiff's Cal. Corp. Code §§ 25130 & 25503 Claim Fails (Count VI)

Section 25130 makes it "unlawful for any person to offer or sell any security in this state in any nonissuer transaction unless it is qualified for such sale." Cal. Corp. Code § 25130.

#### (a) Plaintiff Fails to Allege a Primary Violation of §§ 25130 and 25503

Like the prior California securities law claims alleged by Plaintiff, a primary claim under §§ 25130 and 25503 requires privity of sale, and Plaintiff must plausibly allege that he purchased the assets **from Coinbase**. *See* Aug. 8 Order at 12. The language of § 25130 is identical in all relevant respects to § 25110. Moreover, under § 25503, which provides the private cause of action for a violation of § 25110 or § 25130, "[a]ny person who violates Section . . . 25130 . . . shall be liable *to any person acquiring from them* the security sold in violation of that section." Cal. Corp. Code § 25503 (emphasis added). In other words, Plaintiff must allege privity of sale with Coinbase to state a violation. *Zakinov* v. *Ripple Labs, Inc.*, 2020 WL 922815, at \*16 (N.D. Cal. Feb. 26, 2020) ("[T]he court concludes that plaintiff must allege privity to state a claim under § 25503."). As Plaintiff fails to plausibly allege privity, *supra* § V.E.1, his claim under §§ 25130 and 25503 fails.

#### (b) Plaintiff's Claim for Joint and Several Liability Under § 25504 Fails

Plaintiff also alleges that Coinbase is "jointly and severally liable" for a violation of § 25130 under § 25504. FAC ¶ 219. Section 25504 imposes joint and several liability for those who "materially aid[] in the act or transaction constituting the violation" of § 25501 or § 25503 "unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." Cal. Corp. Code § 25504.

To allege that Coinbase materially aided a violation of the California securities laws, Plaintiff must first plead a predicate violation. *See In re All. Equip. Lease Program Sec. Litig.*, 2002 WL 34451621, at \*11 (S.D. Cal. Oct. 15, 2002) ("§ 25504 requires a primary violation"); *Jackson* v. *Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) (allegations of primary liability are "a predicate to liability under § 25504"). Plaintiff pleads no such violation. He fails to specify

1    what conduct, and by whom, Coinbase purportedly aided.  While the FAC alleges that Coinbase is

2    liable "along with Terraform Labs and any other seller," Plaintiff nowhere specifies **who** directly

3    violated § 25130 under this theory.  ¶ 219.  Plaintiff's vague attempt to tie Coinbase's liability to

4    Terraform contains no allegation that Terraform directly sold UST to Plaintiff.  As discussed above,

5    to state a claim under §§ 25130 and 25503, Plaintiff must allege privity of sale with the primary

6    violator.  *Moss* v. *Kroner*, 197 Cal. App. 4th 860, 875 (2011) ("original direct violator" must be "in

7    privity with the plaintiff"); *Bains* v. *Moores*, 172 Cal. App. 4th 445, 479 (2009) ("plaintiffs have

8    not demonstrated that they could allege that they purchased securities from" primary violator.).

9    Without a primary violator, Plaintiff cannot assert liability through § 25504.  *Cf. Kalin*, 2022 WL

10   16935782, at *6 (§ 25504 claims "fail because plaintiff has not stated a primary claim").[21]

11        An independent reason for dismissal is that Plaintiff does not specify under what theory

12   Coinbase would be liable.  Plaintiff does not say whether Coinbase is allegedly a control person,

13   broker-dealer, or agent, as required by the statute.  *See* Cal. Corp. Code § 25504.  While the FAC

14   defines "broker-dealer," it does not allege that *Coinbase* is in fact a broker-dealer.  ¶ 222.  Even

15   setting those issues aside, to be liable under § 25504, Plaintiff must allege that Coinbase "materially

16   aided, not simply in the transaction, but *in the violation*."  *Apollo Cap. Fund, LLC* v. *Roth Cap.*

17   *Partners, LLC*, 158 Cal. App. 4th 226, 256 (2007) (emphasis added).  Here, Plaintiff does not allege

18   that Coinbase materially aided in the specific violation here—while he alleges that "[i]nvestors

19   purchased UST to make a profit," including by "staking" their tokens, he nowhere alleges that

20   *Coinbase* materially aided in those transactions or that the specific UST transactions at issue here

21   had anything to do with "staking" or the "Anchor Protocol."  ¶ 34; *see infra* § V.E.5.

### 4. Plaintiff Fails to Plead Either a Primary Violation of Cal. Corp. Code §§ 25400(d) & 25500 or a Secondary Liability Claim (Count VII)

#### (a) Plaintiff Fails to Plead a Primary Violation of §§ 25400(d) and 25500

25        Plaintiff does not adequately allege a violation of §§ 25400(d) and 25500.  "Section 25400

26   prohibits false and misleading statements designed to manipulate the securities markets."  *Cal.*

---

27   [21] Without Plaintiff identifying a primary violator, there is no way to assess whether the "other
28   person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."  Cal. Corp. Code § 25504.

1   *Amplifier, Inc.* v. *RLI Ins. Co.*, 94 Cal. App. 4th 102, 108 (2001).  A person may be liable only if

2   they are "a broker-dealer or other person selling or offering for sale . . . [a] security. . . ." Cal. Corp.

3   Code § 25400(d).  In addition, § 25500, which "creates the private remedy for violations of section

4   25400," under which Plaintiff brings this action, "is limited to intentional misrepresentations" by

5   someone who "willfully participate[s]" in the sale or offering of securities.  *Cal. Amplifier*, 94 Cal.

6   App. 4th at 111-13.  Section 25500 "make[s] it clear that liability requires a knowingly false

7   statement made with the deliberate intent to manipulate the price of a security."  *Id.* at 111.

8           For the same reasons discussed, *supra* §§ V.A.1, V.B.1, Plaintiff does not plausibly allege

9   that Coinbase made any "false or misleading" statement or "omitted to state any material fact."

10  Cal. Corp. Code § 25400(d).  That is enough for dismissal.  But the bases for dismissal do not end

11  there: Plaintiff has also failed to adequately plead scienter and loss causation.[22]

12          There are no plausible allegations that Coinbase "knew or had reasonable ground to believe"

13  the alleged misstatements or omissions were "false or misleading."  *Id*; *see supra* §§ V.A.1, V.B.1.

14  And as Plaintiff fails to state a violation of § 25400(d), there can be no liability for "willfully

15  particpat[ing]" in such a violation under § 25500.  *See Cal. Amplifier, Inc.*, 94 Cal. App. 4th at 112

16  (noting "the high level of scienter required for a violation of section 25500").  Plaintiff's mere

17  assertions that Coinbase "intentionally concealed" information and that Coinbase acted with an

18  "intent to deceive or defraud," ¶¶ 227, 229, amount to no more than "formulaic recitation of" an

19  element of the cause of action, which does not suffice to state a claim, *Twombly*, 550 U.S. at 555.

20          A claim under §§ 25400(d) and 25500 must also be dismissed where a plaintiff has "not

21  adequately allege[d] . . . fraudulent misstatements and omissions *caused* its alleged losses."  *Irving*

22  *Firemen's Relief & Ret. Fund* v. *Uber Techs., Inc.*, 998 F.3d 397, 401 (9th Cir. 2021) (emphasis

23  added).  Here, "the ultimate issue is whether the defendant's misstatement, as opposed to some

24  other fact, foreseeably caused the plaintiff's loss."  *Id.* at 407 (citations and quotations omitted).

25

26  ─────────────────────
    [22] Liability under these provisions is also limited "to a defendant who is either a person selling or
27  offering to sell or buying or offering to buy a security."  *Kamen* v. *Lindly*, 94 Cal. App. 4th 197,
    206 (2001).  Plaintiff has not adequately alleged that **Coinbase** sold or offered to sell UST, *see*
28  *supra* § V.E.1., or that it is a "a broker-dealer or other person selling or offering for sale or
    purchasing or offering to purchase the security" under § 25400(d).

1    Plaintiff does not allege that any revelation to the market *by Coinbase* caused UST to lose its peg

2    and fall in value.  *E.g.*, ¶¶ 82-84; *see supra* § V.A.3.

3                    *(b) Plaintiff Fails to Plead Secondary Liability under § 25504.1*

4         Plaintiff bizarrely references California Corporations Code § 25504.1 in Count VII.  ¶¶ 223-

5    24.  Section 25504.1 makes "[a]ny person who materially assists in" certain specified securities law

6    violations "jointly and severally liable with any other person liable . . . for such violation."  Cal.

7    Corp. Code § 25504.1.  This statute also requires an "intent to deceive or defraud."  *Id.*

8         If Plaintiff alleges liability under § 25504.1 for violating § 25400(d), his claim is untenable.

9    Section 25504.1 does ***not*** specify §§ 25400(d) or 25500 as provisions for which it provides a cause

10   of action.  *See* Cal. Corp. Code § 25504.1; *see also Kamen*, 94 Cal. App. 4th at 204.

11        To the extent Plaintiff pivots from § 25400(d) in Count VII and alleges a claim under

12   § 25504.1 for a violation of § 25401, his claim is unavailing.  As discussed *supra* § V.A.1, and

13   most importantly, Plaintiff "failed to plausibly allege . . . a materially false or misleading statement"

14   by either Coinbase or another primary violator of §25401.  Therefore, Plaintiff has failed to allege

15   a predicate violation of the California securities laws.  *Kalin*, 2022 WL 16935782, at *6; *OCG*

16   *Energy, LLC* v. *Shen*, 2023 WL 2628689, at *7 (C.D. Cal. Jan. 11, 2023) (primary and secondary

17   violation both needed to state § 25504.1 claim).  The FAC does not plausibly allege that ***anyone***

18   made a misrepresentation or omission in violation of § 25401 and so Plaintiff does not explain ***who***

19   Coinbase materially assisted in violating § 25401.  *Cf. Hollifield* v. *Resolute Cap. Partners Ltd.,*

20   *LLC*, 2023 WL 8168831, at *6 (C.D. Cal. Aug. 1, 2023) ("Rule 9(b) requires identifying 'the who,

21   what, when, where, and how of the misconduct charged.'").  Nor does Plaintiff adequately allege

22   that Coinbase ***materially assisted*** in any such violation.  Plaintiff's claim thus falls far short.

23        Further, Plaintiff merely asserts that Coinbase acted with an "intent to deceive or defraud,"

24   ¶ 229, which is again no more than a "formulaic recitation of" an element of the cause of action,

25   *Twombly*, 550 U.S. at 555.  And even more so, Plaintiff does not allege a misstatement or omission

26   known to be misleading ***by anyone***, and as a result, there can be no intent "to induce reliance on [a]

27   knowing misrepresentation or omission."  *Apollo Cap. Fund, LLC* v. *Roth Cap. Partners, LLC*, 158

28   Cal. App. 4th 226, 257 (2007) (internal quotation marks omitted).

### 5. Plaintiff Fails to Plausibly Allege He Engaged in Securities Transactions

Finally, Plaintiff's theory that Coinbase violated California securities laws is premised on the erroneous assumption that every sale of UST involved the sale of a security. ¶¶ 1, 9, 31, 36-40. But "[e]ach *transaction* must be analyzed and evaluated on the basis of the content of the instruments in question" to determine if an asset is a security. *Marine Bank* v. *Weaver*, 455 U.S. 551, 560 n.11 (1982) (emphasis added); *see also Donovan* v. *GMO-Z.com Tr. Co., Inc.*, 779 F. Supp. 3d 372, 386 (S.D.N.Y. 2025) (in private litigation—as opposed to enforcement cases brought by the SEC—"[t]he Court's inquiry is necessarily limited to the alleged contracts, transactions, or schemes in which Plaintiffs themselves engaged"). Plaintiff makes no attempt to show that each of ***Plaintiff's purchases of UST on Coinbase*** satisfy each element of the test in *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946) or California state law; instead, his allegations are entirely conclusory. For example, he asserts that the "common enterprise" element of *Howey* was met because "[t]he fortunes of UST investors were tied to one another" and to Terraform and its founder, ¶ 33, but fails to identify how that was the case with respect to his specific purchases. Similarly, he asserts that he "expected profits" "based on the managerial and entrepreneurial efforts of Terraform," ¶ 34, but does not specify what those efforts were, how they relate to his UST purchases, or how that is consistent with his primary contention that UST purchasers expected UST to remain pegged to the USD. These deficiencies are fatal. *See Donovan*, 779 F. Supp. 3d at 386 (plaintiff must allege in more than "conclusory terms" that digital asset is a security in the specific "circumstances and arrangement of its offer or sale"); *Real* v. *Yuga Labs, Inc*. No. 22-cv-08909, Dkt. 288 at 9-12, 16, 17-18 (C.D. Cal. Sept. 30, 2025) (dismissing complaint that failed to adequately allege that digital assets "were offered as investments," that there was commonality, or that "plaintiffs reasonably expected any profits"). And while Plaintiff refers to the "risk capital test," ¶ 38, he provides ***zero*** analysis of how it allegedly applies in this case. This is no more than a "formulaic recitation of" the test, *see* ¶ 39, which does not state a claim, *Twombly*, 550 U.S. at 555.[23]

---

[23] Plaintiff does not explain—or sufficiently allege—how his UST transactions satisfy the elements of: "[1] an attempt by an issuer to raise funds for a business venture or enterprise; [2] an indiscriminate offering to the public at large where the persons solicited are selected at random; [3] a passive position on the part of the investor; and [4] the conduct of the enterprise by the issuer with other people's money." *People* v. *Black*, 8 Cal. App. 5th 889, 900 (2017).

Although Plaintiff seeks to rely on the *SEC* v. *Terraform Labs* case, ¶ 34, that case did not concern transactions in UST akin to Plaintiff's purchases here, where the very foundation of his claims is that purchasers did not anticipate that the price would deviate from $1. Instead, it involved the alleged issuers of UST, Terraform, and its principals, encouraging investors to deposit their tokens into the Anchor Protocol on promise of a 20% profit. 684 F. Supp. 3d 170, 195 (S.D.N.Y. 2023). Plaintiff does not allege that his purchases on Coinbase had any relation to the Anchor Protocol. Indeed, the district court in that case even noted that "the tokens, if taken by themselves, might not qualify as investment contracts" and thus qualify as securities. *Id.* at 194.

This case is more akin to *SEC* v. *Ripple Labs, Inc.*, where the court held that secondary market offers and sales of a digital asset on centralized exchanges were not securities transactions because the purchasers in that case "could not have known if their payments of money went to Ripple, or any other seller of [the digital token]." 682 F. Supp. 3d 308, 328 (S.D.N.Y.). So too here, Plaintiff is a secondary market purchaser who fails to plead from *whom* he purchased UST.

What's more, the entire theory of Plaintiff's case is that he thought UST was "price-stable" and backed by a "tangible reserve asset." ¶¶ 90-95. Plaintiff's transactions in UST therefore are no different than the digital asset in *Donovan*, which was advertised as pegged to the Japanese yen. 779 F. Supp. 3d at 388. There, the court held that purchasers could not "reasonably expect to earn a profit derived primarily from the entrepreneurial or managerial efforts of [the issuer of the digital asset] or any other third parties promoting the asset or the blockchain technology on which it operates." *Id.* In short, "[i]t is not enough for Plaintiff[] to allege in conclusory terms that a digital asset is an investment contract disconnected from the circumstances and arrangement of its offer or sale." *Id.* at 386. While Plaintiff generally alleges that UST was a security, ¶¶ 31-40, he does not allege facts demonstrating that each specific transaction at issue was a securities transaction. The California Corporations Code claims are thus also subject to dismissal on this basis.

## VI.    CONCLUSION

The Court should dismiss the FAC in its entirety with prejudice.

1    Dated: October 13, 2025                    PAUL, WEISS, RIFKIND, WHARTON &
                                               GARRISON LLP
2

3                                              By: /s/ *Randall S. Luskey*
                                                   Randall S. Luskey
4                                                  Kristina A. Bunting (admitted *pro hac vice*)
                                                   Paul D. Brachman (*pro hac vice* pending)
5
                                               Attorneys for Defendant
6                                              COINBASE, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28