Julie Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin Osborne, State Bar No. 261367 (kevin@eko.law)
**Erickson Kramer Osborne LLP**
959 Natoma Street
San Francisco, CA 94103
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

LARRY PEARL, individually and on behalf of others similarly situated,

      Plaintiff,

vs.

COINBASE GLOBAL, INC. and COINBASE, INC.,

      Defendants.

Case No.: 3:22-CV-03561-MMC

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOURTH AMENDED COMPLAINT**

Date:      February 26, 2026
Time:      9:00 a.m.
Dept.      7 (19th Floor)
Judge:    Hon. Maxine Chesney

# **TABLE OF CONTENTS**

I.  Introduction ........................................................................................................... 1

II.  Factual Allegations .............................................................................................. 1

   A.  Undisputed Allegations Establish that UST Was a "Security" ........................... 1

   B.  Undisputed Allegations Show Coinbase Found "Red Flags" When Vetting UST that Would Be Material to Potential Investors, but Refused to Disclose These Facts ...................... 3

   C.  A Reasonable Investor Would Have Been Unaware of the Red-Flag Facts that Coinbase Knew and Withheld ............................................................................................................ 4

   D.  Coinbase's Definition of Stablecoins Directly Contradicted What It Knew to Be True of UST 7

   E.  Coinbase Sold or Materially Aided in the Sale of UST ..................................... 7

   F.  Plaintiff's Causes of Action Based on the Factual Allegations ......................... 8

III.  Standard of Decision for Motion to Dismiss ...................................................... 9

IV.  The Motion to Dismiss Should Be Denied .......................................................... 9

   A.  Claims Based on Misrepresentations and Omissions ..................................... 10

      1.  The Court Should Consider Plaintiff's Negligent Representation Allegations ........... 10

      2.  Coinbase's Omissions Are Actionable .................................................... 11

      3.  Peripheral Statements Do Nothing to Rectify Coinbase's False Statement ................ 13

      4.  Coinbase's Misrepresentation Was the Proximate Cause of Plaintiff's Harm ............. 14

      5.  Plaintiff's UCL Claims Are Actionable ................................................... 15

   B.  Claims Based on Violations of California Securities Laws .............................. 15

      1.  Coinbase Cannot Seriously Dispute that UST Was a Security as a Matter of Law ...... 15

      2.  Coinbase Is Liable as a Seller of UST or for Materially Aiding in the Sale of UST .... 16

      3.  Plaintiff Persuasively Alleges Facts Showing Coinbase Materially Aided the Sale (County VI) of an Unregistered Security and Made False Statements (Count VII) in the Course ......................................................................................................... 17

      4.  Coinbase's Claimed Defenses to Plaintiff's Should Be Disregarded ......................... 19

V.  Standard of Decision for Motion for Summary Judgment .................................. 20

VI.  Summary Judgment Should Be Denied ............................................................. 20

   A.  The Motion Should Be Denied for Coinbase's Refusal to Participate in Discovery ........ 21

   B.  If Not Denied, the Motion Should Be Re-noticed with an Opportunity for Discovery .... 22

   C.  If the Court Opts to Rule on the Motion Under Rule 56, Ample Questions of Disputed Material Fact Require the Motion Be Denied ............................................................ 23

VII.  Conclusion ....................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)................................................................ 20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................. 9

*B.L.M. v. Sabo & Deitsch,*
55 Cal. App. 4th 823 (1997) .................................................. 10

*BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC,*
725 F. Supp. 3d 206 (D. Conn. 2024) ................................... 15

*Bell Alt. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................. 9

*Bily v. Arthur Young & Co.,*
3 Cal. 4th 370 (1992) ............................................................ 10

*Boschma v. Home Loan Ctr., Inc.,*
198 Cal. App. 4th 230 (2011) ............................................... 12

*Bowden v. Robinson,*
67 Cal. App. 3d 705 (Cal. Ct. App. 1977) ............................ 16

*Bowen v. Ziasun Techs., Inc.,*
116 Cal. App. 4th 777 (2004) ............................................... 15

*Brooks v. Midwest Heart Grp.,*
655 F.3d 796 (8th Cir. 2011) ................................................ 21

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.,*
323 F.3d 767 (9th Cir. 2003) ................................................ 22

*Calemine v. Samuelson,*
171 Cal. App. 4th 153 (2009) ............................................... 10

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)............................................................... 20

*Colman v. Theranos, Inc.,*
325 F.R.D. 629 (N.D. Cal. 2018) .......................................... 18

*Cress v. Nexo Fin. LLC,*
2023 WL 6609352 (N.D. Cal. Oct. 10, 2023)........................ 15

*Durell v. Sharp Healthcare,*
183 Cal. App. 4th 1350 (2010) ............................................. 14

*Enreach Tech., Inc. v. Embedded Internet Sols., Inc.,*
403 F. Supp. 2d 968 (N.D. Cal. 2005) .................................. 22

*Entangled Media, LLC v. Dropbox Inc.*,
  2025 WL 2331857 (N.D. Cal. Aug. 13, 2025) ........................... 20

*Hall v. Superior Ct.*,
  150 Cal. App. 3d 411 (Cal. Ct. App. 1983) ........................... 19

*Hearn v. R.J. Reynolds Tobacco Co.*,
  279 F. Supp. 2d 1096 (D. Ariz. 2003) ............................... 7

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ...................................... 15

*In re Soc. Media Adolescent Addiction/ Pers. Inj. Prods. Liab. Litig.*,
  753 F. Supp. 3d 849 (N.D. Cal. 2024) .............................. 1

*Jacobson v. AEG Cap. Corp.*,
  50 F.3d 1493 (9th Cir. 1995) ...................................... 20

*Kirsten v. California Pizza Kitchen, Inc.*,
  2022 WL 16894503 (C.D. Cal. July 29, 2022) ....................... 13

*Kremen v. Cohen*,
  2012 WL 2919332 (N.D. Cal. July 17, 2012) ...................... 21, 22

*Kumandan v. Google LLC*,
  2022 WL 103551 (N.D. Cal. Jan. 11, 2022) ......................... 19

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) ....................................... 10

*Miller Fam. Tr. v. Nielson*,
  2013 WL 12474637 (C.D. Cal. Mar. 11, 2013) ....................... 15

*Moss v. Kroner*,
  197 Cal. App. 4th 860 (2011) ...................................... 16

*Mui Ho v. Toyota Motor Corp.*,
  931 F. Supp. 2d 987 (N.D. Cal. 2013). ............................. 12

*Oberlander v. Coinbase Glob. Inc.*,
  486 U.S. 622 (1988) ............................................... 17

*Ogier v. Pac. Oil & Gas Dev. Corp.*,
  135 Cal. App. 2d 776 (1955) ....................................... 18

*Panchenko v. Comenity Cap. Bank*,
  2025 WL 2374109 (N.D. Cal. Aug. 13, 2025) ........................ 23

*People v. Black*,
  8 Cal. App. 5th 889 (2007) ..................................... 1, 16

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ............................................... 17

*Randi W. v. Muroc Joint Unified Sch. Dist.*,
  14 Cal. 4th 1066 (1997) ........................................... 12

*Rodriguez v. Google LLC*,
   772 F. Supp. 3d 1093 (N.D. Cal. 2025) ...................................................... 23

*Rogers v. Berryhill*,
   2018 WL 1794437 (N.D. Cal. Apr. 16, 2018) ............................................. 22

*Rose v. Bank of Am., N.A.*,
   57 Cal. 4th 390 (2013) ............................................................................... 15

*Schaffer Fam. Invs., LLC v. Sonnier*,
   120 F. Supp. 3d 1028 (C.D. Cal. 2015) ..................................................... 17

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946) ..................................................................................... 1

*Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*,
   708 F. Supp. 3d 450 (S.D.N.Y. 2023) ............................................... 2, 3, 16

*Shaper v. Zadek*,
   557 F. Supp. 3d 969 (N.D. Cal. 2021) ...................................................... 16

*SI 59 LLC v. Variel Warner Ventures, LLC*,
   29 Cal. App. 5th 146 (2018) ...................................................................... 10

*Smith v. Intel Corp.*,
   2025 WL 2381617 (N.D. Cal. Aug. 15, 2025). ......................................... 10

*Underwood v. Coinbase Glob., Inc.*,
   2025 WL 438547 (S.D.N.Y. Feb. 7, 2025) ................................................ 17

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ....................................................................... 9

*Vess v. Ciba–Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................... 9

*Vizio, Inc. v. LeEco V. LTD.*,
   2018 WL 5303078 (C.D. Cal. July 27, 2018) ........................................... 10

*Wanetick v. Mel's of Modesto, Inc.*,
   811 F. Supp. 1402 (N.D. Cal. 1992) ......................................................... 17

*Warren v. Whole Foods Mkt. California, Inc.*,
   2022 WL 2644103 (N.D. Cal. July 8, 2022) ............................................. 22

*Wichita Falls Office Assoc. v. Banc One Corp.*,
   978 F.2d 915 (5th Cir.1992) ...................................................................... 22

*Wright v. Charles Schwab & Co.*,
   2021 WL 1056838 (N.D. Cal. Mar. 18, 2021) .......................................... 15

**Statutes**

15 U.S.C. § 45 ................................................................................................. 12

23 NYCCRR § 200.18 ..................................................................................... 13

23 NYCCRR § 200.2 ................................................................................................ 7

23 NYCCRR § 200.3 ................................................................................................ 7

Cal. Corp. Code § 22500 ...................................................................................... 15

Cal. Corp. Code § 25004 ...................................................................................... 16

Cal. Corp. Code § 25017 ...................................................................................... 18

Cal. Corp. Code § 25110 ...................................................................................... 15

Cal. Corp. Code § 25400 ...................................................................................... 18

Cal. Corp. Code § 25500 ...................................................................................... 18

Cal. Corp. Code § 25503 ...................................................................................... 16

Cal. Corp. Code § 25504 ................................................................................. 16, 18

Cal. Corp. Code § 25504.1 .............................................................................. 17, 18

Cal. Corp. Code § 25510 ...................................................................................... 16

Cal. Corp. Code § 25701 ...................................................................................... 19

Fed. R. Civ. P. Rule 12 ............................................................................... 9, 20, 22

Fed. R. Civ. P. Rule 56 ................................................................................... 21, 22

Fed. R. Civ. P. Rule 8 ............................................................................................. 9

Fed. R. Civ. P. Rule 9 ............................................................................................. 9

N.Y. Banking Law § 640 ........................................................................................ 7

N.Y. Banking Law § 641 ........................................................................................ 7

**Other Authorities**

9th Cir. Model Civil Jury Instruction No. 18.1 ................................................... 16

## Statement of Issues to Be Decided

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiff Larry Pearl ("Pearl") asks the Court to rule on the following issues:

1.      Should the Court consider Coinbase's inclusion of 21 exhibits, including extra-complaint documents subject to dispute, , thereby converting this to a motion for summary judgment?

If a motion to dismiss,

2.      Does the complaint plausibly allege that Coinbase withheld material facts from investors?

3.      Does the complaint plausibly allege Coinbase made affirmative false representations to investors?

4.      Does the complaint plausibly allege that Coinbase's omissions or misrepresentations caused Plaintiff harm?

5.      Does the complaint plausibly allege that UST was a security?

6.      Does the complaint plausibly allege that Coinbase was either a seller of UST or materially aided in the sale of UST?

If a summary judgement motion,

7.      Is Coinbase's refusal to engage in discovery grounds to deny the motion or, in the alternative, continue the motion and allow Plaintiff to conduct reasonable discovery?

8.      If the Court does not allow discovery, should the Court deny the motion based on the many genuine disputes of material fact already in the evidentiary record?

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Plaintiff's Fourth Amended Complaint, Dkt. 127 (the "Complaint" or "FAC") refocuses on allegations based on the Court's prior rulings and adds substantial detail demonstrating his allegations are plausible. Coinbase does not dispute most of Plaintiff's allegations, instead using diversions to argue its disclosures were adequate or the information it and other sources made available elsewhere were enough to make up for its misrepresentations and omissions. Coinbase cannot escape liability for its deceit. Nor can it escape liability on the claim that it was not a "seller" of UST. Whether it was or not, its conduct rose to the level necessary for liability under California's Corporate Securities Act.

In its Motion to Dismiss, Dkt. 132 (the "Motion), Coinbase asks the Court to consider so much "extra-complaint" evidence—21 exhibits—that it compels the Court to convert this to a motion for summary judgment. If the Court considers the material and converts the Motion, it should either be denied for Coinbase's refusal to engage in discovery or Plaintiff should be afforded a reasonable opportunity to conduct discovery. Although, there are several genuine disputes of material fact on the record already before the Court—enough that the Motion should be denied anyway.

## II.    **FACTUAL ALLEGATIONS**

The following facts are alleged in the Complaint or stated in documents incorporated into the Complaint by reference. The Court "must assume that the plaintiffs' allegations are true and draw all reasonable inferences in their favor" unless the allegations amount to "true conclusory statements" or "unreasonable inferences." *In re Soc. Media Adolescent Addiction/ Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 874 (N.D. Cal. 2024).

### A.  **Undisputed Allegations Establish that UST Was a "Security"**

An asset is a security under federal securities laws if it represents "an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). California law applies the same test. *See People v. Black*, 8 Cal. App. 5th 889, 900 (2007). In 2024, Hon. Jed Rakoff of the Southern District of New York analyzed the cryptocurrency at issue here, the "UST," within this framework. *Sec. &*

1    *Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 471 (S.D.N.Y. 2023)

2    ("*Terraform Labs*"). Judge Rakoff concluded, "[t]here is no genuine dispute that UST [and the

3    other assets it interacted with] are securities because they are investment contracts." *Id.*

4        As alleged in the Complaint, Coinbase's exchange enabled retail investors like Plaintiff

5    and the Class to invest money, both in the form of traditional fiat and digital currencies, in UST.

6    FAC ¶ 32.

7        The investors' expectation was, unsurprisingly, profit. *Id.*, ¶ 34. While the value of UST

8    was supposed to be pegged to the U.S. dollar (*id.*, ¶ 26), investors bought it for its various

9    associated rewards programs, like the "staking" program that allowed investors to earn interest

10   on tokens deposited in the Anchor Protocol, a protocol designed by UST's issuer, Terraform

11   Labs (*id.*, ¶ 34). Since the interest rates for staking UST were as high as 20% (*id.*, ¶ 28), it would

12   be unreasonable for any investor to buy it for any other purpose (*id.*, ¶ 34). As detailed in the

13   *Terraform Labs* opinion, referenced repeatedly in the Complaint, "[b]y May 2022, there were

14   approximately 18.5 billion tokens of UST, 14 billion of which had been deposited in the Anchor

15   Protocol." 708 F. Supp. at 472.

16       While investors profited from staking, Terraform Labs profited from the expansion of the

17   Anchor Protocol. FAC ¶¶ 33 & 34; *Terraform Labs*, 708 F. Supp. at 459-60 (explaining that

18   Terraform Labs's "equity" grew as its "ecosystem," including UST, reached more investors).

19   Thus, investors were, as the Complaint alleges, in a common enterprise with Terraform Labs.

20   FAC ¶ 33.

21       The Anchor Protocol's staking program depended on the efforts of Terraform Labs and

22   others, including strategically directing the protocol, expanding user adoption, ensuring others

23   adhered to the Protocol's "roadmap," and working with leadership on what the "products should

24   be." *Terraform Labs*, 708 F. Supp. 3d at 472. These allegations, which Coinbase does not

25   dispute, establish UST was a security.

26

27

28

**B. Undisputed Allegations Show Coinbase Found "Red Flags" When Vetting UST that Would Be Material to Potential Investors, but Refused to Disclose These Facts**

Coinbase touted the "rigorous" vetting process it used to analyze assets before listing them on its exchange. FAC ¶ 49. Coinbase acknowledged that it had an "obligation" to perform this vetting process. *Id.*, ¶ 53. The process involved analyzing the legitimacy of an asset's white paper, the history of the team behind it, details of how it functions, and whether it could be used to defraud or harm consumers. *Id.*, ¶ 50. It analysed historical prices, investment and financing history, technical roadmaps, and information about how assets are earned, burned, and distributed. *Id*.

Coinbase's review process was carried out by a team of researchers with special knowledge of the cryptocurrency industry and unique training and experience researching and assessing cryptocurrencies. *Id.*, ¶ 51. The researchers had access to publicly available information and non-public information provided exclusively to Coinbase by the asset's issuer. *Id*. Using this information, the researchers completed a "scorecard," assigning various scores to the asset's qualities. *Id.*, ¶ 52. This process weeded out approximately 90% of the assets that sought listing on Coinbase. *Id.*, ¶ 50. Again, Coinbase does not dispute these allegations.

In 2021 and 2022, Coinbase evaluated UST and other assets in the Anchor Protocol for listing on its exchange. FAC ¶¶ 55, 56, 59, 60. In its vetting process, Coinbase found that UST's peg was "inextricably linked" to the stability of another asset, the Luna, which Terraform Labs considered its "equity." ¶¶ 56, 135; *Terraform Labs*, 708 F. Supp. 3d at 459 (citing a Terraform Labs business development lead as saying "LUNA […] is the 'equity' in our co.").

Coinbase found that in the year prior, three different Terraform Labs stablecoins, including UST, lost their pegs. FAC ¶¶ 56, 134, 135. All three de-pegs were, as Coinbase discovered, caused by crashes in the value of the Luna. *Id*. Coinbase's own internal assessment of the wLuna, another Terraform Labs asset that UST's peg depended on, found it was "high risk." *Id.*, ¶¶ 60-61.

Coinbase also would have discovered in its vetting process that the SEC was investigating whether other Terraform Labs' assets were legally securities and that its leadership

was under investigation for related securities law violations. *Id.*, ¶ 57. *All* of these facts would be material to potential investors. *Id.*, ¶ 61. *None* of these facts were disclosed by Coinbase. *Id.*, ¶ 61-62. Yet again, Coinbase does not dispute any of these allegations.

## C.  A Reasonable Investor Would Have Been Unaware of the Red-Flag Facts that Coinbase Knew and Withheld

Plaintiff alleges that no reasonable investor would have known or understood the facts that Coinbase knew from the information available at the time. FAC ¶¶ 45, 134. Coinbase argues the contrary, claiming the facts it gathered in its vetting process were discoverable for average investors and, therefore, Coinbase lacked exclusive or superior knowledge of them. Dkt. 132 at p. 15. But all the material Coinbase points to was either non-public information or was not information a reasonable investor would be expected to know or understand. Plaintiff analyzes these various material facts in turn.

***Fact 1: UST's Value Depended on the Stability of the Luna***. Coinbase argues that UST's dependence on the stability of the Luna could have been deduced from the Terraform whitepaper. Dkt. 132 at p. 15. Even if Plaintiff read the whitepaper,[1] he would not have found a single statement tying UST's value to Luna's stability, and Coinbase cites none in its Motion. Instead, the whitepaper describes a process of "measuring stability with miner oracles," which it explains as follows:

> Since the price of Terra [including UST] currencies in secondary markets is exogenous to the blockchain, the system must rely on a decentralized price oracle to estimate the true exchange rate. We define the mechanism for the price oracle as the following:

---

[1] Coinbase misstates the record when it argues Plaintiff "repeatedly alleged that he was misled by the Terra whitepaper." Dkt. 132 at p. 15. Plaintiff has *never* pleaded that he read or relied on the whitepaper. Plaintiff's Third Amended Complaint stated, "on the UST webpage of Coinbase's website, on which Plaintiff relied, Coinbase published a link to the Terraform whitepaper […]." Dkt. 75 at ¶ 141. Plaintiff clarifies in the current Complaint that he never saw or read "any part" of the whitepaper before UST's crash in May 2022. FAC ¶ 93. None of the prior complaints indicate in any way that he read the whitepaper. *See generally*, Dkts. 1, 28, 49.

> • For any Terra sub-currency in the set of currencies C = TerraKRW, TerraUSD, TerraSDR ... miners submit a vote for what they believe to be the current exchange rate in the target fiat asset.
>
> • Every n blocks the vote is tallied by taking the weighted medians as the true rates.
>
> • Some amount of Terra is rewarded to those who voted within 1 standard deviation of the elected median. Those who voted outside may be punished via slashing of their stakes. The ratio of those that are punished and rewarded may be calibrated by the system every vote to ensure that a sufficiently large portion of the miners vote.

Dkt. 132-7 (Ex. 6). A reasonable investor could not be charged with understanding this opaque technospeak, and they certainly would not read it, or any other part of the whitepaper, to mean that UST's value was dependent on Luna's stability. *See generally*, Dkt. 132-7 (Ex. 6).

Also in support of this argument, Coinbase cites a section of its own website regarding "seigniorage algorithmic stablecoins." Dkt. 132 at p. 16. But the website's explanation of this term is irrelevant to whether UST's value was tied to Luna's stability:

> The advantage of seigniorage algorithmic stablecoins is that they have the potential to create a fully decentralized stablecoin. The main disadvantage is that, to date, they have struggled to maintain a stable price without relying on centralized stablecoins to support their value.

Dkt. 132 at p. 4; Dkt. 132-5 (Ex. 4) at p. 12. The statement draws no connection between a stablecoin's value and the volatility of non-pegged cryptocurrencies like Luna and certainly offers no details regarding UST's dependence on Luna's stability. Furthermore, a reasonable investor is unlikely to have ever seen this page because it requires navigation to Coinbase's "Institutional Research & Insights"—content aimed at advisors for institutional investors, and does not appear generally accessible to all investors, if it existed in this form at all.[2]

---

[2] The page was captured using the Wayback Machine on May 24, 2022 (Dkt. 132-1 at ¶ 6), weeks after the May 9, 2022 collapse of UST. The posting date is February 22, 2022. It was modified at least once after that date. Osborne Decl., ¶ 2. Given the opportunity for discovery, Plaintiff would interrogate whether any prior versions used different language, when the page was first made available, and whether investors like Plaintiff could access it (presently, it appears that Coinbase's "Institutional Research & Insights" content is only accessible through a portal requiring paid credentials: https://www.coinbase.com/institutional/research-insights/resources/overviews/research-offerings (last visited November 17, 2025)). *Id*.

***Fact 2: Luna's Volatility Caused Three Prior Stablecoin De-pegs***. No reasonable investor could have known that Luna was responsible for causing three stablecoin de-pegs in the year before UST was listed in Coinbase because there was no publicly available information that made that connection. Plaintiff is aware of no sources that were publicly available in May 2022 that connected the three prior de-pegs to Luna's volatility, and Coinbase cites none in its Motion.

Instead, Coinbase makes the puzzling argument that Plaintiff should have known that Luna caused the prior stablecoin de-pegs because he reviewed Coinbase's "historical pricing" data for UST. Dkt. 132 at p. 16. This argument makes no sense. Even if Coinbase's historical pricing data did show UST lost its peg, a fact not alleged in the Complaint and unproven by Coinbase, pricing data would not explain the cause of a de-peg or connect it to another asset. This fact was known to Coinbase—which Coinbase does not dispute—and unknowable to investors. FAC ¶¶ 134-135.

***Fact 3: Terraform Labs Was Under SEC Investigation***. Coinbase argues the SEC's investigation into Terraform Labs was ascertainable to investors in May 2022 based on an SEC press release posted on its website from November 2021 and a series of articles that followed. Dkt. 132 at pp. 16-17.

The SEC press release regarded a subpoena enforcement action the SEC filed in the Southern District of New York targeting the Mirror Protocol, a separate Terraform Labs protocol launched in 2020. Dkt. 132-16 (Ex. 15). The SEC's actual enforcement action was not filed until February 2023. Ex. 2 to Osborne Decl. The 2021 press release said nothing about UST, Luna, the Anchor Protocol, or any of other Terraform Labs assets that were actually the subject of the SEC's investigation and enforcement action. Dkt. 132-16 (Ex. 15); Ex. 2 to Osborne Decl.

Thus, Coinbase reasons that investors should have connected UST to Terraform Labs, then should have thought to search for an SEC investigation involving Terraform Labs, then should have understood that the subpoena enforcement action involving the Mirror Protocol was cause for concern over UST, even though neither the Coinbase webpage for UST nor the Terra whitepaper said anything about the Mirror Protocol or Terraform Labs. *See* Dkt. 132-3 (Ex. 2); Dkt. 132-7 (Ex. 6). The connection between Plaintiff's claims and this press release are, at best,

1  ambiguous, and must, therefore, be interpreted in the way most favorable for Plaintiff. *See Hearn*

2  *v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1102 (D. Ariz. 2003) ("the district court

3  must resolve any ambiguities in the considered documents in the plaintiff's favor").

**D.  Coinbase's Definition of Stablecoins Directly Contradicted What It Knew to Be True of UST**

6  While Coinbase knew that UST's price could collapse from Luna's volatility, it

7  maintained that stablecoins, including UST, were "***free from volatility of non-pegged***

8  ***cryptocurrencies***." *See*, *e.g.*, FAC ¶¶ 42, 90, 132. The idea that UST was free from non-pegged

9  cryptocurrencies' instability is irreconcilable with reality, which Coinbase knew and withheld.

10  *Id.*, ¶¶ 56, 134, 135. UST's stability was *entirely* dependent on the stability of Luna, a non-

11  pegged cryptocurrency. *Id.* Moreover, Coinbase knew that Luna was highly volatile and had

12  caused destabilization in other Terraform Labs assets three times in the prior year. *Id.*

13  Coinbase's omission of the fact that UST's price depended on Luna's stability would

14  have been especially misleading in 2022, when stablecoins—and particularly stablecoins like

15  UST—were still relatively new and not well understood. *Id.*, ¶ 66. In fact, UST was the first

16  algorithmic stablecoin ever listed on Coinbase. *Id.* While the Terra whitepaper described UST's

17  algorithmic relationship to Luna, it says nothing to suggest that UST's price could be affected by

18  Luna's volatility. *See*, *generally*, Dkt. 132-5 (Ex. 4). Thus, even if Plaintiff read the whitepaper,

19  which he did not, it provided no disclosures that corrected Coinbase's claims.

**E.  Coinbase Sold or Materially Aided in the Sale of UST**

21  The allegations in the Complaint make clear that Coinbase was either the direct seller of

22  UST or it materially aided in its sale. At all relevant times, Coinbase held a Money Transmitter

23  license, issued by the State of New York Department of Financial Services, allowing it to

24  "engage in the business of selling or issuing checks," defined as an "instrument for the

25  transmission or payment of money." FAC ¶ 70; N.Y. Banking Law §§ 640(3), 641(1). It also

26  held a Virtual Currency license, allowing it to engage in "virtual currency business activity,"

27  which includes "buying and selling Virtual Currency as a customer business." FAC ¶ 70; 23

28  NYCCRR §§ 200.2(q)(3), 200.3(a). It is not licensed to sell securities. FAC ¶ 70.

Customers who bought UST on Coinbase only interacted with Coinbase; they had no visibility into who or what is on the other side of a UST transaction. FAC ¶¶ 74, 75. When Coinbase users "purchased" a token of UST, they never took possession or control of the token's encryption key, which is the defining characteristic of cryptocurrency ownership. *Id.*, ¶ 71. At all times, Coinbase was the sole entity in possession and control of the encryption keys for all UST transacted on its exchange. *Id.*, ¶ 76. In this way, Plaintiff adequately alleges Coinbase was the "seller" of the UST. *Id.*, ¶ 76.

But if Coinbase was not the seller of UST, it undoubtedly provided material aid in the sale of UST. It promoted the sale of UST on social media and its exchange. FAC ¶¶ 10, 77. It facilitated the sale of UST by creating the infrastructure and interface users used to buy it. *Id.*, ¶¶ 209, 224. It was also a financial backer of Terraform Labs. *Id.*, ¶¶ 63, 78. Terraform Labs profited from the expansion of Anchor Protocol, and Coinbase earned revenue in the form of transaction fees every time UST was traded on its site. *Id.* ¶ 78.

## F. Plaintiff's Causes of Action Based on the Factual Allegations

Plaintiff asserts claims, supported by the mostly undisputed factual allegations above, for negligent misrepresentation (Count I), unlawful and unfair acts violating California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) ("UCL") (Count II), violation of California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) ("FAL") (Count III), and violations of California's Corporate Securities Act of 1968 (Cal. Corp. Code §§ 25000, *et seq.*). The Corporate Securities Act violations Plaintiff alleges are for the sale of an unregistered security by a primary seller (Cal. Corp. Code §§ 25110 & 25503) (Count IV) and false statements in the sale of unregistered security by the primary seller (Cal. Corp. Code §§ 25401 & 25501) (Count V). In the alternative to these claims, Plaintiff alleges the sale of an unregistered security by a secondary seller (Cal. Corp. Code §§ 25130 & 25503) (Count VI) and false statements in the sale of unregistered security by a secondary seller (Cal. Corp. Code §§ 25400(d) & 25500) (Count VII).

III.    **STANDARD OF DECISION FOR MOTION TO DISMISS**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. The court must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 n.1 (9th Cir. 1987).

Rule 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2)). Fraud-based claims, including claims for negligent misrepresentation and for violation of the FAL, must be pleaded with particularity per Rule 9(b), meaning they must "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (citation omitted).

IV.    **THE MOTION TO DISMISS SHOULD BE DENIED**

Coinbase represented that UST, as a stablecoin, was free from the volatility of non-pegged cryptocurrencies, and withheld the fact that UST's stability was dependent on Luna's stability. As an objective fact, UST could not be free from the volatility of non-pegged cryptocurrencies when its volatility was *directly connected* to the volatility of a non-pegged cryptocurrency. Coinbase further withheld the facts that Luna caused three prior stablecoin de-pegs and its founders were under SEC investigation for securities law violations. Coinbase does not dispute any of these factual allegations. Accordingly, Plaintiff states valid claims for deceit under this causes of action for common law negligent misrepresentation, violation of the UCL, violation of the FAL, and false statements in violation of the California Corporate Securities Act.

Plaintiff's other claims under the California Corporate Securities Act are similarly well-pleaded. Whether Plaintiff was in privity with Coinbase as a direct seller or whether Coinbase

only materially aided the sale of UST, it was engaged in the sale of an unregistered security. Coinbase should not be permitted to escape these well-pleaded allegations.

### A. Claims Based on Misrepresentations and Omissions

Under California law, a negligent misrepresentation is "an assertion of fact, falsity of that assertion, and the tortfeasor's lack of reasonable grounds for believing the assertion to be true." *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 154 (2018). The representation "need not be made with knowledge of actual falsity." *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (1997). Negligent misrepresentation is different from negligence; it "is a separate and distinct tort." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (1992). Accordingly, a claim for negligent misrepresentation is generally not barred by California's non-economic loss. *Vizio, Inc. v. LeEco V. LTD.*, 2018 WL 5303078, at *12 (C.D. Cal. July 27, 2018) ("separate tort claims for fraud and negligent misrepresentation under the Framework Agreement are not barred by California's economic loss rule").

"To plausibly allege a fraudulent omission, the omission must either 'be contrary to a representation actually made by the defendant,' or 'an omission of a fact the defendant was obliged to disclose. *Smith v. Intel Corp.*, 2025 WL 2381617, at *5 (N.D. Cal. Aug. 15, 2025). A defendant has a duty to disclose a fact "when the defendant had exclusive knowledge of material facts not known to the plaintiff" or "when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). A duty to disclose can also arise under a specific statute. See, e.g., *Calemine v. Samuelson*, 171 Cal. App. 4th 153, 161 (2009).

### 1. The Court Should Consider Plaintiff's Negligent Representation Allegations

As a threshold matter, Plaintiff notes the Court dismissed Plaintiff's negligent misrepresentation claim from the third amended complaint insofar as it depended on the "exclusive knowledge" and "partial representation" theory of omissions. Dkt. 119 at p. 8. The Court explicitly granted leave to amend Plaintiff's UCL and FAL claims "to the extent they rely on an omissions theory," but did not grant leave to amend the negligent misrepresentation claim on that theory. *Id*. The Court interpreted the third amended complaint to state that Plaintiff "read

and relied upon a Terraform whitepaper" (*Id*. at p. 9), which explained the algorithmic nature of UST, and therefore Plaintiff could not have plausibly relied on Coinbase's partial representations about UST. *Id*. Plaintiff respectfully requests the Court consider the partial representation allegations based on his clarification of the allegations regarding the whitepaper. Plaintiff's third amended complaint read, "[o]n the UST webpage of Coinbase's website, on which Plaintiff relied, Coinbase published a link to the Terraform whitepaper […]." Dkt. 75 at ¶ 141. Plaintiff clarifies in the current Complaint that he never read or relied on the Terra whitepaper before UST's crash in May 2022. ¶ 93. He therefore requests the Court consider his repleaded allegations of negligent misrepresentation by omission.

### 2. Coinbase's Omissions[3] Are Actionable

Plaintiff adequately alleges Coinbase had a duty to disclose based on the theories that it had information contrary to its material representations, it had exclusive knowledge of material facts unknown to Plaintiff, it made partial representations while suppressing material facts, and it owed a statutory duty under its statutory obligations.

**Contrary to Material Representation**. Coinbase concedes that it would have an obligation to disclose facts that were "contrary to a material representation actually made." Dkt. 132 at p. 13. Coinbase withheld the fact that UST's price depended on the volatility of a non-pegged cryptocurrency, the Luna, while at the same time affirmatively representing that stablecoins, including UST, are free from the volatility of non-pegged cryptocurrencies. This is an actionable omission because of Coinbase's diametrically opposite representation.

**Exclusive Knowledge**. To find a duty to disclose based on exclusive knowledge at this phase of the litigation, the Court needs no more than "sufficient detail to make a determination about Defendants' knowledge relative to that of its customers." *Mui Ho v. Toyota Motor Corp.*,

---

[3] Plaintiff respectfully maintains that Coinbase's affirmative statements that stablecoins (including UST) "are pegged" to the dollar, and that stablecoins (including UST) are "free from volatility of non-pegged cryptocurrencies" are materially misleading. *See*, *e.g.*, FAC ¶¶ 42, 132. He, therefore, repleads these allegations in the Complaint and reserves all rights to argue that they are and actionable misrepresentations.

931 F. Supp. 2d 987, 998 (N.D. Cal. 2013). Plaintiff alleges Coinbase had a duty to disclose the various material facts based on its exclusive knowledge. FAC ¶¶ 64, 85. Coinbase knew of facts because of its rigorous review process (*id.*, ¶¶ 49, 50) and team of specially trained asset researchers (*id.*, ¶¶ 51, 134).

The facts Coinbase found were either unknown to the public (Luna caused three prior stablecoin failures) or would not be found or understood by a reasonable investor (Coinbase's "Institutional Research & Insights" page, the Terra whitepaper, the SEC's press release). *Id.*, ¶ 134. Coinbase states, "Plaintiff must show that he was ***unable*** to find the allegedly omitted information elsewhere." Dkt. 132 at p. 15-16. Essentially, Coinbase is claiming that all information from every source, and expert interpretation of that information, should be imputed to Plaintiff. But that impossible standard is simply not the law. "The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 249 (2011)

***Partial Representations***. "[M]isleading half-truths [can] invoke an exception to the general rule excluding liability for mere nondisclosure or other failure to act." *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1084 (1997). Plaintiff alleges that Coinbase's affirmative representations regarding stablecoins gave rise to an obligation to be forthcoming with the information it possessed regarding UST's dependence on Luna's stability and Luna's propensity to cause stablecoins to de-peg. FAC ¶ 86. That obligation was especially plain considering that UST was just the third stablecoin listed on the Coinbase exchange. *Id.*, ¶ 66. Its investors were unlikely to be familiar with such rare assets. The whitepaper, which Coinbase relies on to attack Plaintiff's reliance on Coinbase's half-truths, was impossibly opaque. Even if Plaintiff read it, it would do nothing to warn that instability in Luna could break UST's peg.

***Statutory Duty***. Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibits "unfair or deceptive acts or practices in or affecting commerce." FAC ¶ 136. In California, the FTC Act is a valid basis for finding a defendant owed a duty to a plaintiff. *See, e.g.*, *Kirsten v. California Pizza Kitchen, Inc.*, 2022 WL 16894503, at *9 (C.D. Cal. July 29,

2022). Moreover, a money transmitter licensed by the New York State Department of Financial Services is prohibited from making "false, misleading, or deceptive representations or omissions" in advertising and marketing materials. 23 NYCCRR § 200.18(d); FAC ¶ 137. Coinbase was under a statutory duty to disclose material facts to investors, as both a virtual currency transmitter and as a seller/secondary seller of securities. FAC ¶¶ 136, 137. Coinbase does not dispute that it is regulated and licensed as a money transmitter under the New York Department of Financial Services' Virtual Currency Law.

### 3. Peripheral Statements Do Nothing to Rectify Coinbase's False Statement

Coinbase's points to other statements that, it argues, modified, clarified, or contradicted the false statement it made about Stablecoins.

**Risk of Loss**. Statements Coinbase made elsewhere on its website indicating that investors risked loss did nothing to soften its false claims about stablecoins. An investor buying cryptocurrencies faces a risk of loss because, of course, cryptocurrencies, like any other asset, can lose value. A warning that investments can lose value is reasonable, if obsolete. But that is entirely different from withholding the knowledge that a stablecoin's value depends on a non-pegged cryptocurrency's stability when one has defined a stablecoin in the exact opposite terms.

**Algorithmic**. Coinbase points to numerous other sources labelling UST an "algorithmic stablecoin," and argues that the term should have informed investors that UST subject to "collapse." But these statements fall into one of two categories: (1) statements made in the unreadable (and unread) Terra whitepaper, and (2) a lone statement made on the Coinbase "Institutional Research & Insights" page that was clearly not meant for, and possible not accessible to, retail investors. Dkt 132-5 (Exhibit 4 to Coinbase's Motion). And while these sources may call UST "algorithmic," they say nothing correct Coinbase's omissions. For all the emphasis in the Motion on the word "algorithmic," Coinbase fails to point to any language that a reasonable investor would have read that made clear in plain English that UST's value was tied to Luna's stability.

**Attempts to Maintain Its Peg**. Coinbase's disclosure that UST only "attempts" to maintain a peg to the dollar is immaterial to the omissions Plaintiff alleges here. Plaintiff alleges

that Coinbase withheld knowledge that UST's makers were under SEC investigation for violating securities laws, Luna had caused three prior stable coin de-pegs, and that Luna's stability controlled UST's value. Meanwhile, it held out UST as a stablecoin, which was by definition "free from the volatility of non-pegged cryptocurrencies." The statement that UST only "attempts" to maintain a peg does not disclose any of the withheld facts or contradict Plaintiff's allegation that they were material. Coinbase's omissions were still deceptive, even if investors knew that UST merely attempted to maintain its peg.

### 4. Coinbase's Misrepresentation Was the Proximate Cause of Plaintiff's Harm

Coinbase argues Plaintiff cannot prove causation because he would have lost his investment "no matter what." Dkt. 132 at p. 11. It contends, "the unstaking of $2 billion of UST" caused his losses, not Coinbase's misrepresentations. *Id*. This is an unpersuasive argument. Where a plaintiff alleges loss caused by omitted material facts, a plaintiff pleads causation by establishing that he would have behaved differently had the omitted facts been disclosed. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) ("a misrepresentation is material for a plaintiff only if there is reliance—that is, without the misrepresentation, the plaintiff would not have acted as he did") (cleaned up).

Plaintiff goes out of his way to show that Coinbase's misrepresentations caused his loss. Plaintiff specifically states that he "did not know that UST was tied to LUNA and that LUNA had a propensity to cause its pegged stablecoins to depeg" and "[b]ut-for Coinbase's concealment of this fact, Plaintiff would not have purchased UST." FAC ¶ 134. He goes on, "Coinbase listed both UST and wLuna but did not disclose any of the knowledge and red flags it exclusively maintained," and "[h]ad Plaintiff and Class Members known of the high risk assessments, they would not have purchased UST." *Id.*, ¶ 135. These allegations are clearly stated and logical, as one can reasonably infer that a potential investor would act differently if the stablecoin they were about to buy was disclosed as tethered to a non-pegged cryptocurrency that had caused three stablecoin de-pegs in the prior year.

*5. Plaintiff's UCL Claims Are Actionable*

Coinbase cites *Wright v. Charles Schwab & Co.*, 2021 WL 1056838 (N.D. Cal. Mar. 18, 2021) and *Cress v. Nexo Fin. LLC*, 2023 WL 6609352 (N.D. Cal. Oct. 10, 2023) for the blanket argument that the UCL does not apply under any circumstances to securities claims.

This argument is problematic for several reasons. First, neither of those two opinions dismissed the plaintiff's UCL claims because the holding they stand for is applied narrowly. 2021 WL 1056838, at *8; 2023 WL 6609352, at *13; *see also Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 399 fn. 8 (2013) (questioning the scope of the holding in *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777 (2004), on which *Wright* and *Cress* both relied); *Miller Fam. Tr. v. Nielson*, 2013 WL 12474637, at *8 (C.D. Cal. Mar. 11, 2013) (refusing to extend *Bowen*).

Second, these decisions appear to conflict with the ideology of the UCL. "It is well known that the purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC*, 725 F. Supp. 3d 206, 218 (D. Conn. 2024) (also refusing to extend *Bowen*).

And third, even if Plaintiff's UCL claims and securities claims cannot co-exist, that would only mean the Court could dismiss Plaintiff's UCL[4] claim under this concept if it ruled this *is* a securities claim (i.e., UST *is* a security). At least one, if not both, of these theories of liability should survive.

## B. Claims Based on Violations of California Securities Laws

*1. Coinbase Cannot Seriously Dispute that UST Was a Security as a Matter of Law*

Plaintiff alleges Coinbase offered or sold an "unqualified" (i.e., unregistered) security in violation of section 25110 of the California Corporate Securities Act, Cal. Corp. Code §§ 22500 *et seq.* ("the Act"). This is referred to in the case law as a "qualification violation." *Bowden v.*

---

[4] It is also notable that the Court can find a violation of the UCL's unfair prong even if it concludes Coinbase had no duty to disclose the facts it knew about UST. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865–66 (9th Cir. 2018) ("the lack of a duty to disclose does not necessarily dispose of claims under the unfair prong")

*Robinson*, 67 Cal. App. 3d 705, 711 (Cal. Ct. App. 1977). "California courts have relied on two distinct tests in evaluating an alleged security: the risk capital test and the federal or *Howey* test." *People v. Black*, 8 Cal. App. 5th at 900. Under the *Howey* test, UST has already been ruled a security. *Terraform Labs*, 708 F. Supp. 3d at 472. Nevertheless, Plaintiff re-alleges all facts to show this is true here as well.

Coinbase's only argument to the contrary is that the Complaint fails to adequately allege that investors were in a "common enterprise" as *Howey* requires. But Plaintiff alleges clearly that all UST investors expected profit from their investment. FAC ¶ 34. They achieved this through the Anchor Protocol's staking system, which offered 20 percent interest. *Id.*, ¶ 28. When investors staked UST, Terraform Labs expanded the Anchor Protocol and, in turn, grew its equity. FAC ¶¶ 33 & 34; *Terraform Labs*, 708 F. Supp. at 459-60. These facts, as alleged, are adequate at this phase of the litigation to state a claim under applicable securities laws.

### 2. Coinbase Is Liable as a Seller of UST or for Materially Aiding in the Sale of UST

Coinbase contends that Plaintiff fails to establish privity in that he does not adequately plead he bought UST from Coinbase. Plaintiff disagrees. But even if there were no privity, the Act specifically assigns joint and several liability for "secondary actors." *Moss v. Kroner*, 197 Cal. App. 4th 860, 874 (2011). "Numerous courts have recognized that strict privity is required only for claims of primary liability […] and not for secondary liability suits alleging joint and several liability for a violation of section 25401 by means of sections 25504 and/or 25504.1." *Id.* (collecting cases).

Under section 25504, joint and several liability may be assigned to a "broker-dealer or agent who materially aids in the act or transaction constituting the violation." Cal. Corp. Code § 25504 (applied to § 25510 by operation of § 25503). A "broker-dealer" is defined as "any person engaged in the business of effecting transactions in securities in this state for the account of others." Cal. Corp. Code § 25004; *see also* 9th Cir. Model Civil Jury Instruction No. 18.1 (defining a "broker" as one who "buys and sells securities for clients, usually for a commission"); *Shaper v. Zadek*, 557 F. Supp. 3d 969, 984 (N.D. Cal. 2021) (same). Plaintiff

1    defines "broker-dealer" (FAC ¶ 222) and states numerous facts showing Coinbase met that

2    definition (*see, e.g., id.*, ¶¶ 224-228).

3       Under section 25504.1, secondary liability applies to "persons liable under specified

4    statutory provisions." Such liability may be assigned to "[a]ny person who materially assists in

5    any violation of Section 25110 […] or 25401." Cal. Corp. Code § 25504.1. Material assistance

6    may include "communicating misrepresentations directly to investors" or "playing a material,

7    facilitating role in the alleged securities law violation." *Schaffer Fam. Invs., LLC v. Sonnier*, 120

8    F. Supp. 3d 1028, 1045 (C.D. Cal. 2015) (forwarding emails from the primary seller constituted

9    material assistance).

10       *3.   Plaintiff Persuasively Alleges Facts Showing Coinbase Materially Aided the Sale*
             *(County VI) of an Unregistered Security and Made False Statements (Count VII) in*
11           *the Course*

12       In *Oberlander v. Coinbase Glob. Inc.*, the Second Circuit held that Coinbase could be

13    liable for violations of federal securities laws as a "statutory seller," as defined in *Pinter v. Dahl*,

14    486 U.S. 622 (1988). *Oberlander*, 2024 WL 1478773 (2d Cir. Apr. 5, 2024). Under *Pinter*, "a

15    defendant can be held liable as a 'statutory seller' if it either (1) passed title, or other interest in

16    the security, to the buyer for value or (2) successfully solicited the purchase of a security,

17    motivated at least in part by a desire to serve its own financial interests or those of the securities'

18    owner." 486 U.S. at 642, 644 n.21, 647 (cleaned up).

19       The district court applied this finding to the plaintiff's claims under California securities

20    laws, including sections 25110, 25130, 25503, and others, and found the standard under *Pinter*

21    applied. *Underwood v. Coinbase Glob., Inc.*, 2025 WL 438547, at *10 (S.D.N.Y. Feb. 7, 2025)

22    (citing *Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1406 (N.D. Cal. 1992) ("where a

23    state law is patterned after a federal law, the two are construed together"). When Coinbase

24    argued, as it does here, the plaintiff in a California securities claim must show they purchased the

25    security as a part of an "issuer transaction," the court disagreed, holding "that is not fatal,

26    because the [amended complaint] separately bases [the allegation] on a violation of § 25130,

27    which applies to 'any nonissuer transaction.'" *Underwood*, 2025 WL 438547, at *10.

28

1

***Liability for Selling Unregistered Securities***. Similarly here, Plaintiff alleges Coinbase is

2

liable as a direct seller under *or* as for its conduct materially aiding the sale of UST in violation

3

of section 25130. Coinbase materially assisted in alleged violations by withholding damning

4

information after vetting UST (FAC ¶¶ 11, 44-46); promoting and soliciting the sale of UST on

5

X, Medium, Reddit, and its own website (*id.*, ¶¶ 77, 201, 210); and providing (for a commission)

6

the platform and all the tools necessary for investors to buy UST (*id.*, ¶¶ 78, 80, 209). These

7

allegations are far more than what is required under sections 25504 and 25504.1. As such,

8

Plaintiff adequately alleges Coinbase is liable as a secondary actor even if the Court concludes it

9

is not liable as a primary seller.

10

***Liability for False Statements***. Plaintiff alleges are more than enough to sustain a claim

11

for violations of sections 25400(d) and 25500. "To establish liability under § 25500 for violation

12

of § 25400(d), Plaintiffs must show: (1) Defendants sold or offered to sell securities; (2)

13

Defendants made a materially false or misleading statement or omission; (3) Defendants' false

14

statement or omission was made to induce the purchase or sale of securities; and (4) Plaintiffs

15

purchased a security at a price that was affected by Defendants' actions." *Colman v. Theranos,*

16

*Inc.*, 325 F.R.D. 629, 647 (N.D. Cal. 2018). The Act's definition of "sell" is expansive, including

17

"any exchange of securities and any change in the rights, preferences, privileges, or restrictions

18

of or on outstanding securities." Cal. Corp. Code § 25017; *see also Ogier v. Pac. Oil & Gas Dev.*

19

*Corp.*, 135 Cal. App. 2d 776, 779 (1955) (definition under the statute "includes, for example, an

20

'offer' to sell, an 'attempt' to sell or the 'solicitation' of a sale, 'whether done directly or by an

21

agent, circular letter, advertisement, or otherwise'").

22

Plaintiff makes ample allegations Coinbase was a seller of securities. Plaintiff alleges that

23

investors' only transactional relationship was with Coinbase directly. ¶ 75. Moreover, Coinbase

24

at all times maintained control over Plaintiff's encryption keys, which is the definition of

25

cryptocurrency ownership. ¶ 76. While Plaintiff may not have had privity with Coinbase in these

26

transactions is immaterial. "§ 25500 generously extends liability to all persons affected by

27

market manipulation without requiring reliance or privity." *Colman*, 325 F.R.D. at 647.

28

Plaintiff's allegations of misleading statement or omission. The Complaint makes extensive and

1  detailed allegations regarding Coinbase's misleading statements and omissions. *See* section II.C.,

2  above. Coinbase's intent to induce sales is shown by Plaintiff's allegations that Coinbase

3  promoted UST, generated revenue from transaction fees, and was a financial backer of

4  Terraform Labs. And Plaintiff bought UST for $1, which is $1 more than he would have paid

5  had he known the truth about the asset. ¶ 96.

6      *4. Coinbase's Claimed Defenses to Plaintiff's Should Be Disregarded*

7      Coinbase's user agreement is no defense here. For one thing, it is inadmissible. *See*

8  Plaintiff's Opposition to Coinbase's Request for Judicial Notice, filed herewith.[5] It is also

9  unenforceable. On February 3, 2023, the Court delegated the question of whether Coinbase could

10  enforce the user agreement's arbitration provision to an arbitrator. Dkt. No. 45 at 12. On

11  September 21, 2023, that arbitrator ruled the user agreement as a whole had "a high degree of

12  procedural unconscionability." Dkt. No. 47 at p. 9. He found the arbitration provision

13  substantively unconscionable and unenforceable. *Id*. at p. 13. The clause Coinbase cites to

14  preclude Plaintiff from enforcing his rights under the Act is also unenforceable because it

15  violates the Act's anti-waiver provision, Cal. Corp. Code § 25701. *Hall v. Superior Ct.*, 150 Cal.

16  App. 3d 411, 418 (Cal. Ct. App. 1983) ("the right of a buyer of securities in California to have

17  California law and its concomitant nuances apply to any future dispute arising out of the

18  transaction … cannot be waived or evaded by stipulation of the parties to a securities

19  transaction").

20      Nor is it a defense that Plaintiff cannot name a specific alternative seller. Coinbase

21  argues, without legal support, that Plaintiff must identify who sold him the UST in question in

22  order to state a claim that Coinbase materially aided in the sale. That makes no sense for a

---

[5] Even if the Court takes notice of the fact that the user agreement exists, as it has in its two prior rulings on Coinbase's motions to dismiss (Dkt. 74 at p. 12; Dkt. 119 at p. 11), the terms of the user agreement may not be considered in support of Coinbase's substantive arguments. *Kumandan v. Google LLC*, 2022 WL 103551, at *6 (N.D. Cal. Jan. 11, 2022) ("just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth").

Coinbase retail investor. Coinbase investors have no idea who sold him their UST if it was not Coinbase because *Coinbase prevented them from knowing*. The only interaction investors had with any interface when purchasing UST was Coinbase. FAC ¶ 75. If anyone knows who UST's seller was, it would be Coinbase. Coinbase feigns ignorance here for its own benefit.

## V.    STANDARD OF DECISION FOR MOTION FOR SUMMARY JUDGMENT

"If matters outside the pleadings are submitted, the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment under Federal Rule of Civil Procedure 56." *Jacobson v. AEG Cap. Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995); *see also* Fed. R. Civ. P. 12(d). If the Court considers Coinbase's extra-complaint documents and analyses, this Motion is treated as a Rule 56 motion, and a genuine dispute regarding any material fact is ground to deny the motion entirely. *Entangled Media, LLC v. Dropbox Inc.*, 2025 WL 2331857, at *4 (N.D. Cal. Aug. 13, 2025). Summary judgment is only appropriate if, after drawing all inferences and resolving all doubts in favor of the nonmoving party, there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 330 (1986). A fact is material when it "*could* affect the outcome of the case" under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis added).

## VI.    SUMMARY JUDGMENT SHOULD BE DENIED

With each motion to dismiss, Coinbase has sought to introduce more and more evidence in support of its positions. The Court has, to this point, allowed Coinbase to introduce over a dozen exhibits in support of its two motions to dismiss, including documents that were never referenced in Plaintiff's complaints. *See* Dkt. 74 (admitting 4 exhibits, 1 of which was a user agreement that was never incorporated by reference in the complaint and that Plaintiff never relied on in support of his arguments against arbitration); Dkt. 119 (taking notice of 14 documents and facts, including the same user agreement).

Coinbase goes too far here, seeking to admit a bewildering 21 exhibits, almost none of which are incorporated by reference in Plaintiff's Complaint by any stretch of the imagination. *See* Plaintiff's Opposition to Request for Judicial Notice, filed herewith, Coinbase's exhibits that are not incorporated in the Complaint by reference). These documents break the mold for

1  admissibility on a Rule 12(b)(6) motion and either must be disregarded or must convert this to a

2  Rule 56 motion for summary judgement.

3      If converted to a motion for summary judgment, the Motion should be denied first

4  because of Coinbase's unwillingness to participate in discovery. If the Motion is not denied

5  outright, it should be re-noticed as a motion for summary judgement and Plaintiff should be

6  afforded the opportunity to conduct essential discovery. But even if the Court does not allow

7  discovery, the disputed material facts already in the record are sufficient to deny the Motion.

8  **A. The Motion Should Be Denied for Coinbase's Refusal to Participate in Discovery**

9      Upon conversion to a summary judgment motion, the opposing party must be afforded

10 reasonable notice that conversion is occurring (*Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800

11 (8th Cir. 2011)) and "a reasonable opportunity to present all the material that is pertinent to the

12 motion" (Fed. R. Civ. P. 12(d)). Under Rule 56,

13     If a nonmovant shows by affidavit or declaration that, for specified reasons, it
       cannot present facts essential to justify its opposition, the court may: (1) defer
14     considering the motion or deny it; (2) allow time to obtain affidavits or declarations
       or to take discovery; or (3) issue any other appropriate order.
15

16 Fed. R. Civ. P. 56(d); *see also Kremen v. Cohen*, 2012 WL 2919332, at *5 (N.D. Cal. July 17,

17 2012) (denying summary judgment where plaintiff had only limited opportunity to conduct

18 discovery).

19     The Parties initially stipulated to limit discovery pending the outcome of Coinbase's

20 motion to compel arbitration. Dkt. 37. When that was ultimately denied, Plaintiff sought to

21 resume discovery, serving requests for production of documents on May 3, 2024, and

22 interrogatories on May 7, 2024. Rather than respond, Coinbase moved to stay discovery on May

23 22, 2024. Dkt. 61. The Court granted Coinbase's motion on June 17, 2024. Dkt. 67. Coinbase has

24 not responded to any of Plaintiff's discovery requests. Osborne Decl., ¶ 4. The Motion should be

25 denied because Plaintiff has not had an opportunity to conduct discovery on his theory of

26 liability. It is within the Court's discretion, therefore, to simply deny the Motion and permit the

27 case to go forward with discovery.

28

1

**B.  If Not Denied, the Motion Should Be Re-noticed with an Opportunity for Discovery**

2        As an alternative to dismissal under Rule 56, a court may defer a motion for summary

3   judgement and allow the plaintiff discovery. Fed. R. Civ. P. 56(d); *Enreach Tech., Inc. v.*

4   *Embedded Internet Sols., Inc.*, 403 F. Supp. 2d 968, 980 (N.D. Cal. 2005) (motion for summary

5   judgement should be continued where essential facts can be obtained through discovery).

6        Where a motion for summary judgment is filed "so early in the litigation, before a party

7   has had any realistic opportunity to pursue discovery relating to its theory of the case, district

8   courts should grant any [motion seeking discovery] fairly freely." *Burlington N. Santa Fe R. Co.*

9   *v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773 (9th Cir. 2003). A

10  "continuance of a motion for summary judgment for purposes of discovery should be granted

11  almost as a matter of course unless the non-moving party has not diligently pursued discovery

12  […]." *Id.* (citing *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915 (5th Cir.1992)).

13  "[A] court may defer summary judgment even in the absence of a formal motion." *Kremen*, 2012

14  WL 2919332, at *5.

15       If the Court does not simply deny this Motion, it should defer the Motion and lift the

16  discovery stay so that Plaintiff is afforded "a reasonable opportunity" to present pertinent

17  material. Fed. R. Civ. P. 12(d). This includes an opportunity to conduct discovery on the material

18  facts relating to his theories of liability. *See Warren v. Whole Foods Mkt. California, Inc.*, 2022

19  WL 2644103, at *2 (N.D. Cal. July 8, 2022) (converting motion to dismiss to motion for partial

20  summary adjudication and affording plaintiff discovery on pertinent issues); *Rogers v. Berryhill*,

21  2018 WL 1794437, at *1 (N.D. Cal. Apr. 16, 2018) (allowing plaintiff discovery where

22  defendant's "extra-complaint evidence" converted a Rule 12 motion to a Rule 56 motion).

23       There are several essential factual issues requiring discovery, such as what specific non-

24  public facts Coinbase withheld or omitted when it publicized trading for UST, what agreements

25  Coinbase or its affiliates entered to provide liquidity for UST or materially aid the sale of UST,

26  and what acts Coinbase took to sell UST or aid UST sales. Osborne Decl., ¶ 5.

27

28

---

**C.  If the Court Opts to Rule on the Motion Under Rule 56, Ample Questions of Disputed Material Fact Require the Motion Be Denied**

Even if the Court were to convert the Motion but deny Plaintiff the opportunity for discovery, the Motion should still be denied based on the present record. The exhibits to the Motion and the documents incorporated by reference in the Complaint present genuine disputes of material fact.

Here, innumerable questions of disputed material fact are presented in the documents before the Court. They include, but are not limited to: whether UST's dependence on Luna was a material fact that Coinbase should have disclosed; whether a reasonable investor would have been expected to read and understand the Terra whitepaper and, if so, if that document made any statements explaining UST's dependence on Luna to maintain its peg; whether the fact that Luna had caused three prior Terraform Labs stablecoins to de-peg was a material fact that Coinbase should have disclosed; whether the fact that Coinbase's internal vetting process found Luna and wLuna "high risk" assets was a material fact that Coinbase should have disclosed; whether the SEC's investigation into Terraform Labs's for securities laws violations was a material fact that Coinbase should have disclosed; whether a reasonable investor in 2022 would have been expected to find these undisclosed facts on their own; and whether a reasonable investor in 2022 would be misled by Coinbase's statement that UST was a stablecoin, "free from the volatility of non-pegged cryptocurrencies." Where the parties reasonably dispute how a material statement may be interpreted, "[w]hether [defendant's] or Plaintiffs' interpretation prevails is a triable issue of fact." *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1106 (N.D. Cal. 2025).

In addition to interpretations of Coinbase's misrepresentations and omissions, genuine disputes include whether Coinbase's misrepresentations and omissions caused Plaintiff to believe in UST's stability and, in turn, lose his savings; whether buying UST was "an investment of money in a common enterprise with profits to come solely from the efforts of others" (*Howey*, 328 U.S. at 301); and whether Coinbase sold or materially aided in the sale of UST to its users. Just one of these disputed material fact is sufficient to deny a motion for summary judgement. *Panchenko v. Comenity Cap. Bank*, 2025 WL 2374109, at *2 (N.D. Cal. Aug. 13, 2025).

Additional extra-complaint evidence shows genuine disputes of material fact. Reliable evidence indicates Coinbase had actual knowledge that UST was likely to collapse before May 9, 2022. In a July 2022 whitepaper published by Coinbase's "think tank," Coinbase Institute, Coinbase acknowledged that the collapse was "not entirely unexpected" and "did not come as a surprise," citing a 2021 research paper authored by Chrisitan Catalini called "On the Economic Design of Stablecoins"[6]. Ex. 3, pp. 15, 35. The whitepaper further admitted, "[i]t is now broadly understood that algorithmic stablecoins *are not really stable, and it is a misnomer to call them such*." *Id.* at p. 36. One might defend Coinbase by pointing out these statements were published months after the May 2022 collapse, and do not show Coinbase knew these statements were true before that. But Mr. Catalini, the author of the research paper that predicted the collapse, was an advisor to Coinbase in 2021 (Ex. 5) and sat on the five-member advisory board for Coinbase Institute (Ex. 6). Whether Coinbase knew of and had reason to disclose this prediction are, at the very least, triable questions of material fact.

In summary, academics (including at least one who was advising Coinbase) expected the collapse

## VII.    CONCLUSION

For the foregoing reasons, the Court should deny Coinbase's Motion to Dismiss because the well-pleaded allegations in the Complaint state multiple actionable claims under theories of misrepresentation and violation of California securities law. If the Court choses to convert the Motion into a motion for summary judgment, it should deny it for Coinbase's refusal to engage in discovery or continue it with an order allowing discovery to proceed. If the Court does not deny the Motion on these grounds, there are ample genuine issues of material fact already in the record that warrant denial. Any way it's cut, this Motion should be denied.

---

[6] This paper, attached as Ex. 4, was published in August 2021, and described algorithmic stablecoins as "exposed to death spirals" (p. 11), and concluded, "[u]ltimately, protocols highly exposed to death spirals will see one" (p. 12).

Dated this 17th day of November, 2025.

*/s/ Kevin M. Osborne*

Julie C. Erickson (SBN 293111)
Elizabeth A. Kramer (SBN 293129)
Kevin M. Osborne (SBN261367)
**ERICKSON KRAMER OSBORNE LLP**
959 Natoma St.
San Francisco, CA 94103
Tel: (415) 635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 24, 2024 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.


<u>/s/ Kevin M. Osborne</u>
Kevin M. Osborne (SBN 261367)