RANDALL SCOTT LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

KRISTINA A. BUNTING (admitted *pro hac vice*)
kbunting@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

PAUL D. BRACHMAN (admitted *pro hac vice*)
pbrachman@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

Attorneys for Defendant
COINBASE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LARRY PEARL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE, INC.,<br><br>Defendant. | Case No. 3:22-cv-03561-MMC<br><br>**DEFENDANT COINBASE, INC.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE FOURTH AMENDED CLASS ACTION COMPLAINT**<br><br>Date: February 6, 2026<br>Time: 9:00 am<br>Dept.: Courtroom 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...............................................................................................................1

II.  ARGUMENT ....................................................................................................................2

    A.  Plaintiff Concedes There Was No Negligent Misrepresentation (Count I) ...............................................................................................................2

    B.  Plaintiff Fails To Plead Any Violation Of The UCL (Count II) .............................3

        1.  Plaintiff Fails To Plead Any Actionable Omission ...................................4

    C.  If UST Is A Security, Then The UCL Does Not Apply ...........................................7

    D.  Plaintiff's FAL Claim Fails (Count III) .................................................................7

    E.  Plaintiff Fails To Plead Any Violation Of The California Securities Laws (Counts IV, V, VI, and VII) ........................................................................7

        1.  Plaintiff's Cal. Corp. Code §§ 25110 & 25503 Claim Fails (Count IV) ...................................................................................................8

        2.  Plaintiff's Cal. Corp. Code §§ 25401 & 25501 Claim Fails (Count V) ....................................................................................................8

        3.  Plaintiff's Cal. Corp. Code §§ 25130 & 25503 Claim Fails (Count VI) ...................................................................................................9

        4.  Plaintiff Fails To Plead A Primary Violation Of Cal. Corp. Code §§ 25400(d) & 25500 Or A Secondary Liability Claim (Count VII) .............................................................................................11

        5.  Plaintiff Fails To Plausibly Allege Securities Transactions ....................12

    F.  Coinbase's Motion Is Not A Summary Judgment Motion ...................................15

III.  CONCLUSION................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahern* v. *Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................7

*Anderson* v. *Apple Inc.*,
   500 F. Supp. 3d 993 (N.D. Cal. 2020) ................................................................4

*Apollo Cap. Fund, LLC* v. *Roth Cap. Partners, LLC*,
   158 Cal. App. 4th 226 (2007) .......................................................................9, 10

*Bell Atlantic Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ........................................................................................13

*Bobo* v. *Optimum Nutrition, Inc.*,
   2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ...................................................5

*Boschma* v. *Home Loan Ctr., Inc.*,
   198 Cal. App. 4th 230 (2011) .............................................................................6

*Cadelli* v. *United Transportation Union*,
   132 F.3d 38 (9th Cir. 1997) ..............................................................................14

*California Amplifier, Inc.* v. *RLI Ins. Co.*,
   94 Cal. App. 4th 102 (2001) .............................................................................11

*Canatella* v. *Castro*,
   2015 WL 5818070 (N.D. Cal. Oct. 6, 2015) .......................................................8

*Cress* v. *Nexo Fin. LLC*,
   2023 WL 6609352 (N.D. Cal. Oct. 10, 2023) .....................................................7

*Czuchaj* v. *Conair Corp.*,
   2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) .....................................................6

*Donovan* v. *GMO-Z.com Tr. Co.*,
   779 F. Supp. 3d 372 (S.D.N.Y. 2025) .........................................................13, 14

*In re Fontem US, Inc. Consumer Class Action Litig.*,
   2016 WL 11503066 (C.D. Cal. Apr. 22, 2016) ...................................................6

*Hodsdon* v. *Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ..............................................................................3

*Irving Firemen's Relief & Ret. Fund* v. *Uber Techs., Inc.*,
   998 F.3d 397 (9th Cir. 2021) .......................................................................11, 12

*Jackson* v. *Fischer*,
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) ........................................................9

*SEC* v. *GEL Direct Tr.*,
   2023 WL 3166421 (S.D.N.Y. Apr. 28, 2023)...........................................10

*Kamen* v. *Lindly*,
   94 Cal. App. 4th 197 (2001) ...................................................................12

*Louisiana Pac. Corp.* v. *Money Mkt. 1 Institutional Inv. Dealer*,
   2011 WL 1152568 (N.D. Cal. Mar. 28, 2011)...........................................11

*Marine Bank* v. *Weaver*,
   455 U.S. 551 (1982)....................................................................................13

*Meyer* v. *Cnty. of San Diego*,
   2025 WL 2042360 (S.D. Cal. July 21, 2025) ...........................................13

*MMCA Grp., Ltd.* v. *Hewlett-Packard Co.*,
   2008 WL 2238223 (N.D. Cal. May 29, 2008)...........................................15

*Moore* v. *Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) .........................................................................6

*Moss* v. *Kroner*,
   197 Cal. App. 4th 860 (2011) .....................................................................9

*Pac. Select Fund* v. *Bank of New York Mellon*,
   2010 WL 11468787 (C.D. Cal. Sept. 20, 2010) .........................................3

*Richards* v. *Centripetal Networks, Inc.*,
   2024 WL 2064067 (N.D. Cal. May 8, 2024)............................................15

*SEC* v. *Ripple Labs, Inc.*,
   682 F. Supp. 3d 308 (S.D.N.Y. 2023)......................................................15

*Schaffer Fam. Invs., LLC* v. *Sonnier*,
   120 F. Supp. 3d 1028 (C.D. Cal. 2015) ...................................................12

*Selane Prods., Inc.* v. *Cont'l Cas. Co.*,
   706 F. Supp. 3d 997 (C.D. Cal. 2020) .....................................................15

*Shaper* v. *Zadek*,
   557 F. Supp. 3d 969 (N.D. Cal. 2021) .....................................................10

*Shull* v. *Ocwen Loan Servicing*,
   2014 WL 1404877 (S.D. Cal. Apr. 10, 2014)............................................8

*SEC* v. *Terraform Labs Pte. Ltd.*,
   684 F. Supp. 3d 170 (S.D.N.Y. 2023)......................................................13

*SEC* v. *Terraform Labs Pte. Ltd.*,
   708 F. Supp. 3d 450 (S.D.N.Y. 2023).................................................13, 14

*Viterbi* v. *Wasserman*,
    191 Cal. App. 4th 927 (2011) ........................................................................11, 12

*SEC* v. *W.J. Howey Co.*,
    328 U.S. 293 (1946)...............................................................................................13

*Wolph* v. *Acer Am. Corp.*,
    2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ......................................................6

**Statutes**

Cal. Corp. Code § 25004.....................................................................................................10

Cal. Corp. Code § 25110.......................................................................................................8

Cal. Corp. Code § 25130.......................................................................................................9

Cal. Corp. Code § 25400(d)...........................................................................................11, 12

Cal. Corp. Code § 25401..................................................................................................8, 12

Cal. Corp. Code § 25500..............................................................................................11, 12

Cal. Corp. Code § 25501.......................................................................................................8

Cal. Corp. Code § 25503....................................................................................................8, 9

FTC Act ................................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 9(b) ..............................................................................................................3

## I.    INTRODUCTION

Plaintiff's Opposition confirms that he cannot plead a viable claim and that any further attempts would be futile.  In the Court's prior order, Plaintiff was afforded limited leave to replead.  In its Motion, Coinbase established that the FAC's[1] claims were repackaged claims that this Court had already rejected, unsupported by pleaded facts, or contradicted by publicly available materials.  Plaintiff's Opposition fails to grapple with these fundamental defects.  Instead, Plaintiff doubles down on improperly repleaded claims, overstates or mischaracterizes the FAC's allegations, and ignores his failure to allege requisite facts to support his claims.

Coinbase demonstrated that Plaintiff's negligent misrepresentation, Unfair Competition Law, and False Advertising Law claims (Counts I to III) fail because (1) Plaintiff cannot plead that a reasonable purchaser would have been misled by the statement that stablecoins are "free from the volatility of non-pegged cryptocurrencies" considering the context, and (2) Plaintiff failed to identify any representations by Coinbase that contradicted any purportedly concealed facts or show that Coinbase had exclusive knowledge of them; indeed, the facts that Plaintiff says were omitted were publicly disclosed and readily accessible.  In response, Plaintiff reiterates his implausible interpretation of Coinbase's representations, ignores relevant context, identifies different facts that Coinbase should have disclosed, or concedes information was publicly available but suggests (without support) that it was too hard to find.  None of these arguments are availing.

The California securities law claims (Counts IV to VII) fare no better.  Recognizing that the FAC fails to plead any additional facts supporting privity between Plaintiff and Coinbase, Plaintiff pivots to claiming that Coinbase is secondarily liable.  But as Coinbase explained, the FAC fails to plead the requisite elements of each claim—including the elements of any primary violation by a third party, that Coinbase materially aided in a nonissuer unregistered securities transaction, or that it made any knowingly false statements with deliberate intent to manipulate a security's price.  Plaintiff cannot remedy these fundamental deficiencies.

The FAC is just as, if not more, deficient than Plaintiff's four prior complaints.  The Court

---

[1] Capitalized terms and abbreviations have the same meaning as in Coinbase's Motion to Dismiss ("MTD" or "Motion"), Dkt. 135, and all references to "Ex." refer to exhibits to the Declaration of Kristina A. Bunting, Dkt. 132-1, unless otherwise noted.

1    should put an end to Plaintiff's search for a viable claim and dismiss the FAC with prejudice.

2    **II.    ARGUMENT**

3        **A.    Plaintiff Concedes There Was No Negligent Misrepresentation (Count I)**

4        The Court granted Plaintiff limited leave to replead his negligent misrepresentation claim

5    as to Coinbase's "legitimacy" or "reliability" representations.  MTD 6.  But the FAC fails to

6    challenge any such representations.  *See* MTD 8-10.  The Opposition concedes as much.  *See* Dkt.

7    138 ("Opp.") at 11 n.3.  While Plaintiff claims that Coinbase omitted information regarding its

8    pre-listing review of UST, *infra* § II.B, Plaintiff does not contest that "negligent misrepresentation

9    by omission is not recognized in California," MTD 8 n.9, and recognizes that the Court did not

10   grant leave to plead an omissions theory.  Opp. 10.  Plaintiff's claim should be dismissed.[2]

11       Recognizing that he has no viable claim under any legitimacy or reliability theory, Plaintiff

12   asks the Court to reconsider its prior rejection of his claims that Coinbase misrepresented UST's

13   pegging or its volatility relative to non-pegged cryptocurrencies based on the "clarification" that

14   he "never read or relied on" the whitepaper.  Opp. 11.  But the Court did not hold that Plaintiff's

15   review of the whitepaper alone defeated these claims.  Aug. 8 Order at 9.  Rather, the Court twice

16   dismissed these claims because Plaintiff's interpretation of Coinbase's statements regarding UST's

17   peg and volatility were "contradicted by sources to which [Plaintiff] cite[d]."  Aug. 8 Order at 5-

18   6; Dkt. 74 at 5-6; *see also* MTD 8-9.  Plaintiff does not grapple with these rulings and ignores that

19   the statements' plain language and context defeat his claim.  *See* MTD 8-9.  In any event, Plaintiff's

20   incredible disavowal of the whitepaper deserves no weight.  Plaintiff never challenged the Court's

21   finding that he read and relied upon the whitepaper, which was based on Plaintiff's repeated

22   representations to the Court.[3]  *See* MTD 15-16.

23

24   [2] Plaintiff's Opposition is also littered with alleged facts untethered to any particular claim and
     unsupported by the FAC.  Opp. 3.  For example, Plaintiff argues ***Coinbase found*** that UST was

25   "inextricably linked" to Luna's stability and that Luna was "high risk," when the FAC alleges no
     such thing.  *Compare* Opp. 3 *with* ¶ 56.  The Court should disregard these misleading assertions.

26   [3] Plaintiff's claim to the contrary (Opp. 4 n.1) is wrong.  Since his first complaint, Plaintiff alleged
     that Coinbase provided information including a link to "the asset's white paper," followed by the

27   claim that "users, including Plaintiffs and Class members, ***reasonably rely on this
     information***[.]"  Dkts. 1, 28 ¶¶ 35-36 (emphasis added).  In the SAC, when describing "Coinbase's

28   representations" that "misled" him, Plaintiff pointed to the "Coinbase whitepaper."  Dkt. 49 ¶¶ 53,
     58.  The Opposition only quotes ¶ 141 of the TAC, omitting the prior allegations.

1    Plaintiff's negligent misrepresentation claim fails for two independent reasons:  he does

2    not adequately allege justifiable reliance or loss causation.  Any reliance was not justifiable,

3    including because (1) his interpretation of the alleged misrepresentations is implausible, (2) his

4    five complaints have ***never alleged*** that he purchased UST at parity with USD, and (3) Coinbase

5    warned of the risks to which he claims he was blind.  MTD 10-11.  Ignoring these arguments,

6    Plaintiff asserts, for the first time, that he "bought UST for $1."  Opp. 19.  This is not alleged in

7    the FAC.  Moreover, Plaintiff ***still*** does not dispute that he transacted in UST on May 9, May 21,

8    and May 22—on or after UST's "collapse," when the value of UST would have been below $1.00.

9    Opp. 5 n.2; RJN 12.  The Court should set aside this unpleaded incredible claim.

10    As for causation, the FAC showed that it was the unstaking of UST that caused Plaintiff's

11    losses, not Coinbase's conduct.  MTD 11; ¶ 8.[4]  Plaintiff's only response is that it suffices that he

12    would not have purchased UST but for the alleged misrepresentations or omissions.  Opp. 11.  But

13    he does not explain how this satisfies Rule 9(b)'s standard to plead with particularity that he

14    actually relied upon Coinbase's statements and how those statements proximately caused his loss,

15    particularly in light of his own pleading that it was UST's unstaking (not the link to LUNA) that

16    led to its depegging.  *See, e.g.*, *Pac. Select Fund* v. *Bank of New York Mellon*, 2010 WL 11468787,

17    at *4 (C.D. Cal. Sept. 20, 2010) ("losses were not the result of relying on Defendant's alleged

18    misrepresentations").  He has not pleaded proximate cause or reliance because he fails to identify

19    ***when*** he purchased UST or at what price, and how the alleged misrepresentation led to his losses.

20    **B.    Plaintiff Fails To Plead Any Violation Of The UCL (Count II)**

21    Plaintiff does not meaningfully dispute that his UCL claim—whether under the unlawful,

22    unfair, or fraudulent prongs—is derivative of his misrepresentation claims.  Opp. 9-15.[5]  Plaintiff

23    fails to allege any affirmative misrepresentation.  *See supra* § II.A.  He also fails to allege any

24    actionable omission because he does not identify any Coinbase representations that contradicted

25

26    [4] References to ¶ refer to paragraphs in the FAC, Dkt. 127, unless otherwise noted.

27    [5] While Plaintiff suggests that the Court can find that Coinbase violated the UCL irrespective of whether it had a duty to disclose the allegedly omitted facts, Opp. 15 n.4, Plaintiff does not allege any specific conduct other than misrepresentations or omissions that found a viable claim under

28    the UCL, which is dispositive.  *Hodsdon* v. *Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) is inapposite because, unlike here, the plaintiff there had alleged additional misconduct.

the allegedly concealed facts, and he does not show that Coinbase had exclusive knowledge of them.  Plaintiff does not contest that these facts were publicly disclosed, instead suggesting that they were not readily accessible, which is not the relevant standard.  Because Plaintiff fails to allege any misrepresentation or omission, there is no independent basis for his UCL claim.

### 1.  Plaintiff Fails To Plead Any Actionable Omission

Plaintiff accepts that omissions are actionable only if the omitted facts are contrary to a Coinbase representation or were within Coinbase's exclusive knowledge.[6]  Opp. 11.  Although the FAC identified six alleged omissions, MTD 12-13, Plaintiff abandons three, leaving only:  (1) that UST's value depended on LUNA's stability or volatility, (2) that LUNA caused three prior depegs, and (3) that Terraform Labs was under SEC investigation.  Opp. 4-7.  The Opposition confirms that Plaintiff has no viable UCL or other consumer protection claim based on these omissions.

*UST Value*:  The crux of Plaintiff's claim is that Coinbase (1) made a partial representation concerning UST's relationship with LUNA by representing on the "What is a Stablecoin?" webpage that stablecoins generally are "free from the volatility of non-pegged cryptocurrencies," or (2) had exclusive knowledge that UST's price depended on the stability of LUNA.  Opp. 11-13.  Plaintiff's Opposition does not address the fundamental defects identified in Coinbase's Motion.

*First*, Plaintiff does not dispute that a partial representation is actionable only where it "plausibly contradicts the alleged omissions."  *Anderson* v. *Apple Inc.*, 500 F. Supp. 3d 993, 1014 (N.D. Cal. 2020).  Thus, for Coinbase's statement that stablecoins generally are "free from the volatility of non-pegged cryptocurrencies" to be an actionable omission, a reasonable consumer must have interpreted this statement to mean that UST's price did not depend on the stability of LUNA.[7]  But as Coinbase's Motion demonstrated, that interpretation is implausible based on the statement's plain language and context—which Plaintiff does not dispute.  MTD at 8-10.  Although Plaintiff conclusorily says that this representation was a "diametrically opposite representation,"

---

[6] Plaintiff also claims that a disclosure duty "can also arise under a specific statute" but fails to explain how the FTC Act or New York law created such a duty.  Opp. 10, 12-13.

[7] The Opposition ignores the statement that UST "***attempts*** to maintain" $1.00.  ¶ 86 (emphasis added).  Coinbase's motion explained that this alleged misrepresentation contradicts Plaintiff's core theory.  MTD at 14.  Plaintiff therefore now seeks to disavow that statement—which cautioned that UST was not guaranteed to maintain its peg—by claiming that it is "immaterial."  Opp. 13.

1    Opp. 11, he does not explain **how** it was contradictory.  He concedes that there was nothing on this

2    page about UST, and there was no specific representation regarding UST's relationship with

3    LUNA.  He also does not dispute that the page on which the statement appeared generally

4    compared stablecoins with digital assets that were not pegged to any external reference.  Ex. 1.

5    Similarly, he does not dispute that the same page said that volatility was reduced compared to the

6    volatility of other digital assets.  Ex. 1 at 3-4 ("Stablecoins are free from the volatility of non-

7    pegged cryptocurrencies"; "Minimize volatility. The value of cryptocurrencies like Bitcoin and

8    Ether fluctuates a lot—sometimes by the minute.").  "A plaintiff cannot pursue a claim based on a

9    statement that can only be misleading when the information surrounding it is ignored." *Bobo* v.

10   *Optimum Nutrition, Inc.*, 2015 WL 13102417, at *4 (S.D. Cal. Sept. 11, 2015).  Any UCL or

11   consumer protection claim based on this partial representation must be dismissed on this basis.

12        *Second*, any claim that Coinbase had exclusive knowledge of the alleged fact that UST's

13   value depended on LUNA's stability is belied by the public disclosures of that relationship.  For

14   example, the FAC pleads that the TerraUST Price webpage explained that "in order to mint 1

15   TerraUSD, US$1.00 worth of Terra's UST reserve asset (LUNA) must be burned."  MTD 9-10

16   (quoting ¶ 45).   And the linked whitepaper "explicitly described 'the UST algorithmic

17   mechanism.'"  Aug. 8 Order at 9.  Plaintiff attempts to minimize the whitepaper by cherry-picking

18   its language.  Opp. 4-5.  But he ignores that the whitepaper states explicitly that "stability is

19   achieved and maintained, through the calibration of miners' demand and the use of the native

20   mining Luna token," that "[t]he system uses Luna to make the price for Terra," and that "[t]he

21   protocol adjusts the supply of Terra in response to changes in demand to keep its price stable.  This

22   is achieved using Luna."  *See* MTD 10; Ex. 6 at 1-2, 5, 13-14.  Plaintiff now claims that he did not

23   review the whitepaper—contrary to this Court's previous finding and his prior pleadings.  *See*

24   *supra* 2.  Whether Plaintiff reviewed the whitepaper is irrelevant to the question of whether

25   Coinbase had exclusive knowledge of the apparently concealed fact—that UST's value depended

26   on the stability of LUNA.  Under well-established Ninth Circuit law set out in Coinbase's

27   Motion—and which Plaintiff does not challenge—Plaintiff must demonstrate that Coinbase "knew

28   of [a material fact] while plaintiffs did not, and, given the nature of the [material fact], it was

1    difficult to discover." MTD 14 (quoting Aug. 8 Order at 10); *see, e.g.*, *Wolph* v. *Acer Am. Corp.*,

2    2009 WL 2969467, at *4 (N.D. Cal. Sept. 14, 2009) ("Plaintiffs have not alleged facts that show

3    [defendant] had exclusive knowledge of the material facts and that Plaintiffs could not have

4    reasonably discovered such facts."). Plaintiff simply ignores this test and instead quotes *Boschma*

5    v. *Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 249 (2011), an inapposite fraud case that did ***not***

6    address exclusive knowledge. Whether or not Plaintiff read the whitepaper, it was readily available

7    to him,[8] and he has "not alleged facts that show . . . [that he] could not have reasonably discovered

8    [the allegedly omitted] facts." *Acer Am. Corp.*, 2009 WL 2969467, at *4.

9        ***Prior "Depegging Events."*** Plaintiff alleged only that Coinbase had "exclusive or superior

10   knowledge of prior depegging events[.]" ¶¶ 134, 154, 172. In response to Coinbase's showing

11   that these events were public, MTD 16, Plaintiff now pivots to claiming that it was "unknowable

12   to investors" that LUNA ***caused*** the prior depegging events. Opp. 6. But this is not what Plaintiff

13   pleaded. The FAC does not allege any facts suggesting that investors did not know or could not

14   discover LUNA's alleged role in the depegs.[9] This is fatal. *See In re Fontem US, Inc. Consumer*

15   *Class Action Litig.*, 2016 WL 11503066, at *11 (C.D. Cal. Apr. 22, 2016) (rejecting "implausible

16   conclusion" that information was not public, absent "specific factual allegation").

17       ***SEC Investigation.*** Plaintiff alleged that Coinbase omitted "the SEC investigation into Do

18   Kwon and Terraform Labs's Mirror Protocol." ¶¶ 134, 154, 172; *see also* ¶ 52. Coinbase

19   explained that both the SEC and the media publicized this investigation before Plaintiff purchased

20   UST. MTD 16-17. Plaintiff does not dispute that these disclosures happened and defeat his claim

21   of exclusive knowledge. Opp. 6. Instead, he misleadingly suggests that the FAC's allegations

22   concerned ***a separate, distinct*** investigation into Terraform that led to the filing of a February 2023

23   enforcement action. Opp. 6. Not so. The FAC plainly alleged that Coinbase failed to disclose the

---

[8] Plaintiff's claim that the whitepaper was "opaque" and "would not be found or understood by a reasonable investor," Opp. 12, both misstates the whitepaper and is inapposite to the exclusive knowledge determination. It says nothing about whether ***Coinbase*** "knew a lot more about the [link between UST and LUNA] or had information unavailable to the public." *Czuchaj* v. *Conair Corp.*, 2014 WL 1664235, at *5 (S.D. Cal. Apr. 18, 2014). *See also Moore* v. *Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (reasonable consumers consider "other available information" when interpreting statements); Aug. 8 Order 5-6 (explaining a reasonable consumer's understanding of a stablecoin).

[9] Plaintiff pleads that LUNA was traded—meaning that its price was public. *See, e.g.*, ¶¶ 60, 82.

1   Mirror Protocol investigation.  The Court should not entertain this about-face.  In any event, the

2   FAC fails to allege any facts about what non-public information Coinbase knew about the other

3   investigation.  *Ahern* v. *Apple Inc.*, 411 F. Supp. 3d 541, 575 (N.D. Cal. 2019) ("[P]laintiffs must

4   proffer specific allegations regarding the content of information, how defendants had access to this

5   information, and how plaintiffs did not have access to or could not learn this information.").

### C.    If UST Is A Security, Then The UCL Does Not Apply

7       Coinbase demonstrated that, if UST is a security as Plaintiff claims, then Plaintiff cannot

8   maintain his UCL claim.  MTD 17.  Plaintiff claims this is "applied narrowly," but does not

9   contend that ***this case*** falls outside the "narrow" holding.  Opp. 15.  Nor could he—*Bowen* remains

10  binding and "[n]o court . . . has allowed Section 17200 claims to proceed where . . . the predicate

11  acts are securities transactions."  *Cress* v. *Nexo Fin. LLC*, 2023 WL 6609352, at *13 (N.D. Cal.

12  Oct. 10, 2023) (citation omitted).  If the Court finds that Plaintiff's UST purchases were securities

13  transactions (again, which Coinbase disputes) then the Court should dismiss his UCL claim.[10]

### D.    Plaintiff's FAL Claim Fails (Count III)

15      Plaintiff does not separately address his FAL claim or deny that it fails for the same reasons

16  as his negligent misrepresentation and UCL claims.  MTD 17; *see supra* § II.B.

### E.    Plaintiff Fails To Plead Any Violation Of The California Securities Laws (Counts IV, V, VI, and VII)

19      The Opposition confirms that Counts IV to VI should be dismissed because Plaintiff

20  concedes that the FAC adds no new allegations that he was in strict privity with Coinbase that

21  would cause the Court to deviate from its prior rulings.  They also fail for the independent reasons

22  that Plaintiff fails to allege any "issuer transaction" or any misleading statements or omissions.

23  Plaintiff pivots to his theory that Coinbase materially aided in the sale of a security in a nonissuer

24  transaction without qualification, but Plaintiff does not plead any primary violation, any material

25  aid, or that Coinbase operated as a broker-dealer.  And Count VII fails to allege a claim for false

26  statements designed to manipulate the securities markets.  MTD 21-23.  Finally, Counts IV to VII

---

[10] Contrary to Plaintiff's claim, Opp. 15, the court in *Cress* held that "to the extent that [the] UCL claims are based on [defendant's] deceptive conduct in the sale of [securities], these claims are barred under *Bowen*."  2023 WL 6609352, at *13-14.

1    all also fail because Plaintiff fails to plausibly allege that he engaged in securities transactions.

2        **1.    Plaintiff's Cal. Corp. Code §§ 25110 & 25503 Claim Fails (Count IV)**

3        Count IV alleges that Coinbase sold UST in an issuer transaction without qualification.

4    This claim should be dismissed outright because the Court did not grant leave to amend it.  Aug.

5    8 Order at 14.  In any event, as this Court's prior rulings and Coinbase's Motion explained, Plaintiff

6    must allege that he was in ***strict privity of sale with Coinbase***—that is, that title passed from

7    Coinbase to him.  MTD 17-18; Aug. 8 Order at 12-13; Dkt. 74 at 13-14.  Plaintiff does not dispute

8    that the FAC does not include any new allegations showing that Coinbase passed title to Plaintiff.

9    MTD 18.  Instead, he repeats the very same allegations that fell short in the prior complaint.  Opp.

10    8; *compare* ¶¶ 71, 74, 75, 76 *with* TAC ¶¶ 48, 51, 52, 53.  As this Court has previously held, §§

11    25110 and 25503 "only appl[y] to an entity that either offers to sell or sells a security," and Plaintiff

12    continues to allege only that Coinbase acted as an "intermediary" and has not alleged that

13    "defendants themselves sold any UST to plaintiff."  Dkt. 74 at 13-14; Aug. 8 Order at 12 (Plaintiff

14    "has not added any allegations that are inconsistent with Coinbase's identity as an intermediary

15    rather than a seller.").  Nor does Plaintiff rebut that he did not adequately allege an "issuer

16    transaction."  MTD 18.  Count IV must be dismissed.[11]

17        **2.    Plaintiff's Cal. Corp. Code §§ 25401 & 25501 Claim Fails (Count V)**

18        Coinbase established that Count V (misstatements in the sale of a security) should be

19    dismissed because Plaintiff (1) improperly attempted to replead this claim; (2) failed to plausibly

20    allege privity; and (3) failed to plead with particularity that Coinbase made an "untrue statement

21    of a material fact or omit[ted] to state a material fact."  Cal. Corp. Code § 25401; MTD 19-20.

22    Plaintiff has no answer.  *Supra* §§ II.A-B, E.1.  Plaintiff does not defend Count V, warranting

23    dismissal.  *Shull* v. *Ocwen Loan Servicing*, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014).[12]

24

25    ---

[11] The Opposition vaguely suggests that Coinbase is liable under § 25504 or § 25504.1.  Opp. 16-
26    17.  This should be disregarded as the FAC does not allege a secondary liability theory in Counts
IV or V.  *See* ¶¶ 196-206; *Canatella* v. *Castro*, 2015 WL 5818070, at *5 (N.D. Cal. Oct. 6, 2015).
27    Coinbase interprets only Counts VI and VII to plead, in the alternative, secondary liability theories.
In any event, any such theory would fail for the same reasons as the §§ 25130/25503 claim:  no
28    primary violation is alleged.  *See infra* § II.E.3.
[12] No secondary liability theory is alleged in Count V.  *See supra* n.11.

1          **3.    Plaintiff's Cal. Corp. Code §§ 25130 & 25503 Claim Fails (Count VI)**

2          Plaintiff does not dispute that a primary claim under §§ 25130/25503—regarding a security

3    sale in a nonissuer transaction without qualification—requires privity, meaning Plaintiff must

4    allege that he purchased the UST *from Coinbase*.  MTD 20.  Plaintiff does not establish privity,

5    and he has thus failed to state a claim under §§ 25130/25503.  *See* MTD 20; *supra* § II.E.1.

6          Acknowledging this fact, Plaintiff pivots to a theory that Coinbase "is liable as a secondary

7    actor" under § 25504 or § 25504.1, Opp. 18, but that claim is deficient in multiple respects.[13]  *First*,

8    Plaintiff's failure to allege the circumstances of any primary violation of §§ 25130/25503 dooms

9    any claim for secondary liability.  Plaintiff says that "Coinbase materially assisted in alleged

10   violations," but he does not specify what they are or who committed them.  Opp. 18.  He therefore

11   does not allege that Coinbase "materially aided, not simply in the transaction, but in the violation."

12   *Apollo Cap. Fund, LLC* v. *Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 256 (2007).

13          *Second*, Plaintiff fails to sufficiently allege that he was in strict privity with anyone who

14   violated §§ 25130/25503.  Even if privity were not required for a secondary violation, as Plaintiff

15   contends, Opp. 16, *Moss* v. *Kroner* did not permit the secondary liability free-for-all that Plaintiff

16   advocates:  it made clear that even under § 25504 and § 25504.1, primary liability must still be

17   "stated or established with the privity required."  197 Cal. App. 4th 860, 875 (2011); *see also*

18   *Jackson* v. *Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("in the absence of a viable claim

19   of primary liability, plaintiff cannot state a claim . . . for control person liability under § 25504").

20   Despite Plaintiff's claims, Opp. 19-20, it makes perfect sense to require a plaintiff to allege a

21   primary violation—including showing privity with a primary violator—before holding others

22   secondarily liable for aiding *in the violation*.  For example, under Plaintiff's approach, courts

23   cannot assess whether secondary liability can attach because § 25504 does not allow liability for a

24   secondary actor where the "other person who is so liable had no knowledge of or reasonable

25   grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

26          *Third*, Plaintiff fails to properly plead that Coinbase's actions "materially aided" any

27

28   ---
[13] The Opposition treats §§ 25504 and 25504.1 interchangeably.  Opp. 18.  But Count VI only
refers to liability under § 25504, not  § 25504.1.  ¶ 219.  Plaintiff cannot now maintain a  § 25504.1
claim, which in any event would fail for the same reasons as his § 25504 claim.

1   primary violation.  Plaintiff argues that "Coinbase materially assisted in alleged violations by

2   withholding damning information after vetting UST (FAC ¶¶ 11, 44-46); promoting and soliciting

3   the sale of UST on X, Medium, Reddit, and its own website (*id.*, ¶¶ 77, 201, 210); and providing

4   (for a commission) the platform and all the tools necessary for investors to buy UST (*id.*, ¶¶ 78,

5   80, 209)."  Opp. 18.  But these allegations do not identify specific violations of §§ 25130/25503

6   or explain how Coinbase materially aided in unspecified violations.[14]  *See* MTD 21.  Tellingly,

7   Plaintiff does not point to any case establishing liability for materially aiding a nonissuer securities

8   transaction under § 25504 or § 25504.1 where, as here, a plaintiff has not pleaded ***any*** facts

9   showing that the ***specific underlying transactions*** at issue were in fact securities transactions.

10      *Finally*, Plaintiff alleges that Coinbase can be liable under § 25504 because it operates as

11  a "broker-dealer."  Opp. 16-17.  Although Plaintiff claims he pleads "numerous facts" supporting

12  this element, Opp. 17, the paragraphs of the FAC to which he points—¶¶ 224-28—say nothing

13  about whether Coinbase "engaged in the business of effecting transactions in securities in this

14  state."  Cal. Corp. Code § 25004.  These allegations do not address multiple factors courts consider

15  under analogous federal law, including whether Coinbase "actively solicits investors," "processes

16  documents related to the sale of securities," "participates in the order-taking or order-routing

17  process," "sells, or previously sold, securities of other issuers," "is involved in negotiations

18  between the issuer and the investor," or "makes valuations as to the merits of the investment or

19  gives advice."  *SEC* v. *GEL Direct Tr.*, 2023 WL 3166421, at *2 (S.D.N.Y. Apr. 28, 2023).  Indeed,

20  the one case Plaintiff cites—*Shaper* v. *Zadek*—dismissed the broker-dealer claim in part because,

21  as here, plaintiff "ha[d] not explained how [d]efendants were in the business of buying or selling

22  securities."  557 F. Supp. 3d 969, 985 (N.D. Cal. 2021).[15]

23  _____

24  [14] Plaintiff seeks to circumvent California law by suggesting that federal law establishes liability
    as a "direct seller" without requiring privity.  Opp. 17-18.  Not so.  First, "California's statute,
25  while modeled on federal law, is ***not***, on the matter of statutory seller status, 'substantially
    identical' to federal law."  *Apollo*, 158 Cal. App. 4th at 253 (emphasis added).  Instead, California
26  law requires privity and only attaches liability to the "actual seller of the securities."  *Id.* at 254.
    Second, contrary to Plaintiff's suggestion, *Underwood* did not hold that *Pinter*'s solicitation prong
27  applied to the state law claims.  2025 WL 438547, at *7-10 (S.D.N.Y. Feb. 7, 2025).
    [15] At a minimum, Plaintiff's claim for rescission is foreclosed because to obtain that remedy,
28  even in connection with a secondary liability claim, there must be privity between Coinbase and
    Plaintiff.  *See Viterbi* v. *Wasserman*, 191 Cal. App. 4th 927, 929 (2011) (requiring privity
    because a non-seller cannot return money to purchaser).

1

2

### 4.    Plaintiff Fails To Plead A Primary Violation Of Cal. Corp. Code §§ 25400(d) & 25500 Or A Secondary Liability Claim (Count VII)

3     As established by Coinbase's Motion, Plaintiff failed to allege a claim for false statements

4     designed to manipulate the securities markets in violation of §§ 25400(d) and 25500 because

5     Plaintiff (1) does not plausibly allege that Coinbase made any "false or misleading" statement or

6     "omitted to state any material fact," Cal. Corp. Code § 25400(d), (2) fails to adequately plead

7     scienter, (3) fails to adequately plead loss causation, and (4) fails to allege Coinbase operated as a

8     broker-dealer or sold or offered to sell UST to Plaintiff.  MTD 21-23.

9     *First*, and most significantly, as Coinbase explained, MTD 22; *supra* § II.A-B, Plaintiff has

10    not adequately alleged that Coinbase made a "false or misleading" statement "with respect to any

11    material fact, or . . . omitted to state any material fact necessary in order to make the statements . . .

12    not misleading." Cal. Corp. Code § 25400(d).  This is fatal to Plaintiff's claim.

13    *Second*, liability under § 25500 is limited "to situations where there is an intent to defraud

14    through a knowingly false statement." *California Amplifier, Inc.* v. *RLI Ins. Co.*, 94 Cal. App. 4th

15    102, 112 (2001).  Plaintiff asserts that Coinbase's intent "is shown by Plaintiff's allegations that

16    Coinbase promoted UST, generated revenue from transaction fees, and was a financial backer of

17    Terraform Labs." Opp. 19.  But profit motive is not enough to establish "the high level of scienter

18    required" here. *Calif. Amplifier*, 94 Cal. App. 4th at 112; *cf. Louisiana Pac. Corp.* v. *Money Mkt.*

19    *1 Institutional Inv. Dealer*, 2011 WL 1152568, at *8-9 (N.D. Cal. Mar. 28, 2011) ("The desire to

20    earn commissions or fees is a common motive to all for profit enterprises, and that motive—

21    without more—is insufficient to give rise to a strong inference of scienter.").

22    *Third*, Plaintiff has no answer to Coinbase's loss causation arguments with respect to this

23    claim.  *See* MTD 22-23.  As the Ninth Circuit has held, "[s]ection 25500 requires a plaintiff to

24    allege that it purchased or sold a security 'at a price which was affected' by the violation." *Irving*

25    *Firemen's Relief & Ret. Fund* v. *Uber Techs., Inc.*, 998 F.3d 397, 405 (9th Cir. 2021) (quoting Cal.

26    Corp. Code § 25500).  At most, Plaintiff alleges that "[b]ut for Coinbase's misrepresentations and

27    omissions above, Plaintiff would not have purchased UST." ¶ 96. But the FAC does not allege that

28    any action by Coinbase **affected UST's price**, as required under the plain text of § 25500.  *See*

*Irving*, 998 F.3d at 405.  Nor does the FAC identify a "revelation of the truth" ***by Coinbase*** that caused UST "to decline and the inflation attributable to the misstatements to dissipate." *Id.* at 407.

*Fourth*, § 25400(d) only applies to "a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security."  And "[S]ection 25500 applies only to a defendant who is either a person selling or offering to sell or buying or offering to buy a security." *Kamen* v. *Lindly*, 94 Cal. App. 4th 197, 206 (2001).  Plaintiff has not adequately alleged that ***Coinbase*** sold or offered to sell UST.  The Court has held "[t]here is no allegation that defendants themselves sold any UST to plaintiff."  Dkt. 74 at 13-14; *see supra* § II.E.1.   No secondary liability is permitted. *Id.* at 204.  And as discussed above, Plaintiff also fails to allege that Coinbase is a "broker-dealer." *Supra* § II.E.3.

*Finally*, to the extent Plaintiff asserts a claim under § 25504.1 for a violation of § 25401 in Count VII, such an argument fails for the reasons stated in Coinbase's Motion.  MTD 23.[16] Plaintiff fails to allege facts supporting a claim under § 25504.1 for a violation of § 25401 in this count.  Opp. 18-19.  Plaintiff has no answer to the FAC's failure to allege that ***anyone*** made a misrepresentation or omission in violation of § 25401 or that Coinbase had the requisite intent to deceive or defraud.  MTD 23.[17]  At a minimum, Plaintiff's claim for rescission as a remedy is foreclosed for the same reasons as above. *See Viterbi*, 191 Cal. App. 4th at 929; *supra* § II.E.3.

### 5.    Plaintiff Fails To Plausibly Allege Securities Transactions

As an independent basis for dismissal of his California securities claims, Plaintiff fails to allege that the specific transactions at issue were securities transactions.  MTD 24-25.  Although Plaintiff asserts that "Coinbase's only argument" is that the FAC fails the common enterprise element of *Howey*, Opp. 16, that mischaracterizes Coinbase's argument.  MTD 24-25.[18]  For example, the FAC fails to allege facts showing that the specific UST transactions at issue in this case satisfied ***any element*** of the *Howey* test.  Instead, his claims are premised on the assumption

---

[16] Count VII only refers to liability under § 25504.1, not § 25504.  ¶ 223.

[17] Plaintiff's cited case, *Schaffer Fam. Invs., LLC* v. *Sonnier*, 120 F. Supp. 3d 1028 (C.D. Cal. 2015), is no help to him.  Opp. 17.  It involved the actions of a "double-agent middleman at the center of [a] scheme" who "orchestrated deals" and directly sent emails to Plaintiffs. *Id.* at 1034 (finding no liability under § 25504.1).  That is much more direct conduct than at issue here.

[18] Plaintiff abandoned any reliance on the "risk capital test" by not arguing it.  Opp. 1, 16.

1    that every UST transaction is a securities transaction, which is fatal.

2        Specifically, Plaintiff does not dispute that "[e]ach **transaction** must be analyzed and

3    evaluated on the basis of the content of the instruments in question" to determine if a transaction

4    is a securities transaction.  *Marine Bank* v. *Weaver*, 455 U.S. 551, 560 n.11 (1982) (emphasis

5    added); MTD 24.  Plaintiff therefore cannot rely solely on the holding of another court—such as

6    *SEC* v. *Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450 (S.D.N.Y. 2023)—to allege that the UST

7    transactions **in this case** and **in the context of Plaintiff's transactions** were securities transactions.

8    This is particularly so where "Plaintiffs are not the SEC, and they are not entitled to enforce the

9    securities laws as applied to investment contracts into which they did not enter."  *Donovan* v.

10   *GMO-Z.com Tr. Co.*, 779 F. Supp. 3d 372, 391 (S.D.N.Y. 2025).

11       The FAC's allegations are woefully inadequate when compared with the allegations that

12   made it past the pleading stage in *SEC* v. *Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 193-98

13   (S.D.N.Y. 2023).  Here, Plaintiff's allegations as to the common enterprise and expectation of

14   profits elements under *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946) amount to no more than a

15   "formulaic recitation of" the *Howey* test, which cannot suffice.  *See Bell Atlantic Corp.* v.

16   *Twombly*, 550 U.S. 544, 555 (2007).  Indeed, Plaintiff's Opposition asserts that "all UST investors

17   expected profit from their investment" through the Anchor Protocol and that "when investors

18   staked UST, Terraform Labs expanded the Anchor Protocol and, in turn, grew its equity."  Opp.

19   16 (citing ¶¶ 28, 33, 34).  Similarly, the Opposition asserts that "[w]hile investors profited from

20   staking, Terraform Labs profited from the expansion of the Anchor Protocol."  Opp. 2 (citing

21   ¶¶ 33-34).  But even these statements—which themselves are inadequate—are overstatements of

22   the FAC.  The FAC simply does not explain **how** "[t]he fortunes of UST investors were tied to one

23   another," or **how** "expected profits were based on the managerial and entrepreneurial efforts of

24   Terraform Labs and Mr. Kwon."  ¶¶ 33-34.  Plaintiff's reference to the *Terraform Labs* opinion in

25   a footnote of the FAC, ¶ 34 n.3, does not relieve Plaintiff of his obligation to plead actual facts.

26   Opp. 1-2 (citing *Terraform Labs*, 708 F. Supp. 3d 450); *see Meyer* v. *Cnty. of San Diego*, 2025

27   WL 2042360, at *14 (S.D. Cal. July 21, 2025) (not permitting "incorporation of allegations from

28   an unrelated case").  These pleading failures are fatal to the California Corporations Code claims.

1    Even if Plaintiff could rely on *Terraform Labs*, this case is markedly different. *Terraform*
2  *Labs* was brought ***by the SEC*** against the UST creator—Terraform—and its founder. 708 F. Supp.
3  3d at 457. There, on summary judgment, the court only held "that UST ***in combination with the***
4  ***Anchor Protocol*** constituted an investment contract," and noted that it was "***undisputed*** by the
5  SEC, ***that UST on its own was not a security*** because purchasers understood that its value would
6  remain stable at $1.00 rather than generate a profit." *Id.* at 472-73 (emphasis added). Thus, the
7  UST transactions here are not securities transactions. Plaintiff alleges that "***investors*** would
8  'stake' their holdings in the Anchor Protocol," ¶ 26, and that "***[i]nvestors*** purchased UST to make
9  a profit and accumulate additional UST from various rewards programs (including interest for
10 'staking' the tokens) rather than to use UST themselves for any task," ¶ 34 (emphasis added). But
11 Plaintiff does not allege that ***he*** purchased UST in relation to the Anchor Protocol; nor does he
12 allege that UST purchases through Coinbase had any relation to the Anchor Protocol or staking or
13 that UST was staked through Coinbase. *See* MTD 25. *Terraform Labs* is thus no help to Plaintiff.

14    Plaintiff's assertion that "[s]ince the interest rates for staking UST were as high as 20% …
15 it would be unreasonable for any investor to buy it for any other purpose" is unsupported by the
16 FAC. *See* Opp. 2; *compare id. with* ¶¶ 28, 34. And Plaintiff's resort to language in the *Terraform*
17 *Labs* opinion that "there were approximately 18.5 billion tokens of UST, 14 billion of which had
18 been deposited in the Anchor Protocol," does no better. Opp. 2 (quoting 708 F. Supp. 3d at 472).
19 By that count, about 4.5 billion tokens (24%) were left ***not*** deposited in the Anchor Protocol,
20 revealing that simply purchasing UST does not mean that the purchaser necessarily deposited UST
21 in the Anchor Protocol. *See Cadelli* v. *United Transportation Union*, 132 F.3d 38 (9th Cir. 1997)
22 ("Statements of fact contained in briefs may be considered party admissions" at the court's
23 "discretion"). Indeed, Plaintiff alleges only that he "understood UST was a standard stablecoin"
24 and that it was "price-stable," without any reference to the Anchor Protocol or staking UST. ¶¶
25 88-99. Thus, as the *Donovan* court held, Plaintiff—a private litigant—"may not sue for damages
26 over an alleged scheme or 'ecosystem' in which unregistered investment contracts were allegedly
27 offered, but only some customers—and not Plaintiff[]—agreed to them." 779 F. Supp. 3d at 391.
28    What's more, this case concerns purchases on the secondary market and therefore the

1  transactions fail the third prong of *Howey* because Plaintiff "could not have known if their

2  payments of money went to [Terraform], or any other seller of [the digital token]," *SEC* v. *Ripple*

3  *Labs, Inc.*, 682 F. Supp. 3d 308, 328 (S.D.N.Y. 2023), and therefore, they were not "led to expect

4  profits solely from the efforts of the promoter or a third party" under *Howey*. *Id.* at 321, 329.

5              **F.    Coinbase's Motion Is Not A Summary Judgment Motion**

6              Plaintiff's claim that the exhibits cited in Coinbase's Motion convert its motion to dismiss

7  into a summary judgment motion only demonstrates the weakness of Plaintiff's claims and is

8  inconsistent with Ninth Circuit law. *See* Opp. 20-21. The crux of Plaintiff's consumer protection

9  claims is that Coinbase misled UST purchasers or had a duty to disclose certain concealed facts

10 about UST because they were within Coinbase's exclusive knowledge. To defeat these claims,

11 Coinbase permissibly referred the Court to documents incorporated by reference in the FAC or

12 other public documents for the purpose of showing the information that was in the public domain.

13 RJN 5-8. Referring the Court to documents on a motion to dismiss in these limited circumstances

14 does not convert a motion into a summary judgment motion. *E.g.*, *Selane Prods., Inc.* v. *Cont'l*

15 *Cas. Co.*, 706 F. Supp. 3d 997, 1002 (C.D. Cal. 2020) (judicial notice and incorporation by

16 reference allow courts to "consider information outside of the complaint" on motion to dismiss).

17 Plaintiff's complaint, Opp. 21, that Coinbase has refused to engage in discovery is similarly

18 unavailing. The Court granted Coinbase's motion to stay discovery, Dkt. 67, and Plaintiff agreed

19 to a continued stay during the pendency of these motions. Dkt. 128.[19]

20 **III.    CONCLUSION**

21             This is Plaintiff's fifth bite at the apple. Any further amendment would be futile, *MMCA*

22 *Grp., Ltd.* v. *Hewlett-Packard Co.*, 2008 WL 2238223, at *1 (N.D. Cal. May 29, 2008), and yet

23 another "needlessly iterative pleading" would further "waste[] the time and resources of the

24 Court." *Richards* v. *Centripetal Networks, Inc.*, 2024 WL 2064067, at *4 (N.D. Cal. May 8, 2024).

25 The Court should dismiss the FAC in its entirety with prejudice.

26

27

---

28 [19] Plaintiff's Exhibits 3-6 (Dkt. 138-1) are not relevant to this Motion. They are only cited to show "disputes of material fact" if the Motion is converted into a summary judgment motion. Opp. 24.

1    Dated: December 8, 2025                    PAUL, WEISS, RIFKIND, WHARTON &
2                                                GARRISON LLP

3                                                By: /s/ *Randall S. Luskey*
                                                     Randall S. Luskey
4                                                    Kristina A. Bunting (admitted *pro hac vice*)
                                                     Paul D. Brachman (admitted *pro hac vice*)
5
                                                Attorneys for Defendant
6                                                COINBASE, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28