United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LARRY PEARL, et al.,

Plaintiffs,

v.

COINBASE, INC.,

Defendant.

Case No. 22-cv-03561-MMC

**ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT**

Before the Court is defendant Coinbase, Inc.'s ("Coinbase") "Motion to Dismiss the Fourth Amended Class Action Complaint" and "Motion to Strike Class Allegations or Deny Class Certification," both filed October 13, 2025. Plaintiff Larry Pearl ("Pearl") has filed opposition, to which Coinbase has replied. The matter came on regularly for hearing on February 6, 2026. Kristina A. Bunting and Randall Scott Luskey of Paul, Weiss, Rifkind, Wharton & Garrison LLP appeared on behalf of Coinbase. Kevin Osborne of Erickson Kramer Osborne LLP appeared on behalf of Pearl. Having read and considered the parties' respective written submissions,[1] and having considered the arguments made at the hearing, the Court rules as follows.

## BACKGROUND

Pearl alleges that "in May 2022," he "purchase[d]," from Coinbase, TerraUSD ("UST"), a cryptocurrency in the "Terraform ecosystem," described on the Coinbase website as a "stablecoin." (See 4AC ¶¶ 55, 86, 89.) Pearl further alleges that on May 7,

[1] At the February 6 hearing, the Court permitted the parties to file supplemental briefing on an issue raised therein (see Doc. No. 152 at 58:23-25), after which Coinbase filed an "Administrative Motion for Leave to File a Supplemental Reply" (see Doc. No. 159). As the Court is able to evaluate the arguments made in the parties respective supplemental submissions without further briefing, Coinbase's motion is hereby DENIED.

United States District Court
Northern District of California

2022, "[t]he price of UST…showed signs of instability" (see id. ¶ 82), that by May 9, 2022, it had "dropped to 35 cents" from its "intended…$1 peg" (see id.), and that "[w]hen UST collapsed, the value of [Pearl's] investment fell in value by over 90 percent" (see id. ¶ 98).[2]

Based on said allegations, Pearl, on behalf of himself and a putative class, asserts against Coinbase the following seven causes of action: (1) "Negligent Misrepresentation"; (2) "Violations of Cal. Bus. & Prof. Code §§ 17200 et seq."; (3) "Violations of Cal. Bus. & Prof. Code §§ 17500[] et seq."; (4) "Violations of Cal. Corp. Code §§ 25110 & 25503"; (5) "Violations of Cal. Corp. Code §§ 25401 & 25501"; (6) "Violations of Cal. Corp. Code §§ 25130 & 25503"; (7) "Violations of Cal. Corp. Code §§ 25400(d) & 25500." (See id. at 29:11-49:27 (alteration omitted).)

By the instant motions, Coinbase again seeks (1) an order dismissing each of Pearl's claims pursuant to Rules 8, 9(b), and/or 12(b)(6) of the Federal Rules of Civil Procedure (see Def.'s Mot. to Dismiss the Fourth Amended Class Action Complaint), and (2) an order striking Pearl's class allegations, or, in the alternative, denying class certification (see Def.'s Mot. to Strike Class Allegations or Deny Class Certification).

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); see also Fed. R.

---

[2] In an order filed July 15, 2024, the Court dismissed Pearl's Second Amended Class Action Complaint ("July 15 Order") (see Doc. No. 74) and set forth in detail the factual background underlying the instant action, which underlying facts remain essentially unchanged, and with which the Court assumes the parties are familiar (see July 15 Order at 1:21-2:22).

Civ. P. 8(d)(1) (providing "[e]ach allegation must be simple, concise, and direct"). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See Twombly, 550 U.S. at 555. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than…a formulaic recitation of the elements of a cause of action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

As noted, Coinbase seeks dismissal of each of Pearl's seven causes of action. The Court next addresses each of those claims, in turn.

### A. Claims Exceeding Scope of Leave to Amend

By order filed August 8, 2025 ("August 8 Order") (see Doc. No. 119), the Court dismissed, with limited leave to amend, Pearl's Third Amended Class Action Complaint ("TAC"). On September 9, 2025, Pearl filed his Fourth Amended Class Action Complaint ("4AC").

At the outset, the Court addresses Pearl's inclusion of claims in his 4AC that, according to Coinbase, go beyond the limited leave to amend granted by the Court when it dismissed the TAC.

In its August 8 order, the Court granted Pearl leave to amend his negligent misrepresentation, Unfair Competition Law ("UCL"), and False Advertising Law ("FAL")



United States District Court
Northern District of California

claims to the extent those claims were based on affirmative "misrepresentation[s] as to legitimacy and/or reliability" (see August 8 Order at 14:3-5) and without leave to amend to the extent those claims were based on affirmative "misrepresentations as to collaterization or safety" (see id. at 6:11-12, 14:3-5). Additionally, Pearl was granted leave to amend his UCL and FAL claims, but not his negligent misrepresentation claim, to the extent those claims were based on alleged omissions. (See id. at 14:5-6.) Lastly, the Court dismissed without leave to amend Pearl's claims under §§ 25110 and 25503 as well as §§ 25401 and 25501 and granted Pearl leave to add claims under §§ 25130, 25400(d), 25504, and 25504.1. (See id. at 14:6-7.)

In the 4AC, Pearl does not base any of his negligent misrepresentation, UCL, or FAL claims on alleged misrepresentations as to legitimacy or reliability and instead re-pleads those claims, to the extent based on affirmative misrepresentations, on alleged misrepresentations as to collaterization and safety. (See 4AC ¶¶ 131-32 (negligent misrepresentation), ¶¶ 150-52 (UCL), ¶¶ 168-70 (FAL).)[3]

Further, Pearl has alleged a negligent misrepresentation claim based on the same asserted omissions as his UCL and FAL claims (see id. ¶¶ 134-35),[4] and has re-alleged his §§ 25110 and 25503 as well as §§ 25401 and 25501 claims (see id. ¶¶ 195, 206).

Accordingly, the following Causes of Action are subject to dismissal for exceeding the scope of leave to amend: Count I (negligent misrepresentation); Count II (UCL) and Count III (FAL) to the extent those two causes of action are based on affirmative

---

[3] Although, in his negligent misrepresentation, UCL, and FAL claims, Pearl alleges Coinbase "represented…that 'every digital asset on Coinbase goes through an extensive review process ensuring it meets our security and compliance requirements,'" (see 4 AC ¶ 133 (negligent misrepresentation), ¶ 154 (UCL), ¶ 171 (FAL)), he does not allege said representation is misleading, but, rather, appears to rely on it to support his allegations as to Coinbase's knowledge of alleged omissions.

[4] Even if Pearl had been permitted to amend to include in his 4AC a negligent misrepresentation claim based on alleged omissions, such claim would, again, fail as "negligent misrepresentation by omission is not recognized in California." See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig., 753 F. Supp. 3d 849, 926-27 (N.D. Cal. 2024).



United States District Court
Northern District of California

misrepresentations; Count IV (Cal. Corp. Code §§ 25110 & 25503); and Count V (Cal. Corp. Code §§ 25401 & 25501). See Strifling v. Twitter Inc., No. 22-cv-07739-JST, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024) (holding "courts in this district consistently strike or dismiss parties and claims that exceed the scope of an order granting leave to amend"; collecting cases).

The Court next turns to the claims for which the Court granted leave to amend.

**B. Remaining Claims**

**1. Unfair Competition (Count II) & False Advertising (Count III)**

Under the UCL, California prohibits "any unlawful, unfair, or fraudulent business act or practice," see Cal. Bus. & Prof. Code § 17200; under the FAL, California prohibits any "unfair, deceptive, untrue, or misleading advertising," see Ebner v. Fresh, Inc., 838 F.3d 958, 967 n.2 (9th Cir. 2016) (emphasis omitted); see also Cal. Bus. & Prof. Code § 17500.

**a. Fraudulent Prong (UCL and FAL)**

In the 4AC, Pearl's primary theory as to his UCL and FAL claims is based on alleged omissions by Coinbase. An omission is actionable under California law where the omitted fact is "contrary to a [material] representation actually made by the defendant" or is one "the defendant was obliged to disclose." See Gutierrez v. Carmax Auto Superstores Cal., 19 Cal. App. 5th 1234, 1255 (2018) (internal quotation and citation omitted) (discussing requirements for omission claim under CLRA). An obligation to disclose arises under one of four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." See Edwards v. FCA US LLC, No. 22-cv-01871-WHO, 2022 WL 1814144, at *3 (N.D. Cal. June 2, 2022) (internal quotation and citation omitted).

In the 4AC, Pearl again alleges Coinbase's duty to disclose omissions arises from

"[p]artial [r]epresentations" as well as "[e]xclusive or [s]uperior [k]nowledge." (See 4AC ¶¶ 85-86.) As set forth below, the Court again finds the UCL and FAL claims are subject to dismissal.

**(1) Partial Representation**

Pearl alleges two partial representations by Coinbase: (1) UST was a "stablecoin" that "attempts to maintain a value of US $1.00"; and (2) stablecoins are "free from the volatility of non-pegged cryptocurrencies." (See id. ¶ 86.) According to Pearl, such representations are actionable as they omitted that "UST was designed to keep its peg to the dollar through an experimental algorithm dependent on…LUNA," which algorithm used a "mint-and-burn mechanism that automatically adjusted supply," i.e., that instead of being "backed by U.S. dollars or any other currency or tangible asset held in reserve," UST was "in fact, inextricably linked to a non-pegged cryptocurrency, and a particularly volatile one at that." (See id. ¶¶ 25, 28-29, 86.)

"Under California law, the failure to disclose a fact can constitute actionable fraud…when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." See Opperman v. Path, Inc., 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015) (internal citation and quotation omitted); see also Anderson v. Apple Inc., 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020) (holding "the duty to disclose the allegedly omitted information arises from the fact that the omission is contrary to a representation actually made by the defendant" (internal quotation and citation omitted)).

Here, however, the 4AC includes an allegation that Coinbase, on its website, stated that "in order to mint 1 TerraUSD, US$1.00 worth of TerraUSD's reserve asset (LUNA) must be burned" (see 4AC ¶ 45), and, equally importantly, the 4AC omits from its allegations that Coinbase, on the same webpage and immediately after stating UST "attempts to maintain a value of US$1.00," stated "UST isn't backed by US dollars in a



United States District Court
Northern District of California

bank account" (see Declaration of Kristina A. Bunting ("Bunting Decl.") Ex. 2 at 4).[5] Further, that same webpage also contained a link to a whitepaper about UST (see id.), which, similarly and in more detail, provided notice of UST's relationship to LUNA (see Bunting Decl. Ex. 6 at 7, 15 (whitepaper) (stating "[t]he system uses L[UNA] to make the price for [UST]," and "[t]he protocol adjusts the supply of [UST] in response to changes in demand to keep its price stable[;] [t]his is achieved using L[UNA]")).[6]

Accordingly, as Pearl has not pleaded an actionable partial representation, his UCL and FAL claims predicated thereon are subject to dismissal.

**(2) Exclusive Knowledge**

Plaintiff alleges Coinbase had exclusive or superior knowledge of facts it was obligated to disclose, namely, (1) "the true nature of UST, including that UST was based on an uncertain and untested algorithm" (see 4AC ¶ 85), that UST's price was "interconnected…with LUNA's fluctuating price" (see id. ¶¶ 154, 172), that "LUNA[] was responsible for maintaining UST's peg" (see id. ¶¶ 155, 173), that "LUNA was highly volatile and prone to crashing," having previously caused three "algorithmic Terra stablecoins," including UST, to lose their peg (see id. ¶ 56; see also id. ¶¶ 154, 172), and that there was an "SEC investigation into Do Kwon and Terraform Lab[s'] Mirror Protocol" (see id. ¶¶ 154, 172).[7]

---

[5] The citations herein to exhibits are to the page numbers assigned at the top of each page by this district's electronic filing system.

[6] Coinbase's request that the Court take judicial notice of Exhibits 2 and 6 to the Bunting declaration as well as to Exhibits 15, and 18-20 to the Bunting declaration, to which the Court cites later herein, is GRANTED for the limited purpose of identifying "what was in the public realm at the [relevant] time." See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotation and citation omitted).

[7] The Court does not address herein the additional alleged omission that "the entire Terraform ecosystem was risky" because Do Kwon, a "key individual[] responsible for" it "had a history of failed crypto assets, including a prior failed algorithmic stablecoin" (see, e.g., 4AC ¶ 155), as Pearl, in his opposition, has not responded to defendant's arguments in support of dismissal with regard thereto. See Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 888 (9th Cir. 2010) (holding "[a] plaintiff who makes a claim in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss has effectively abandoned his claim" (internal quotation, citation, and alterations



United States District Court
Northern District of California

"Under California law, a defendant has exclusive knowledge of material facts giving rise to a duty to disclose where according to the complaint, [the defendant] knew of [a material fact] while plaintiffs did not, and, given the nature of the [material fact], it was difficult to discover." See Ottesen v. Hi-Tech Pharms., Inc., No. 19-cv-07271-JST, 2024 WL 5205539, at *11 (N.D. Cal. Dec. 23, 2024) (internal quotation and citation omitted).

Here, as to the first alleged omission, i.e., "the true nature of UST," to the extent Pearl is alleging Coinbase was required to disclose the fact that UST was based on an algorithm, such information, as described above in connection with alleged partial representations, was shared by Coinbase on its website and in the above-referenced whitepaper, and Pearl has not alleged facts sufficient to support a finding that said information was difficult to discover.[8]

To the extent Pearl relies, as he did in his TAC, on his allegation that such algorithm was "untested" and "uncertain," the Court remains unpersuaded. First, as with the TAC, the 4AC "includes no allegation demonstrating the UST algorithm was, in fact, untested." (See August 8 Order at 9:13-15.) Second, the only alleged undisclosed uncertainty identified by Pearl concerns "algorithmic Terra stablecoins" tied to LUNA, a cryptocurrency, which, according to Pearl, was "highly volatile and prone to crashing." (See 4AC ¶ 56.) As noted, however, Coinbase disclosed UST's relationship to LUNA (see id. ¶ 45), and the trading histories of both UST and LUNA were available on multiple websites at the time of Pearl's purchase of UST (see id. ¶ 41 (alleging Coinbase's website contained "[p]rice charts" that "provide[d] historical data regarding the asset, including the asset's historical pricing," which Pearl "relied on" in making his decision to

---

omitted)).

[8] Although Pearl, in his 4AC, alleges he never read the whitepaper, he previously appeared to allege that he had in fact read and relied on it (see TAC ¶ 141), and, in any event, the question is not whether Pearl read the disclosure, but, rather, whether it was made and whether it was difficult to discover. See, e.g., Ottesen, 2024 WL 5205539, at *11.



United States District Court
Northern District of California

"purchase…UST"); Supplemental Declaration of Kristina A. Bunting Exs. 2-5 (showing UST and LUNA's trading history on the CoinGecko and Yahoo Finance websites)),[9] and Pearl fails to allege any difficulty in accessing such information.[10] Consequently, Pearl, having LUNA's trading history available, was able to evaluate its volatility, and, knowing the relationship between LUNA and UST, to discover that UST had lost its peg to the dollar when the price of LUNA fell.[11]

Lastly, Pearl's reliance on the alleged omission, i.e., "the SEC investigation into Do Kwon and Terraform Lab[s'] Mirror Protocol for potential securities violations" (see 4AC ¶¶ 154, 172), likewise is unavailing. The SEC's investigation was made public months before Pearl's purchase of UST. In particular, on November 12, 2021, the SEC issued a press release about its investigation into Do Kwon and Terraform Labs' Mirror Protocol, announcing it was "seeking an order directing [Do Kwon and Terraform Labs] to comply with investigative subpoenas" (see Bunting Decl. Ex. 15 at 2), and reputable news outlets covered the SEC's investigation in detail (see id. Ex. 18 (Wall Street Journal article dated October 25, 2021), Ex. 19 (Coindesk article dated October 30, 2021), Ex. 20 (Bloomberg article dated November 12, 2021)).

Accordingly, as Pearl has not pleaded facts demonstrating Coinbase had exclusive knowledge of facts allegedly omitted, his UCL and FAL claims predicated

---

[9] Coinbase's request that the Court take judicial notice of Exhibits 2-5 to the supplemental Bunting declaration is GRANTED for the limited purpose of identifying "what was in the public realm at the [relevant] time." See Von Saher, 592 F.3d at 960 (internal quotation and citation omitted).

[10] To the extent Pearl alleges Coinbase failed to disclose depegging events pertaining to other stablecoins tethered to LUNA (see 4AC ¶ 56), the 4AC contains no allegation suggesting such events would not, unlike the depegging of UST, be reflected in the publicly available trading history.

[11] Although Pearl alleges, in conclusory fashion, he "did not have the requisite knowledge, training, or experience to know what to look for" (see 4AC ¶¶ 64, 154), the 4AC includes no allegation to support a finding that any specialized training or experience was necessary to either discover or understand such information. See Iqbal, 556 U.S. at 678 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation and citation omitted)).



United States District Court
Northern District of California

thereon are subject to dismissal.

**b. Unfair and Unlawful Prongs (UCL)**

To the extent Pearl asserts a claim under the UCL's unfairness prong, he has not responded to Coinbase's challenge that such claim is wholly derivative of his fraud claim (see e.g., 4AC ¶ 146 (alleging Coinbase's "sale of UST was 'unfair'" because "[t]here is no utility in deceptively characterizing the nature and risk of UST")), and, consequently, the Court considers said theory abandoned, see Carvalho, 629 F.3d at 888; see also Kim v. Bluetriton Brands, Inc., No. 22-56063, 2024 WL 243343, at *2 (9th Cir. 2024) (affirming dismissal of claim under "UCL's unfair prong" where it "presume[d] the success of [dismissed] consumer deception and fraud claims").

To the extent Pearl asserts a claim under the UCL's unlawful prong, he bases such claim on the same securities statutes on which he bases his other statutory claims, namely, California Corporations Code §§ 25110 and 25503 (Count IV), §§ 25401 and 25501 (Count V), §§ 25130, 25503, and 25504 (Count VI), and §§ 25400(d), 25500, 25401, and 25504.1 (Count VII), as well as § 1714 of the California Civil Code, § 5 of the FTC Act, and § 200.18(d) of the State of New York Department of Financial Services' Virtual Currency Law. (See 4AC ¶ 145.) As set forth below, said theory likewise is unavailing.

First, the UCL "does not apply to securities transactions," see Bowen v. Ziasun Techs., Inc., 116 Cal. App. 4th 777, 786 (2004), and, consequently, plaintiff cannot predicate an unlawful-prong claim on any of the statutes set forth in Counts IV-VII, all of which require an allegation that a person or entity sold or offered to sell a security, see Zakinov v. Ripple Labs, Inc., No. 18-cv-05753-PJH, 2020 WL 922815, at *22 (N.D. Cal. Feb. 26, 2020) (holding "Bowen bars plaintiff's [UCL] claim to the extent plaintiff premises that claim on the theory that [the cryptocurrency] is a security").

Next, to the extent Pearl alleges an unlawful-prong claim under California Civil Code § 1714, i.e., negligence, the 4AC includes no elaboration beyond a citation to the statute and, consequently, fails to state a claim. See Twombly, 550 U.S. at 555 (holding

United States District Court
Northern District of California

Rule 8(a)(2) requires complaint "give the defendant fair notice of what the…claim is and the grounds upon which it rests," which "requires more than labels and conclusions"). As to § 5 of the FTC Act, and § 200.18(d) of New York's Virtual Currency Law, Pearl has not articulated a basis for such claims separate from the asserted fraud as to which Pearl, as set forth above, has failed to plead a claim. (See 4AC ¶ 136 (alleging § 5 of the FTC Act "prohibits 'deceptive acts or practices in or affecting commerce'"); ¶ 137 (alleging § 200.18(d) "prohibits 'false, misleading, or deceptive representations or omissions' in advertising and marketing materials").)[12]

**c. Conclusion: Counts II and III**

Accordingly, Counts II and III are subject to dismissal.

**2. California Corporations Code §§ 25130, 25503, 25504 (Count VI)[13]**

Section 25130 makes it "unlawful for any person to offer or sell any security in this state in any nonissuer transaction unless it is qualified for such sale." See Cal. Corp. Code § 25130. Section 25503, in turn, provides a private right of action, making "[a]ny person who violates…[§] 25130…liable to any person acquiring from them the security sold in violation of [§ 25130]," see Cal. Corp. Code § 25503, while § 25504 provides for a private right of action against "every broker-dealer or agent who materially aids in the act or transaction constituting the violation" unless the broker-dealer or agent "had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist," see Cal. Corp. Code § 25504.

At the outset, the parties dispute whether Pearl has pled facts sufficient to support a finding that UST is a "security." Under California law, there are "two distinct tests in

---

[12] In addition, as the Ninth Circuit has held, the FTC Act "doesn't create a private right of action,…and plaintiffs can't use California law to engineer one." See O'Donnell v. Bank of America, Nat. Ass'n, 504 Fed. App'x 566, 568 (9th Cir. 2013); see also Aleem v. Bank of America, No. EDCV 09-01812-VAP, 2010 WL 532330, *3 (C.D. Cal. Feb. 9, 2010) (holding "[t]he UCL cannot create a private right of action where none exists under the federal statute").

[13] Although titled "Violations of Cal. Corp. Code §§ 25130 & 25503," Count VI also includes a claim under § 25504. (See 4AC ¶ 219.)

evaluating an alleged security: the risk capital test and the federal or *Howey* test." See People v. Black, 8 Cal. App. 5th 889, 900 (2007). Although the 4AC contains cursory and conclusory allegations that UST satisfies the risk capital test (see 4AC ¶¶ 37-40), Pearl has not responded to Coinbase's challenge thereto, and, consequently, the Court considers said theory for establishing UST as a security abandoned, see Carvalho, 629 F.3d at 888. The Court thus turns to the Howey test.

Under California law, "security" is defined to include an "investment contract," see Cal. Corp. Code § 25019, which, under the Howey test, exists where there is "(1) an investment of money; (2) in a common enterprise; (3) with an expectation of profits produced by the efforts of others," Warfield v. Alaniz, 569 F.3d 1015, 1020 (9th Cir. 2009) (internal quotation and citation omitted).

Here, Pearl has not pled facts sufficient to support a finding that he was part of a common enterprise, his only allegation consisting of a conclusory statement that "[t]he fortunes of UST investors were tied to one another and to those of Terraform Labs and its founder and Chief Executive Officer, Do Kwon." (See 4AC ¶ 33.)[14] Without supporting factual allegations, Pearl fails to plead a common enterprise.

Moreover, Pearl has not pled facts sufficient to support a finding that he purchased UST with the expectation of making a profit. Pearl alleges he purchased UST because he "understood that UST was a standard stablecoin," i.e., that it was "designed to maintain a value of $1.00 per coin." (See id. ¶¶ 4, 92.) Such allegation fails to demonstrate an expectation of profit. See S.E.C. v. Terraform Labs Pte. Ltd., 708 F. Supp. 3d 450, 472-73 (S.D.N.Y 2023) (finding "UST in combination with…Anchor Protocol," a mechanism that would generate a "target" yield of "20% fixed APR" on deposited UST tokens,

[14] In his opposition, Pearl attempts to cure such defect by citing to the facts set forth in S.E.C. v. Terraform Labs Pte. Ltd., 708 F. Supp. 3d 450, 472 (S.D.N.Y 2023). (See Opp. at 2:16-20.) Pearl cannot use his opposition to incorporate allegations from a different case, see Meyer v. Cnty. of San Diego, No. 21-cv-341-RSH-BLM, 2025 WL 2042360, at *14 (S.D. Cal. July 21, 2025) (declining to "permit[] the wholesale incorporation of allegations from an unrelated case into the operative pleading"), and, in any event, the facts at issue therein are distinguishable.

United States District Court
Northern District of California

"constituted an investment contract";[15] holding it is "undisputed by the SEC[] that UST on its own was not a security because purchasers understood that its value would remain stable at $1.00 rather than generate a profit"); see also Donovan v. GMO-Z.com Tr. Co., Inc., 779 F. Supp. 3d 372, 386 (S.D.N.Y. 2025) (holding "[t]he Court's inquiry is necessarily limited to the alleged contracts, transactions, or schemes in which [p]laintiffs themselves engaged"). Moreover, as set forth below, even if Pearl's transactions in UST are deemed transactions in a security, Pearl's claims under §§ 25130, 25503, 25504 nonetheless fail.

First, as to primary liability, as the Court explained in dismissing Pearl's TAC, a claim brought pursuant to § 25503 requires privity. (See August 8 Order at 13:3-4 (citing In re Ripple Labs, Inc. Litig., No. 18-cv-06753-PJH, 2024 WL 3074379, at *4 (N.D. Cal. June 20, 2024)).) In his 4AC Pearl again fails to allege facts sufficient to show he bought UST from Coinbase or even that Coinbase held title to any of the UST transferred. Rather, he alleges Coinbase acts as a "centralized exchange of cryptocurrency assets" through which "[c]ustomers place orders to buy and sell cryptocurrencies" (see 4AC ¶¶ 71-72), and his argument equating his allegations that Coinbase "acts as a custodian" and has "possessory power of those assets" with an "ownership stake" is unpersuasive (see id. ¶¶ 71, 76); Underwood v. Coinbase Glob., Inc., 21 Civ. 8353 (PAE), 2026 WL 2198774, at *15 (S.D.N.Y. July 30, 2026) (holding "Coinbase's custody and operational control over the tokens[16] transacted by its users did not give it ownership rights in those assets"; analogizing Coinbase's role to that of "intermediaries" in "longstanding operation of the securities industry").[17]

---

[15] Here, the 4AC references such opportunity (see 4AC ¶ 26-27), but there is no allegation that Pearl availed himself of it.

[16] "Token" is another word for "cryptocurrency." (See 4AC ¶ 1.)

[17] Although, as Pearl points out, the district court, at an earlier stage of the same case, see Underwood v. Coinbase Global, Inc., 21 Civ. 8353 (PAE), 2025 WL 438547 (S.D.N.Y. Feb. 7, 2025), found privity could be shown alternatively under the federal "statutory seller" framework, pursuant to which privity is sufficiently alleged where a defendant "successfully solicit[s] the purchase [of a security], motivated at least in part by

Next, as to secondary liability, to plead a claim under § 25504, a plaintiff must allege facts showing the defendant had "knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." See Cal. Corp. Code § 25504. Here, Pearl alleges the underlying violation is the sale to him, by some person or entity, of an unregistered security, namely, UST.[18] Pearl thus must allege Coinbase knew or had reason to know the UST sold to him on its exchange was an unregistered security.

In that regard, Pearl alleges that in "May 2021, the SEC began scrutinizing another Terraform Labs' product known as Mirror Protocol" to determine whether "native Mirror tokens, mAssets, and MIR, which were marketed as having values pegged to real stocks like Apple and Tesla, constituted unregistered securities." (See 4AC ¶¶ 57, 216.) Consequently, Pearl contends, Coinbase "knew or reasonably should have known that UST was an unregistered security." (See id.) Pearl's argument is not persuasive. The 4AC contains no allegation as to the outcome of the above-referenced investigation, i.e., whether the Mirror Protocol was or was not found to be a security, let alone facts demonstrating how an investigation into such an unrelated product would lead Coinbase to conclude UST constituted a security.[19]

---

a desire to serve [its] own financial interests or those of the securities owner," see 2025 WL 438547, at *6 (alterations in original), California courts have rejected the applicability of the "statutory seller" framework to California's law, see Apollo Cap. Fund, LLC v. Roth Cap. Fund, 158 Cal. App. 4th 226, 253-54 (2007) (holding California Securities Act, "while modeled on federal law, is not, on the question of statutory seller status, substantially identical to [the Securities Act of 1933]"; rejecting argument that liability "attaches to one who solicits the sale of securities with a motive of benefitting himself financially"), and district courts in the Ninth Circuit have applied that interpretation of California law, see In re Ripple Labs, 2024 WL 3074379, at *4 (requiring "privity" for claim brought under § 25503; distinguishing "solicitation theory of relief under federal law" from "stricter privity requirement under California state law").

[18] There is no dispute that UST was not registered as a security.

[19] To the extent Pearl relies on his allegation that "[i]n February 2023, the [SEC] alleged that UST was being traded as an unregistered security" and that "[m]ultiple federal courts have agreed" (see 4AC ¶ 9), such allegation is unavailing, as the transactions here at issue were in May 2022 (see id. ¶ 89), well before any such events are alleged to have occurred.



United States District Court
Northern District of California

Accordingly, Count VI is subject to dismissal.

**3. California Corporations Code §§ 25400(d), 25500, 25401, 25504.1 (Count VII)[20]**

As Pearl has not alleged facts sufficient to support a finding that the UST he purchased was a security, Count VII fails. As set forth below, Count VII also fails for additional reasons.

**a. California Corporations Code §§ 25400(d) and 25500**

"Section 25400(d) makes it unlawful...for sellers…of stock to make false or misleading statements of material facts for the purpose of inducing a purchase or sale" or to "omit[] to state any material fact," for which violation "[§] 25500 creates a private remedy." See Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc., 998 F.3d 397, 405 (9th Cir. 2021) (internal quotation and citation omitted); Cal. Corp. Code § 25400(d).[21]

Here, Pearl relies on the same statement the Court previously found was not false or misleading, namely, that "UST was…free from the volatility of non-pegged cryptocurrencies" (see 4AC ¶ 225; August 8 Order at 5:1-6:10), and he presents no compelling reason for the Court to change its ruling; to the extent Pearl relies on any asserted omission (see 4AC ¶ 226), such claim fails for the reasons set forth earlier herein.

Moreover, as "[§] 25500 requires a plaintiff to allege that [he/she] purchased or sold a security at a price which was affected by the violation" a plaintiff must plead "loss causation." See Irving, 998 F.3d at 405 (internal quotation and citation omitted). "In the loss causation analysis, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." See id. at 407; see

[20] Although titled "Violations of Cal. Corp. Code §§ 25400(d) & 25500," Count VII also includes a claim under §§ 25400(d), which statute, in turn provides a private right of action against "[a]ny person who materially assists in any violation of Section…25401." (See 4AC ¶¶ 223, 230.)

[21] Unlike Pearl's claim under § 25503, a claim brought under § 25500 "generously extends liability to all persons affected by market manipulation without requiring reliance or privity." See Colman v. Theranos, Inc., 325 F.R.D. 629, 647 (N.D. Cal. 2018).

United States District Court
Northern District of California

also id. at 401 (holding to state a claim under §§ 25400(d) and 25500, a plaintiff must "adequately allege that [the defendant's] alleged fraudulent misstatements and omissions caused [his/her] alleged losses"). The 4AC, however, contains no allegation that Coinbase's alleged misrepresentations, omissions, or, for that matter, any other act by Coinbase, affected the price of UST or caused its eventual collapse. Indeed, Pearl alleges UST's collapse was because "over $2 billion US worth of UST were…removed" from "one of the mechanisms Terraform Labs claimed would bring about a stable 1:1 US dollar conversion rate," leading to "mass quantities of UST" being sold which, in turn, caused "[t]he LUNA-based algorithm [to] fail[]" (see 4AC ¶ 8), none of which he, in his 4AC, attributes to any alleged misrepresentations, omissions, or other conduct on the part of Coinbase.

**b. California Corporations Code §§ 25401 and 25504.1**

Lastly, Pearl, citing § 25504.1, alleges Coinbase is secondarily liable for its alleged violation of § 25401. (See 4AC ¶ 223.) To state a claim under § 25504.1 for a violation of § 25401, a plaintiff must plead a person or entity "materially assisted in any violation of…[§] 25401…with intent to deceive or defraud." See Cal Corp. Code § 25504.1. Section 25401, in turn, requires a sale of a security that "includes an untrue statement of a material fact or omits to state a material fact." See Cal. Corp. Code § 25401. The 4AC, however, contains no allegation that any seller made an untrue statement or omission, let alone any facts showing Coinbase "assisted" any such seller with intent to deceive or defraud. See Cal. Corp. Code. § 25504.1.

**c. Conclusion: Count VII**

Accordingly, Count VII is subject to dismissal.

//

//

//

//

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, Coinbase's motion to dismiss is hereby GRANTED, and the Fourth Amended Class Action Complaint is hereby DISMISSED without further leave to amend.

In light thereof, Coinbase's motion to strike/deny class certification is hereby DENIED as moot.

**IT IS SO ORDERED.**

Dated: November 20, 2026

MAXINE M. CHESNEY
United States District Judge